**THOMPSON COBURN LLP**
**LUKAS SOSNICKI (SBN 295895)**
**lsosnicki@thompsoncoburn.com**
**JOSE L. LUA-VALENCIA (SBN 324087)**
**jlua-valencia@thompsoncoburn.com**
**10100 Santa Monica Boulevard, Suite 500**
**Los Angeles, California 90067**
**Tel: 310.282.2500 / Fax: 310.282.2501**

Attorneys for Defendant CHARTER COMMUNICATIONS, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

MIGUEL ESPARZA,

Plaintiff,

v.

CHARTER COMMUNICATIONS, INC, a Delaware corporation d/b/a SPECTRUM.COM,

Defendant.

Case No. 2:25-cv-02438-JLS-PVC

**CHARTER COMMUNICATIONS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT, OR IN THE ALTERNATIVE, FOR LEAVE TO CONDUCT LIMITED EXPEDITED DISCOVERY RE ARBITRABILITY; MEMORANDUM OF POINTS AND AUTHORITIES**

*[Filed concurrently with Proposed Order]*

Hearing: May 23, 2025
Time: 10:30 a.m.
Judge: Hon. Josephine L. Staton
Courtroom: 8A

Complaint Filed: February 13, 2025

Notice of Removal Filed: March 19, 2025

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that on May 23, 2025, or as soon thereafter as counsel may be heard, in Courtroom 8A, 8th Floor, of the above-entitled Court, located at 350 West 1st Street, Los Angeles, California 90012, the Honorable Josephine L. Staton presiding, Defendant Charter Communications, Inc. ("Charter"), will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing the Complaint in its entirety with prejudice and for other and further relief as the Court deems just and proper, on the ground that the Complaint fails to state a claim upon which relief can be granted, or in the alternative, pursuant to Federal Rule of Civil Procedure 26(d), for an order granting leave to conduct limited, expedited discovery regarding the arbitrability of this case.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all pleadings and files in this matter, and any further submissions or argument of counsel that may be filed with or presented to the Court at or before the hearing on this Motion.

**Statement of Rule 7-3 Compliance**

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on April 18, 2025. The parties thoroughly discussed the substance and a potential resolution of the filed motion by written correspondence.

DATED: April 25, 2025 **THOMPSON COBURN LLP**

By: */s/ Jose L. Lua-Valencia*

**LUKAS SOSNICKI**
**JOSE L. LUA-VALENCIA**
Attorneys for Defendant CHARTER COMMUNICATIONS, INC.

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. COMPLAINT'S ALLEGATIONS .......... 2

III. LEGAL STANDARD .......... 3

IV. ARGUMENT .......... 4

A. The Complaint Fails to State an Aiding-and-Abetting Claim Under Section 631(a). .......... 4

1. Plaintiff Fails to Allege Any Injury, Which CIPA Requires to Bring a Private Claim. .......... 5

2. Plaintiff Fails to Plead That Asapp Violated Section 631(a) Given Section 631(a)'s "Party Exemption." .......... 10

3. Plaintiff Failed to Allege that His Webchat Communications Contained Content That is Subject to Section 631(a)'s Protections. .......... 14

4. Plaintiff Failed to Adequately Plead that His Communications Were Intercepted While in Transit. .......... 16

5. Plaintiff Fails to Plead that Charter Knowingly or Willfully Aided and Abetted Asapp's Purported Violation of Section 631(a)'s Second Clause. .......... 18

B. The Complaint Should Be Dismissed With Prejudice. .......... 19

C. If the Court is Inclined to Not Dismiss This Action, Good Cause Exists to Grant Charter Leave to Conduct Limited Expedited Discovery Regarding This Claim's Arbitrability. .......... 20

V. CONCLUSION .......... 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ades v. Omni Hotels Mgmt. Corp.*,
46 F. Supp. 3d 999 (C.D. Cal. 2014) ........ 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 3, 4

*Augustine v. Great Wolf Resorts, Inc.*,
2024 U.S. Dist. LEXIS 127257 (S.D. Cal. July 18, 2024) ........ 15, 16

*Boorstein v. CBS Interactive, Inc.*,
Cal. App. 4th 456 (2013) ........ 6

*Boorstein v. Men's Journal, LLC*,
2012 WL 2152815 (C.D. Cal. 2012) ........ 6

*In re BPS Direct, LLC*,
705 F. Supp. 3d 333 (E.D. Pa. 2023) ........ 9

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ........ 8

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) ........ 12, 14

*In re C.H.*,
53 Cal. 4th 94 (2011) ........ 6

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ........ 17

*Carrese v. Yes Online Inc.*,
2016 WL 6069198 (C.D. Cal. Oct. 13, 2016) ........ 7, 9

*Carrico v. City & Cnty. of San Francisco*,
656 F.3d 1002 (9th Cir. 2011) ........ 20

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........ 8

*Cody v. Boscov's, Inc.*,
658 F. Supp. 3d 779 (C.D. Cal. 2023)....................13

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010)....................4

*Dix v. Superior Court*,
53 Cal. 3d 442 (1991)....................6

*Dumas v. Kipp*,
90 F.3d 386 (9th Cir. 1996)....................20

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)....................14

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)....................4

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021)....................10, 12, 14, 15

*Heiting v. Athenahealth, Inc.*,
2024 U.S. Dist. LEXIS 133617 (C.D. Cal. July 29, 2024)....................17

*Heiting v. Taro Pharms. United States, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023)....................15, 16, 18

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023)....................19

*Jones v. Tonal Sys.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024)....................11

*King v. Conde Nast Publications*,
2012 WL 3186578 (C.D. Ca1. 2012), aff'd 2014 WL 607385 (9th Cir. Feb. 18, 2014)....................7

*Laub v. United Stated Department Of The Interior*,
342 F.3d 1080 (9th Cir. 2003)....................20

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023)....................13, 16

*Licea v. Old Navy, LLC*,
669 F. Supp. 3d 941 (C.D. Cal. 2023)....................10

*Licea v. Vitacost.com*,
683 F. Supp. 3d 1118 (S.D. Cal. 2023) .... 10

*Lieberman v. KCOP Television, Inc.*,
110 Cal. App. 4th 156 (2003) .... 7

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) .... 8

*Massie v. Gen. Motors LLC*,
2022 WL 534468 (D. Del. Feb. 17, 2022) .... 9

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .... 5

*McCoy v. Alphabet, Inc.*,
2021 U.S. Dist. LEXIS 24180 (N.D. Cal. Feb. 2, 2021) .... 8

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) .... 9

*Miller v. Hearst Communications, Inc.*,
2012 WL 3205241 (C.D. Cal. 2012), aff'd 2014 WL 607400 (9th Cir. Feb. 18, 2014) .... 7

*Mintz v. Subaru of Am., Inc.*,
716 F. App'x 618 (9th Cir. 2017) .... 4

*People v. Avery*,
27 Cal. 4th 49 (2002) .... 4

*Revitch v. New Moosejaw, LLC*,
2019 U.S. Dist. LEXIS 186955 (Oct. 23, 2019) .... 14

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) .... 19

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) .... 13

*Semitool, Inc. v. Tokyo Electron America, Inc.*,
208 F.R.D. 273 (N.D. Cal. 2002) .... 20, 21

*Smidga v. Spirit Airlines, Inc.*,
2024 WL 1485853 (W.D. Pa. Apr. 5, 2024) .... 9

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) ........................................................................ 3

*Surrey v. TrueBeginnings, LLC*,
168 Cal. App. 4th 414 (2008) ........................................................................ 5

*Tavernetti v. Super. Ct.*,
22 Cal.3d 187 (1978) .................................................................................... 4

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
315 F. Supp. 3d 1147 (C.D. Cal. 2018) ........................................................ 4

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ........................................................ 17

*Valenzuela v. Kroger Co.*,
2025 U.S. Dist. LEXIS 52402 (C.D. Cal. March 13, 2025) ........................ 19

*Valenzuela v. Nationwide*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) ........................................................ 17

*Valenzuela v. Super Bright LEDs Inc.*,
2023 U.S. Dist. LEXIS 218403 (C.D. Cal. Nov. 27, 2023) ........................ 14

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ...................................................... 17

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979) .......................................................................... 4

*Williams v. What If Holdings, LLC*,
2022 U.S. Dist. LEXIS 230732 (N.D. Cal. Dec. 22, 2022) ........................ 10

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ............................................................ 8

*Yoon v. Lululemon United States*,
549 F. Supp. 3d 1073 (C.D. Cal. July 15, 2021) ..................................... 6, 15

**Statutes & Rules**


Cal. Pen. Code § 631 .......... 4
Cal. Pen. Code § 631(a) .......... *passim*
Cal. Pen. Code § 637.2 .......... 5
Cal. Rules of Court, Rule 7-3 .......... 2
Fed. R. Civ. P. 12(b)(6) .......... 1, 3
Fed. R. Civ. P. 26(d) .......... 1, 20
Fed. R. Civ. P. 26(f) .......... 20

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Charter Communications, Inc. ("Charter") respectfully submits this Memorandum of Points and Authorities in Support of Charter's Motion to Dismiss Plaintiff's Complaint, Or In the Alternative, For Leave to Conduct Limited Expedited Discovery Regarding Arbitrability.

## I. INTRODUCTION

This lawsuit is one of dozens of California Invasion of Privacy Act ("CIPA") class actions that Plaintiff Miguel Esparza ("Plaintiff") and his counsel have brought against companies in recent years. As more and more commercial website operators outsource their website-visitor data-retention and data-management responsibilities to third-party vendors (who are much better equipped to analyze that data and provide value to the website operators than the operators themselves), Plaintiff and his lawyers are capitalizing on that reality by arguing the vendors are actually "wiretapping" that data in violation of CIPA—a 1960s-era statute—and that the companies that hire such vendors are somehow aiding-and-abetting CIPA violations.

Plaintiff's Complaint is grossly deficient in pleading even the most basic facts that could support a viable CIPA claim. The Complaint alleges that Charter sells phone, TV, and internet access through its Spectrum.com website. Plaintiff further alleges that the website contains a chat feature that visitors can use to communicate with Charter and that Charter hired Asapp, a third-party vendor, to embed Asapp's software into the chat feature so that Asapp can collect, store, and analyze transcripts of those communications on Charter's behalf. In doing so, Plaintiff alleges that Asapp is violating CIPA because it is wiretapping and eavesdropping on conversations, and that Charter is aiding and abetting Asapp's CIPA violations.

Plaintiff's CIPA aiding-and-abetting claim against Charter is insufficiently pleaded and cannot survive dismissal for several reasons:

***First***, Plaintiff's CIPA claims fails because the Complaint does not allege any cognizable privacy injury stemming from the purported violation. The bare allegation

that Asapp accessed Plaintiff's personally identifiable information (even if true) is insufficient to support the claim, and the Complaint pleads no other injury arising from the alleged CIPA violation. ***Second***, CIPA contains a "party exemption" that recognizes parties to a conversation cannot eavesdrop on their own conversations. Numerous courts have applied this exemption to scenarios like what Plaintiff alleges here: Charter paid a third-party vendor to record and analyze webchat communications *on behalf of Charter*. Plaintiff's own allegations show Asapp acted as an extension of Charter, and not as a third-party eavesdropper. ***Third***, Plaintiff's CIPA claim fails because the Complaint fails to allege that his purportedly intercepted communications were protected under CIPA. ***Fourth***, Plaintiff also failed to allege that Asapp's interception of his communications occurred while the communications were "in transit," which is required for an actionable claim under CIPA. ***And finally***, Plaintiff's Complaint fails to allege the requisite scienter—that Charter willfully or knowingly aided and abetted Asapp's violation of CIPA—because alleging only that Charter knew or intended for Asapp to intercept the webchat communication is not enough to plead a viable CIPA aiding and abetting claim.

Based on the foregoing, the Court should dismiss Plaintiff's Complaint. If the Court declines to do so, however, and is inclined to allow the case to move forward, Charter respectfully requests that the Court grant Charter leave to conduct limited, expedited discovery to determine whether this case is arbitrable. Charter incorporates an arbitration provision in agreements with Spectrum subscribers that could very well apply to this action. But, to date, Charter has been unable to confirm with Plaintiff's counsel whether Plaintiff himself is a Spectrum subscriber. Accordingly, good cause exists to at least permit Charter to conduct early discovery to determine whether this case may be removed for arbitration.

## II. <u>COMPLAINT'S ALLEGATIONS</u>

Charter sells phone, TV, and internet access solutions via its website, Spectrum.com. *See* Compl. at ¶ 5. Plaintiff alleges that Charter pays a third-party

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1
II. COMPLAINT'S ALLEGATIONS ..... 2
III. LEGAL STANDARD ..... 3
IV. ARGUMENT ..... 4
A. The Complaint Fails to State an Aiding-and-Abetting Claim Under Section 631(a). ..... 4
1. Plaintiff Fails to Allege Any Injury, Which CIPA Requires to Bring a Private Claim. ..... 5
2. Plaintiff Fails to Plead That Asapp Violated Section 631(a) Given Section 631(a)'s "Party Exemption." ..... 10
3. Plaintiff Failed to Allege that His Webchat Communications Contained Content That is Subject to Section 631(a)'s Protections. ..... 14
4. Plaintiff Failed to Adequately Plead that His Communications Were Intercepted While in Transit. ..... 16
5. Plaintiff Fails to Plead that Charter Knowingly or Willfully Aided and Abetted Asapp's Purported Violation of Section 631(a)'s Second Clause. ..... 18
B. The Complaint Should Be Dismissed With Prejudice. ..... 19
C. If the Court is Inclined to Not Dismiss This Action, Good Cause Exists to Grant Charter Leave to Conduct Limited Expedited Discovery Regarding This Claim's Arbitrability ..... 20
V. CONCLUSION ..... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ades v. Omni Hotels Mgmt. Corp.*,
46 F. Supp. 3d 999 (C.D. Cal. 2014) ... 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 3, 4

*Augustine v. Great Wolf Resorts, Inc.*,
2024 U.S. Dist. LEXIS 127257 (S.D. Cal. July 18, 2024) ... 15, 16

*Boorstein v. CBS Interactive, Inc.*,
Cal. App. 4th 456 (2013) ... 6

*Boorstein v. Men's Journal, LLC*,
2012 WL 2152815 (C.D. Cal. 2012) ... 6

*In re BPS Direct, LLC*,
705 F. Supp. 3d 333 (E.D. Pa. 2023) ... 9

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ... 8

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) ... 12, 14

*In re C.H.*,
53 Cal. 4th 94 (2011) ... 6

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ... 17

*Carrese v. Yes Online Inc.*,
2016 WL 6069198 (C.D. Cal. Oct. 13, 2016) ... 7, 9

*Carrico v. City & Cnty. of San Francisco*,
656 F.3d 1002 (9th Cir. 2011) ... 20

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ... 8

*Cody v. Boscov's, Inc.*,
658 F. Supp. 3d 779 (C.D. Cal. 2023) .......... 13

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) .......... 4

*Dix v. Superior Court*,
53 Cal. 3d 442 (1991) .......... 6

*Dumas v. Kipp*,
90 F.3d 386 (9th Cir. 1996) .......... 20

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 14

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) .......... 4

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 10, 12, 14, 15

*Heiting v. Athenahealth, Inc.*,
2024 U.S. Dist. LEXIS 133617 (C.D. Cal. July 29, 2024) .......... 17

*Heiting v. Taro Pharms. United States, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......... 15, 16, 18

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) .......... 19

*Jones v. Tonal Sys.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) .......... 11

*King v. Conde Nast Publications*,
2012 WL 3186578 (C.D. Ca1. 2012), aff'd 2014 WL 607385 (9th Cir. Feb. 18, 2014) .......... 7

*Laub v. United Stated Department Of The Interior*,
342 F.3d 1080 (9th Cir. 2003) .......... 20

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) .......... 13, 16

*Licea v. Old Navy, LLC*,
669 F. Supp. 3d 941 (C.D. Cal. 2023) .......... 10

*Licea v. Vitacost.com*,
683 F. Supp. 3d 1118 (S.D. Cal. 2023) ........................................................ 10

*Lieberman v. KCOP Television, Inc.*,
110 Cal. App. 4th 156 (2003) ........................................................ 7

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) ........................................................ 8

*Massie v. Gen. Motors LLC*,
2022 WL 534468 (D. Del. Feb. 17, 2022) ........................................................ 9

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ........................................................ 5

*McCoy v. Alphabet, Inc.*,
2021 U.S. Dist. LEXIS 24180 (N.D. Cal. Feb. 2, 2021) ........................................................ 8

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ........................................................ 9

*Miller v. Hearst Communications, Inc.*,
2012 WL 3205241 (C.D. Cal. 2012), aff'd 2014 WL 607400 (9th Cir. Feb. 18, 2014) ........................................................ 7

*Mintz v. Subaru of Am., Inc.*,
716 F. App'x 618 (9th Cir. 2017) ........................................................ 4

*People v. Avery*,
27 Cal. 4th 49 (2002) ........................................................ 4

*Revitch v. New Moosejaw, LLC*,
2019 U.S. Dist. LEXIS 186955 (Oct. 23, 2019) ........................................................ 14

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) ........................................................ 19

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) ........................................................ 13

*Semitool, Inc. v. Tokyo Electron America, Inc.*,
208 F.R.D. 273 (N.D. Cal. 2002) ........................................................ 20, 21

*Smidga v. Spirit Airlines, Inc.*,
2024 WL 1485853 (W.D. Pa. Apr. 5, 2024) ........................................................ 9

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) .......... 3

*Surrey v. TrueBeginnings, LLC*,
168 Cal. App. 4th 414 (2008) .......... 5

*Tavernetti v. Super. Ct.*,
22 Cal.3d 187 (1978) .......... 4

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
315 F. Supp. 3d 1147 (C.D. Cal. 2018) .......... 4

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) .......... 17

*Valenzuela v. Kroger Co.*,
2025 U.S. Dist. LEXIS 52402 (C.D. Cal. March 13, 2025) .......... 19

*Valenzuela v. Nationwide*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) .......... 17

*Valenzuela v. Super Bright LEDs Inc.*,
2023 U.S. Dist. LEXIS 218403 (C.D. Cal. Nov. 27, 2023) .......... 14

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......... 17

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979) .......... 4

*Williams v. What If Holdings, LLC*,
2022 U.S. Dist. LEXIS 230732 (N.D. Cal. Dec. 22, 2022) .......... 10

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 8

*Yoon v. Lululemon United States*,
549 F. Supp. 3d 1073 (C.D. Cal. July 15, 2021) .......... 6, 15

**Statutes & Rules**

Cal. Pen. Code § 631 .......... 4
Cal. Pen. Code § 631(a) .......... *passim*
Cal. Pen. Code § 637.2 .......... 5
Cal. Rules of Court, Rule 7-3 .......... 2
Fed. R. Civ. P. 12(b)(6) .......... 1, 3
Fed. R. Civ. P. 26(d) .......... 1, 20
Fed. R. Civ. P. 26(f) .......... 20

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Charter Communications, Inc. ("Charter") respectfully submits this Memorandum of Points and Authorities in Support of Charter's Motion to Dismiss Plaintiff's Complaint, Or In the Alternative, For Leave to Conduct Limited Expedited Discovery Regarding Arbitrability.

## I. INTRODUCTION

This lawsuit is one of dozens of California Invasion of Privacy Act ("CIPA") class actions that Plaintiff Miguel Esparza ("Plaintiff") and his counsel have brought against companies in recent years. As more and more commercial website operators outsource their website-visitor data-retention and data-management responsibilities to third-party vendors (who are much better equipped to analyze that data and provide value to the website operators than the operators themselves), Plaintiff and his lawyers are capitalizing on that reality by arguing the vendors are actually "wiretapping" that data in violation of CIPA—a 1960s-era statute—and that the companies that hire such vendors are somehow aiding-and-abetting CIPA violations.

Plaintiff's Complaint is grossly deficient in pleading even the most basic facts that could support a viable CIPA claim. The Complaint alleges that Charter sells phone, TV, and internet access through its Spectrum.com website. Plaintiff further alleges that the website contains a chat feature that visitors can use to communicate with Charter and that Charter hired Asapp, a third-party vendor, to embed Asapp's software into the chat feature so that Asapp can collect, store, and analyze transcripts of those communications on Charter's behalf. In doing so, Plaintiff alleges that Asapp is violating CIPA because it is wiretapping and eavesdropping on conversations, and that Charter is aiding and abetting Asapp's CIPA violations.

Plaintiff's CIPA aiding-and-abetting claim against Charter is insufficiently pleaded and cannot survive dismissal for several reasons:

***First***, Plaintiff's CIPA claims fails because the Complaint does not allege any cognizable privacy injury stemming from the purported violation. The bare allegation

that Asapp accessed Plaintiff's personally identifiable information (even if true) is insufficient to support the claim, and the Complaint pleads no other injury arising from the alleged CIPA violation. ***Second***, CIPA contains a "party exemption" that recognizes parties to a conversation cannot eavesdrop on their own conversations. Numerous courts have applied this exemption to scenarios like what Plaintiff alleges here: Charter paid a third-party vendor to record and analyze webchat communications *on behalf of Charter*. Plaintiff's own allegations show Asapp acted as an extension of Charter, and not as a third-party eavesdropper. ***Third***, Plaintiff's CIPA claim fails because the Complaint fails to allege that his purportedly intercepted communications were protected under CIPA. ***Fourth***, Plaintiff also failed to allege that Asapp's interception of his communications occurred while the communications were "in transit," which is required for an actionable claim under CIPA. ***And finally***, Plaintiff's Complaint fails to allege the requisite scienter—that Charter willfully or knowingly aided and abetted Asapp's violation of CIPA—because alleging only that Charter knew or intended for Asapp to intercept the webchat communication is not enough to plead a viable CIPA aiding and abetting claim.

Based on the foregoing, the Court should dismiss Plaintiff's Complaint. If the Court declines to do so, however, and is inclined to allow the case to move forward, Charter respectfully requests that the Court grant Charter leave to conduct limited, expedited discovery to determine whether this case is arbitrable. Charter incorporates an arbitration provision in agreements with Spectrum subscribers that could very well apply to this action. But, to date, Charter has been unable to confirm with Plaintiff's counsel whether Plaintiff himself is a Spectrum subscriber. Accordingly, good cause exists to at least permit Charter to conduct early discovery to determine whether this case may be removed for arbitration.

## II. <u>COMPLAINT'S ALLEGATIONS</u>

Charter sells phone, TV, and internet access solutions via its website, Spectrum.com. *See* Compl. at ¶ 5. Plaintiff alleges that Charter pays a third-party

vendor, "Asapp," to embed its "chat technology code" into the chat feature on Charter's Spectrum.com website, and that the Asapp software routes those webchat communications to Asapp's servers, where transcripts of those chats are simultaneously saved, "along with other user data, in real time." Compl. at ¶ 10. Plaintiff further alleges that webchat communications may contain "personally identifiable information ("PII")," as Plaintiff's did when he used the webchat (although the alleged PII is undefined). Compl. at ¶ 11. Plaintiff does not specify when Asapp intercepts, saves, and analyzes the data. Compl. at ¶¶ 13–15. Instead, Plaintiff includes screenshots of the page-source code for the webchat feature at issue and alleges that Asapp intercepts the webchat communications "in real time." *Id.* at ¶¶ 11–15.

To explain Charter's alleged purpose in hiring Asapp, Plaintiff alleges that Asapp does more than record the webchats; it analyzes customer data. Compl. at ¶ 15. Plaintiff further contends that Asapp is "interested" in analyzing the data, and the "reason is money." *Id.* Charter allegedly "profit[s]" from Asapp's analysis because it can run targeted social media advertising (*id.*), while Asapp "profit[s]" from analyzing the webchats because the analysis and not just the "storage function…is why Defendant pays Asapp for its software." *Id.* at ¶¶ 15–16.

Based on these allegations, Plaintiff alleges Asapp violates CIPA by eavesdropping on communications and brings a single cause of action under CIPA against Charter for aiding-and-abetting Asapp's alleged CIPA violation. *Id.* at ¶ 30.

## III. LEGAL STANDARD

This Court should grant a motion to dismiss under Rule 12(b)(6) if the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal marks and citation omitted). A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory or has not alleged sufficient facts to support a cognizable legal theory. *Somers*

*v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). Well-pleaded factual allegations are assumed to be true, but courts need not credit conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *Mintz v. Subaru of Am., Inc.*, 716 F. App'x 618, 621 (9th Cir. 2017) (affirming dismissal of claim where plaintiff failed to plausibly allege specific facts despite ample opportunity to do so because the "court is not obligated to make 'unwarranted deductions of fact, or unreasonable inference…'") (citing *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Neither are allegations that "merely tracks the language of the statutes itself, without providing facts to substantiate the claimed legal conclusions." *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.,* 315 F. Supp. 3d 1147, 1175 (C.D. Cal. 2018).

The California Penal Code creates a civil private right of action for CIPA violations. To the extent there is any ambiguity in the application of CIPA, that ambiguity should be construed in Defendants' favor. *People v. Avery*, 27 Cal. 4th 49, 58 (2002) ("ambiguous penal statutes are construed in favor of defendants . . . [if] two reasonable interpretations of the same provision stand in relative equipoise"); *see Warden v. Kahn*, 99 Cal. App. 3d 805, 814, 818, n.3 (1979) (as a penal statute, ambiguity in Section 631 should be interpreted narrowly).

## IV. <u>ARGUMENT</u>

### A. <u>The Complaint Fails to State an Aiding-and-Abetting Claim Under Section 631(a)</u>.

CIPA's Section 631(a) "protects against three distinct types of harms: 'intentional wiretapping, willfully attempting to learn the contents or meaning of a communication in transit over a wire, and attempting to use or communicate information obtained as a result of engaging in either of the previous two activities.'" *In re Google Inc.*, 2013 WL 5423918, at *15 (N.D. Cal. Sept. 26, 2013) (citing *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 192 (1978)). "Section 631(a) further contains

a fourth basis for liability, for anyone 'who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the' other three bases for liability." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021) (quoting Section 631(a)).

Plaintiff alleges Charter is only liable under Section 631(a) for violating the "fourth clause or prong because [Charter] 'aids, agrees with, employs, or conspires with'" Asapp. Compl. at ¶ 30. Reading the Complaint liberally, this single aiding-and-abetting claim is based on Plaintiff's contention that Asapp violated the second clause of Section 631(a) when Charter purportedly paid Asapp to store and conduct data analysis of transcripts from conversations that Spectrum customers or potential customers had using the chat feature on Spectrum.com. Compl. at ¶¶ 14–16.

This claim cannot survive dismissal for each of the reasons set forth below.

**1. Plaintiff Fails to Allege Any Injury, Which CIPA Requires to Bring a Private Claim.**

Plaintiff's aiding-and-abetting claim fails at the outset because he has not sufficiently pleaded perhaps the most basic element of the claim: any cognizable injury.

Under CIPA's plain terms, a private plaintiff must allege a ***violation*** of CIPA and also allege ***injury*** resulting from the purported CIPA violation. Cal. Penal Code § 637.2 ("Any person *who has been injured* by a violation of this chapter [*i.e.*, CIPA] may bring an action against the person who committed the violation[.]") (emphasis added). Based on well-accepted canons of statutory interpretation, the alleged injury must be separate and distinct from the alleged CIPA violation. "When construing a state statute, federal courts apply state law of statutory construction." *Ades v. Omni Hotels Mgmt. Corp.*, 46 F. Supp. 3d 999, 1005 (C.D. Cal. 2014) (citing *Bass v. County of Butte*, 458 F.3d 978, 981 (9th Cir. 2006)). The prerequisites for standing to assert statutorily-based causes of action are determined from the statutory language, as well as the underlying legislative intent and the purpose of the statute. *Surrey v.*

*TrueBeginnings, LLC*, 168 Cal. App. 4th 414, 417–18 (2008), overruled on other grounds by *White v. Square, Inc.*, 7 Cal. 5th 1019 (2019). To comport with California's basic tenets of statutory interpretation, the word "injury" must be given effect. Otherwise, it would be rendered impermissibly superfluous. *See Dix v. Superior Court*, 53 Cal. 3d 442, 459 (1991) ("Where reasonably possible, we avoid statutory constructions that render particular provisions superfluous or unnecessary."); *In re C.H.*, 53 Cal. 4th 94, 107 (2011) ("When the Legislature uses different words or phrasing in contemporaneously enacted statutory provisions, a strong inference arises that a different meaning was intended.").

Notably, this Court has previously interpreted CIPA to require an allegation of injury separate from a purported privacy violation. *See Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073, 1085 (C.D. Cal. 2021) (dismissing CIPA claim against Quantum Metric because the plaintiff failed to allege any injury stemming from Quantum Metric's purported CIPA violation, and "CIPA is far more straightforward than the analogous language of the Wiretap Act: only a person 'who has been ***injured*** by a violation of this chapter' may assert a civil claim") (quoting CIPA § 637.2) (emphasis added). And other courts have applied the same basic statutory-interpretation tenets to similar privacy-based California statutes, holding that a plaintiff must plead ***both*** a "violation" ***and*** an "injury" to allege a viable private claim. *See, e.g., Boorstein v. CBS Interactive, Inc.*, 222 Cal. App. 4th 456, 460 (2013). In *Boorstein*, for example, the plaintiff filed an action under California's shine the light law ("STL"), a statute that requires "businesses that share customers' personal information with third parties" to make certain disclosures. *Id.* As with CIPA, the STL provides that a claimant "***injured*** by a ***violation*** of [the STL] may institute a civil action to recover damages." *Id.* at 466 (quoting Cal. Civ. Code § 1798.84) (emphasis added). In determining whether the *Boorstein* plaintiff had statutory standing under the STL, the California Court of Appeal held that the plaintiff failed to allege an injury separate from the violation at issue and thus lacked statutory standing to bring the

lawsuit. *Id.* *See also Boorstein v. Men's Journal, LLC*, 2012 WL 2152815, *3 (C.D. Cal. July 14, 2012) ("[T]he STL law does not allow a cause of action based solely upon a failure to comply with the statute. Rather, [the statute] expressly requires an injury resulting from a violation. Thus, a violation of the statute, without more, is insufficient."); *Miller v. Hearst Communications, Inc.*, 2012 WL 3205241, at *7 (C.D. Cal. Aug. 3, 2012), aff'd 2014 WL 607400 (9th Cir. Feb. 18, 2014) ("[T]he STL law's remedy provision requires an 'injury' in conjunction with a violation. Because Plaintiff fails to allege a cognizable injury, she lacks statutory standing for her STL claim, regardless of whether her allegations are sufficient to state a violation of the STL law."); *King v. Conde Nast Publications*, 2012 WL 3186578, at *5 (C.D. Ca1. Aug. 3, 2012), aff'd 2014 WL 607385 (9th Cir. Feb. 18, 2014).

Applied here, to survive Charter's 12(b)(6) motion, Plaintiff must have pleaded a CIPA violation ***as well as some concrete privacy injury, presumably resulting from harm to some protectable privacy interest***. *See, e.g.*, *Lieberman v. KCOP Television, Inc.,* 110 Cal. App. 4th 156, 161 (2003) (a viable CIPA claim requires that the claimant suffer an injury "caused" by the violation, and a violation only occurs where the claimant has a protectable privacy interest in the information, *i.e.*, information over which the claimant has a "reasonable expectation of privacy"); *Carrese v. Yes Online Inc*., 2016 WL 6069198, at *7–11 (C.D. Cal. Oct. 13, 2016) (assessing whether statutory standing was adequately plead, and holding that "[t]o state a claim under CIPA, 'a party to the communication' must have the reasonable expectation of confidentiality") (citing *Frio v. Sup. Ct.*, 203 Cal. App. 3d 1480, 1488 (1988)). The Complaint does no such thing. Plaintiff does not explain when he visited Spectrum.com, what information he allegedly typed into the chatbox, or why he believes that information was private. Where Plaintiff has not even tried to explain what private information was captured, or what privacy interest is involved, he cannot possibly establish the injury caused by the violation of his privacy interest, as required to adequately plead his CIPA claim.

Plaintiff also has not even tried to explain what reasonable expectation of privacy he would have in *any* information he voluntarily provided on a public commercial website. The Complaint pleads in conclusory fashion that Plaintiff "shared personal data" and "personally identifying information" through the chatbox on Spectrum.com. Compl. at ¶ 21. As an initial matter, those descriptions are wholly unhelpful where this Court is left to wonder what Plaintiff may consider "personal data." As other courts have held, not all data that commercial websites may collect—including even personally identifiable information—are CIPA-protected content. *See, e.g.*, *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (text messages are CIPA-protected content, but "user names, passwords, and geographic location information are not"); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) (intercepted text messages and URLs containing search terms constitute CIPA-protected content, but user names and passwords do not, even when transmitted together to allow another to gain access); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1034 (N.D. Cal. 2014) ("email content" is content for wiretapping statutes, but "name, address, email address or phone number" are not CIPA-protected); *McCoy v. Alphabet, Inc.*, 2021 U.S. Dist. LEXIS 24180, at *41–42 (N.D. Cal. Feb. 2, 2021) ("data on when and how often an Android Smartphone user opens and runs non-Google apps and the amount of time spent on the apps" is not content). Therefore, merely alleging that "personally identifiable information" was collected does not even suffice to plead that CIPA applies.

But even assuming that CIPA applies, pleading that Spectrum.com captured "personally identifying information" that Plaintiff willingly shared on a public website also does not sufficiently explain what protectable privacy interest is at issue that could possibly support a CIPA "injury." Notably, applying a similar analysis under Article III, other courts have held that such pleading cannot support injury-in-fact for purposes of standing. In *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823 (S.D. Cal. June 12, 2023), for example, the court found no concrete harm

where it was alleged that the plaintiff visited defendant's website to obtain information on flight pricing, and defendant recorded, saved, and replayed a website visitor's interactions with a given website, including mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of webpages visited, and/or other electronic communications in real-time. And in *Mikulsky v. Noom, Inc.,* 682 F. Supp. 3d 855 (S.D. Cal. 2023), the court found no concrete harm where it was alleged that the plaintiff visited the defendant's website, browsed for different products for sale, hovered and clicked on certain products and services, and typed her personal information into text fields. *See also Massie v. Gen. Motors LLC,* 2022 WL 534468 (D. Del. Feb. 17, 2022) (court found no concrete harm where defendant used session replay to record website users' mouse movements, clicks, and keystrokes, producing "video-accurate renders of real visits" to websites); *Smidga v. Spirit Airlines, Inc.,* 2024 WL 1485853, at *5 (W.D. Pa. Apr. 5, 2024); *In re BPS Direct, LLC*, 705 F. Supp. 3d 333, 357 (E.D. Pa. 2023) ("website visitors do not have standing to sue under the wiretap statutes where they fail to identify the specific personal information captured by session replay code."). If Plaintiff's pleading cannot clear even the initial hurdle of injury-in-fact for purposes Article III standing, it certainly cannot suffice to plead the statutory injury that CIPA requires Plaintiff to establish to plead the claim.

Without sufficient information as to what Plaintiff's allegedly-collected and shared information may have been, this Court cannot conclude that any protectable privacy interest was even at issue, let alone that Plaintiff was injured as a result. *See Carrese v. Yes Online Inc*., 2016 WL 6069198, at *3–5 (C.D. Cal. Oct. 13, 2016) (dismissing one plaintiff from the case because without an allegation that she was a party to the communication, the court could not infer that she ever suffered a privacy injury). Plaintiff's claim therefore fails on the most basic element.

**2. Plaintiff Fails to Plead That Asapp Violated Section 631(a) Given Section 631(a)'s "Party Exemption."**

Plaintiff's aiding and abetting claim against Charter also fails because the Complaint fails to sufficiently plead that Asapp violated section 631(a) where Plaintiff's own pleaded facts demonstrate Asapp is subject to the "party exemption."

To adequately plead liability for aiding and abetting under Section 631(a), a "[p]laintiff must first adequately plead [a third party's] underlying violations of the statute," and "to establish such violations, Plaintiff must provide facts suggesting that the third party recorded [the defendant's] customers' information for some use or potential future use ***beyond*** simply supplying this information back to [the defendant]." *Licea v. Old Navy, LLC*, 669 F. Supp. 3d 941, 947 (C.D. Cal. 2023) (emphasis added) (citing *Williams v. What If Holdings, LLC*, 2022 U.S. Dist. LEXIS 230732, *10 (N.D. Cal. Dec. 22, 2022) ("[T]he fact that [defendant] used software rather than a physical recording device for the same function does not mean that it aided and abetted wiretapping.").

Courts have repeatedly held that the use of a third-party vendor to simply record, store, and manage data that is collected from a website's chat feature is not actionable under Section 631(a). *See, e.g.*, *Licea v. Vitacost.com*, 683 F. Supp. 3d 1118, 1123–24 (S.D. Cal. 2023) (citing several decisions and stating "This Court agrees with those decisions holding that a website owner that engages a vendor to record website-based communications for the website owner's own purposes is not thereby aiding and abetting eavesdropping by a third party in violation of Section 631(a)."). It is well-settled that a party to a communication cannot be liable for eavesdropping on its own conversation, and that the "party exemption" applies even when a party hires a vendor to use software to transcribe and analyze conversations. *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021) ("a party to a communication can record it (and is not eavesdropping when it does)").

Here, Plaintiff fails to sufficiently plead that Asapp is anything more than a

vendor hired to store and manage data collected through the chat feature on Spectrum.com. In sweeping, conclusory fashion—and apparently misunderstanding prior decisions explaining what is required to plead third-party use "beyond" supplying information back to the defendant—Plaintiff alleges the following:

- "Asapp does more than merely provide a storage function for Website users' chat communications with Defendant. It is more than the proverbial 'tape-recorder' in the hand of Defendant." (Compl. at ¶ 16);
- "Asapp uses its record of Website users' interaction with Defendant's chat feature for data analytics and marketing/advertising to consumers – ***indeed, that is why*** Defendant pays Asapp for its software." (*id.*) (emphasis); and
- "Asapp is capable of using, and does use, the intercepted chat communications for its own purposes beyond simply supplying such communications back to Defendant" (*id.*).

Based on the foregoing, it appears Plaintiff contends that Asapp falls outside out section 631(a)'s party exemption because Asapp analyzes—and does not merely record—Charter's webchats. Along these same lines, Plaintiff further alleges:

- Asapp does more than record the webchats, it analyzes customer data (Compl. at ¶ 15);
- Asapp is "interested" in analyzing the data, and the "reason is money" (*id.*);
- Defendant "profit[s]" from Asapp's analysis because it can run targeted social media advertising (*id.*); and
- Meanwhile, Asapp "profit[s]" from analyzing the webchats because the analysis and not just the "storage function…is why Defendant pays Asapp for its software" (*id.* at ¶¶ 15–16).

But analyzing *Charter's data for Charter's benefit* does not take Asapp out of the party exemption nor somehow demonstrate Asapp is using webchat information for its "own purposes." Even if the Court were to assume as true that Charter pays Asapp to take the extra step of analyzing the communications, Asapp is still only functioning

as an outsourced data analyst—and still as a mere extension of Charter, not as a third party for purposes of Plaintiff's claim under Section 631(a).

*Jones v. Tonal Sys.* is illustrative on this point. 751 F. Supp. 3d 1025, 1033–36 (S.D. Cal. 2024). There, the plaintiff alleged that a company (Tonal) paid a vendor (Drift) to store and analyze chat communications. In doing so, the plaintiff alleged Tonal violated CIPA because the vendor was using the communications "for its own purposes." *Id.* The court disagreed, holding:

> Plaintiff has not adequately alleged that Drift has the capability of using the chat data for its own purposes and benefit. Plaintiff's first allegation that chat conversations are first routed through Drift's server enabling Drift to 'analyze, interpret, and collect customer-support agent interactions in real time to create live transcripts of communications as they occur,' only supports the inference that Drift receives and stores communications for the benefit of its client, Tonal…Plaintiff's allegations failed to adequately allege that Drift violated the second prong of CIPA section 631(a).

*Id.* at 1035–36 (citing *Byars,* 656 F. Supp. 3d at 1068) (granting motion to dismiss CIPA chatbot lawsuit because "Defendant uses a third-party vendor to record and analyze its own data in aid of [Defendant's] business, not the aggregation of data for resale, which makes the third-party an extension of Defendant's website, not a third-party eavesdropper") (quotations and citation omitted).

Similarly, in *Graham v. Noom, Inc.,* 533 F. Supp. 3d 823 (N.D. Cal. 2021), the plaintiffs visited Noom's website to investigate Noom's "diet offerings." *Id.* at 829–31. Noom had hired a third-party vendor "to capture and analyze data" to allow Noom to see how visitors were using the website. *Id.* at 828. The plaintiffs alleged that the vendor embedded code on the website to capture the data, which was then stored "in the cloud on [the vendor's] servers." *Id.* Based on this, the plaintiffs brought a lawsuit under CIPA § 631(a) arguing that Noom was liable for aiding and abetting the third-party vendor's eavesdropping. *Id.* at 831. Noom brought a motion to dismiss, which the court granted, holding that Noom could not aid and abet the vendor's alleged eavesdropping because the vendor was merely a tool used by Noom rather than an independent third-party:

> FullStory is a vendor that provides a software service that captures its clients' data, hosts it on FullStory's servers, and allows the clients to analyze their data. . . . [T]here are no allegations here that FullStory intercepted and used the data itself. Instead, as a service provider, FullStory is an extension of Noom. It provides a tool — like [a] tape recorder … that allows Noom to record ***and analyze*** its own data in aid of Noom's business. . . . It is not a third-party eavesdropper. As a result, Noom is not liable for aiding and abetting FullStory's wrongdoing because there is no wrongdoing.

*Id.* at 832–33 (emphasis added) (citing *Rogers v. Ulrich,* 52 Cal. App. 3d 894, 899 (1975)).

Likewise here, Asapp's ability to analyze the data *for Charter* does not take Asapp out of the "party exemption" for purposes of a 631(a) claim. This is true even if Asapp is being paid to analyze the data, as the Complaint alleges. *See Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1075 (C.D. Cal. 2023) (dismissing Section 631(a) aiding-and-abetting claim where plaintiff alleged defendant used vendor to intercept in real time, record, and store highly sensitive data from website chats for financial gain by "[d]efendant *and* third parties"). If a third party stands to see financial gain, that also does not mean the data analysis is for the third party's "own purposes" where "[t]he bare allegations only suggest that the third party analyzed or used the data on behalf of or in tangent with Defendant." *Id.* The Complaint does not plead any facts—as opposed to bare allegations—that Asapp did anything more analyze data for Charter in this case. And to the extent the Complaint pleads only in conclusory fashion that Asapp uses the information for its "own purposes," courts have held that type of pleading does not suffice. *See, e.g.*, *Cody v. Boscov's, Inc.*, 658 F. Supp. 3d 779, 782–83 (C.D. Cal. 2023) (disregarding "allegation that Webex and Customer use the code embedded in the chat program to 'harvest valuable data from such [customer] communications for the benefit of their clients like Defendant'" because such an allegation is "too vague and conclusory to meet [the well-ped complaint] standard" for a CIPA aiding-and-abetting claim).

Notably, where courts have held at the pleading stage that the third party was *not* subject to the "party exemption," the complaints alleged, for example, that the

third party captured data from a website to sell to advertisers to generate revenue because selling the data to advertisers is what constitutes use of the data for the third party's own purposes. *See In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 607–08 (9th Cir. 2020); *Revitch v. New Moosejaw, LLC*, 2019 U.S. Dist. LEXIS 186955, *2 (Oct. 23, 2019). In fact, in analyzing the exemption, courts have routinely assessed complaints for allegations that ***the vendor resells the data it allegedly collects***. *See Graham,* 533 F. Supp. 3d at 832 (distinguishing vendors that function as "tools" from those that "were independent parties who mined information from other websites and sold it"); *Byars v. Hot Topic, Inc.,* 656 F. Supp. 3d 1051, 1068 (C.D. Cal. 2023) (holding that a third party was a tool rather than an eavesdropper because the complaint failed to alleged that the third party engaged in "aggregation of data for resale"); *Valenzuela v. Super Bright LEDs Inc.,* 2023 U.S. Dist. LEXIS 218403, at *22 (C.D. Cal. Nov. 27, 2023) (dismissing Section 631(a) aiding-and-abetting claim predicated on an alleged third-party chat vendor's interception because "it has not been alleged that the software could simultaneously disclose [the plaintiff's] communications to anyone other than [the defendant]"). No such allegations relating to resale of information are present here.

In sum, Plaintiff's own pleaded facts demonstrate his CIPA claim falls within the "party exemption" for such claims, and should be dismissed.

**3. Plaintiff Failed to Allege that His Webchat Communications Contained Content That is Subject to Section 631(a)'s Protections.**

Plaintiff's aiding-and-abetting claim also fails because Plaintiff fails to adequately allege that his webchats on Spectrum.com contained content protected under Section 631(a).

As noted *supra*, Plaintiff fails to include any details regarding the specific information he purportedly disclosed over the chat feature on Spectrum.com. Instead, Plaintiff alleges only generally that "visitors often share personal and/or confidential

data, in addition to personally identifying information, with [Charter] via the Website chat feature," and that "Plaintiff did so." Compl. at ¶ 18. This is insufficient to state a claim for a Section-631(a) violation because Section 631(a) does not apply to all content, and simply referring to content as "personally identifying information" does not mean CIPA applies.

Section 631(a) "protects only the internal, user-generated material of a message, not routine identifiers, ***whether automatically generated or not***.'" *Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (emphasis added). Accordingly, Section 631(a) does not apply to "record information" generated in the course of a communication, such as a customer's name, address, subscriber number, or identity. *Graham*, 533 F. Supp. 3d at 833. Neither does the protection apply to a communication's origin, length, time, or geolocation data. *Id.* Even internet protocol (IP) addresses, usernames, and passwords fall outside the scope of "content" protected under Section 631(a). *Yoon*, 549 F. Supp. 3d at 1082–83.

Courts have routinely dismissed Section 631(a) aiding-and-abetting claims where complaints contained only vague allegations regarding what communications were intercepted. *See, e.g.*, *Heiting v. Taro Pharms. United States, Inc.*, 709 F. Supp. 3d 1007, 1018 (C.D. Cal. 2023); *Augustine v. Great Wolf Resorts, Inc.*, 2024 U.S. Dist. LEXIS 127257, *12–18 (S.D. Cal. July 18, 2024). In *Heiting*, for example, the plaintiff alleged that the defendant collected "personal information from website users, including personal identifiers, device identifiers, commercial information, electronic and sensory data, browser information, operating system information, and may deduce additional demographic details." *Id.* The court found these allegations impermissibly vague because the plaintiff failed to "allege any ***substantive*** communications by Plaintiff that she believes [the third party] intercepted," and the plaintiff also failed to allege that "[the third party] collected this data." *Id.* The court ultimately dismissed the action because "[t]he Court will not assume out of whole cloth what the contents of any communications were." *Id.* And in *Augustine*, the

plaintiff alleged that she visited a website where she entered her name, address, and credit card information, but the court held that "[t]hese allegations fail to show *communications* between Plaintiff and [the defendant]," that the complaint "would benefit from more specific factual allegations," and that these inadequacies were sufficient to grant the motion to dismiss in full. 2024 U.S. Dist. LEXIS 127257, at *14–18 (emphasis in original).

Likewise here, Plaintiff's vague allegations regarding the contents of his communications are independent grounds for this Court to dismiss the Complaint.

**4. Plaintiff Failed to Adequately Plead that His Communications Were Intercepted While in Transit.**

Plaintiff's aiding-and-abetting claims also fails because Plaintiff has not plead sufficient facts showing the communications were intercepted in transit. "The second clause of Section 631(a) requires that messages be intercepted while in transit." *Licea v. Cinmar*, 659 F. Supp. 3d at 1109. Mere allegations that a message was intercepted "in real time," however, are insufficient. *Id.* A plaintiff asserting a Section 631(a) claim "must provide more than conclusory allegations that messages were 'intercepted in real time.'" *Id.* Dismissal is warranted where a plaintiff fails to allege "sufficient facts as to how and when the third party receives the communications." *Id.*

Plaintiff fails to plausibly allege that his webchats were intercepted "in transit" under this standard. The Complaint alleges, in conclusory fashion, that Asapp "secretly intercept[s]" webchats "in real time," and even when coupled with purported screenshots of the Spectrum website's page-source code, these allegations are materially indistinguishable from allegations that other courts have found insufficient to plead a plausible in-transit interception under Section 631(a). *See Heiting*, 709 F. Supp. 3d at 1018–19 ("Plaintiff has alleged, in general terms, how the interception occurs: through the ***code*** embedded on Defendant's website. However, Plaintiff has not added any ***additional*** factual details to make clear when the interception occurred.

Merely parroting the statutory requirement that it occurred in transit is insufficient.") (emphasis added); *Licea v. Cinmar*, 659 F. Supp. 3d at 1085 (finding plaintiff's general pleading regarding real time interception using chat box software insufficient to state a claim); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758–59 (N.D. Cal. 2023) (finding allegation that defendant's code allowed third party to 'secretly intercept in real time, eavesdrop upon and store transcripts of' chat communications was insufficient to plead the in transit requirement).

Where courts have found a claimant plausibly alleged that the claimant's communications were intercepted while in transit, the claimant alleged much greater details than Plaintiff has done here about the nature of the interception. *See Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) (finding in transit requirement adequately pled where the plaintiff alleged that the defendant reacted right away to the finding of the scan, demonstrating it had been intercepted while in transit); *Valenzuela v. Nationwide*, 686 F. Supp. 3d 969, 978 (C.D. Cal. 2023) (finding plaintiff plausibly alleged in transit interception where she "pointed to statements from [the vendor] regarding '[r]eal-time insights' and [d]ata from every use event ***collected as it happens***.") (emphasis in original). The Complaint here contains no such allegations.

Plaintiff appears to be under the mistaken impression that including screenshots of purported page-source code from the Spectrum.com website gives his otherwise vague allegations adequate specificity to survive the pleading stage. Compl. at ¶¶ 13–14. But this Court has previously found the use of technical graphics insufficient for purposes of a well-pled complaint. *See In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1227–28 (C.D. Cal. 2017) ("Besides their conclusory allegation that [defendant] intercepted their electronic communications 'during transmission,' Plaintiffs rely on a rather inscrutable graphic with no textual explanation and vague allegations about how [defendant's] data collection occurs 'in real time.'"); *Heiting v. Athenahealth, Inc.*, 2024 U.S. Dist. LEXIS 133617, *13 (C.D. Cal. July 29, 2024)

("The graphic included in the FAC, which purports to 'show numerous network transmissions from [Defendant] to Salesforce' is largely unintelligible and does not readily illustrate real-time transmissions from Defendant to Salesforce, as Plaintiff contends."). The Complaint needs details regarding the interception, of course, but those details need to be alleged in plain English. Plaintiff cannot simply shirk this requirement by relying on graphics of unintelligible page-source code.

As with the plaintiffs in *Heiting* and *Vizio*, Plaintiff has failed to meet basic pleading standards to satisfy the "in transit" element of a CIPA claim, which should therefore be dismissed.

**5. Plaintiff Fails to Plead that Charter Knowingly or Willfully Aided and Abetted Asapp's Purported Violation of Section 631(a)'s Second Clause.**

Finally, Plaintiff also fails to plausibly allege that Charter acted with the requisite knowledge or intent to aid and abet Asapp's purported eavesdropping violation under Section 631(a). Plaintiff apparently understands that scienter is required for a viable aiding-and-abetting CIPA claim, as Plaintiff references "intent" in the Complaint. *See* Compl. at ¶ 33 ("Defendant intentionally caused the internet communication between Plaintiff and Defendant's Website to be intercepted during transmission and recorded."). Other than this bare allegation, however, the Complaint says nothing more about Charter's intent.

This does not suffice to support a CIPA aiding-and-abetting claim. As the court held in *Heiting*:

> Defendant points to the California Consumer Privacy Act and argues that [the vendor] was prohibited from using or retaining customer data, other than for the purposes outlined in its contract with Defendant. The Court agrees. While the Complaint alleges that Defendant paid [the vendor] to intercept messages, ***it does not allege facts demonstrating Defendant acted with the requisite knowledge or intent*** to aid and abet Genesys's purported CIPA violation. Therefore, the Court finds that Plaintiff has not plausibly alleged scienter under the statute.

709 F. Supp. 3d at 1009 (emphasis added). Likewise here, if Plaintiff alleges that

Charter aided and abetted Asapp's violation of CIPA because Asapp used the collected information for its own purposes (and was not therefore simply an extension of Charter), and that Charter knew this was occurring, Plaintiff must explain how and why Charter knew. *See Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1123–24 (S.D. Cal. 2024) (dismissing claim because "[w]hile Defendant may have known that LivePerson 'captures the electronic communications of visitors to Defendant's Website' … Plaintiff does not allege that Defendant knew that LivePerson was using the chat data beyond storing it for Defendant or that LivePerson was distributing the chat data to Meta"); *Valenzuela v. Kroger Co.*, 2025 U.S. Dist. LEXIS 52402, *4–8 (C.D. Cal. March 13, 2025) ("It is not a plausible inference that because Emplifi could 'quickly and cheaply' deploy the bot, Kroger should have known Emplifi harvested user data. Nor do the additional allegations of the SAC render plausible that Kroger knew Emplifi's conduct was a breach of duty."); *James v. Walt Disney Co.,* 701 F. Supp. 3d 942, 954 (N.D. Cal. 2023) (dismissing aiding-and-abetting claim against Disney because "while it can reasonably be inferred that Disney knew Oracle would intercept for the benefit of Disney, it cannot reasonably be inferred that Disney knew Oracle would intercept for the benefit of a company other than Disney."). Again, the Complaint offers no allegations whatsoever as to why or how Charter could have known. The Complaint therefore has not sufficiently pleaded the scienter element of the claim.

**B. <u>The Complaint Should Be Dismissed With Prejudice.</u>**

The Court should decline to grant Plaintiff leave to amend the Complaint because Plaintiff cannot truthfully plead additional facts sufficient to state a claim without contradicting what he has already alleged. Plaintiff cannot change the factual allegation that Charter only hired Asapp to analyze webchats for Charter's marketing purposes and that Asapp's only purported violation of CIPA rests on the notion that receiving payment for its analysis comprised the CIPA. Even taking that as true, Asapp falls squarely within the "party exemption" of Section 631(a), and Charter

cannot have aided and abetted Asapp where Asapp's conduct did not violate Section 631(a). As these pleading deficiencies cannot be cured, this Court should dismiss the Complaint with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996); *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

### C. **If the Court is Inclined to Not Dismiss This Action, Good Cause Exists to Grant Charter Leave to Conduct Limited Expedited Discovery Regarding This Claim's Arbitrability.**

To facilitate efficient resolution of this litigation, if the Court were to decline to dismiss this action, Charter respectfully requests that the Court grant Charter leave to conduct a limited amount of discovery prior to the Rule 26(f) conference. Specifically, Charter requests that it be allowed to propound interrogatories and document requests directed at discovering whether Plaintiff is a Spectrum subscriber and thus subject to the arbitration provisions applicable to claims brought against Charter by its subscribers. Charter has been unable to confirm this information using its own records and Plaintiff's counsel has declined to provide it.

Rule 26(d) provides that discovery may be conducted prior to the Rule 26(f) conference by court order "for the convenience of the parties and witnesses and in the interests of justice." Fed. R. Civ. P. 26(d). The authority of district courts to permit discovery is broad. *Laub v. United Stated Department Of The Interior,* 342 F.3d 1080, 1093 (9th Cir. 2003). The Ninth Circuit has adopted a "good cause" standard for granting expedited discovery prior to the Rule 26(f) conference. *Semitool, Inc. v. Tokyo Electron America, Inc.,* 208 F.R.D. 273, 275 (N.D. Cal. 2002). Under this standard, "[g]ood cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool*, 208 F.R.D. at 276. It has also been held that in the context of a motion contesting jurisdiction, "discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub*, 342 F.3d at 1093.

Good cause exists here for the requested leave because the results of such discovery could conserve party and court resources by expediting efficient resolution of this dispute in arbitration without the parties, the witnesses, and the Court having to devote resources to protracted litigation. *Semitool*, 208 F.R.D. at 276 (finding good cause where expedited discovery "would ultimately conserve court resources and expedite the litigation"). Charter therefore respectfully requests an order from this Court permitting the limited discovery attached hereto as "Exhibit A."

## V. CONCLUSION

For the reasons above, Plaintiff respectfully requests this Court to grant the Motion and dismiss the case against Plaintiff in its entirety, with prejudice, or, in the alternative, grant Charter leave to conduct limited expedited discovery regarding arbitrability of this litigation.

DATED: April 25, 2025

**THOMPSON COBURN LLP**

By: */s/ Jose L. Lua-Valencia*

**LUKAS SOSNICKI**
**JOSE L. LUA-VALENCIA**
Attorneys for Defendant CHARTER COMMUNICATIONS, INC.

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Charter Communications, Inc. certifies that this brief contains 6,873 words, which complies with the word limit of L.R. 11-6.1.

DATED: April 25, 2025

**THOMPSON COBURN LLP**

By: */s/ Jose L. Lua-Valencia*
**LUKAS SOSNICKI**
**JOSE L. LUA-VALENCIA**
Attorneys for Defendant CHARTER COMMUNICATIONS, INC.

# PROOF OF SERVICE

***Miguel Esparza v. Charter Communications, Inc.***

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 10100 Santa Monica Boulevard, Suite 500, Los Angeles, California 90067.

On April 25, 2025, I served true copies of the following document(s) described as **CHARTER COMMUNICATIONS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT, OR IN THE ALTERNATIVE, FOR LEAVE TO CONDUCT LIMITED EXPEDITED DISCOVERY RE ARBITRABILITY; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

| | |
|---|---|
| Todd M. Friedman<br>Adrian R. Bacon<br>Law Offices of Todd M. Friedman, P.C.<br>21031 Ventura Blvd., Suite 340<br>Woodland Hills, California 91364<br>Tel: (323) 306-4234<br>tfriedman@toddflaw.com<br>abacon@toddflaw.com | Attorneys for Plaintiff MIGUEL ESPARZA |

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed above and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Thompson Coburn LLP for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 25, 2025, at Los Angeles, California.

*/s/ Deborah G. Clow*

Deborah G. Clow