**THOMPSON COBURN LLP**
**LUKAS SOSNICKI (SBN 295895)**
**lsosnicki@thompsoncoburn.com**
**JOSE L. LUA-VALENCIA (SBN 324087)**
**jlua-valencia@thompsoncoburn.com**
**10100 Santa Monica Boulevard, Suite 500**
**Los Angeles, California 90067**
**Tel: 310.282.2500 / Fax: 310.282.2501**

Attorneys for Defendant CHARTER COMMUNICATIONS, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

MIGUEL ESPARZA,

Plaintiff,

v.

CHARTER COMMUNICATIONS, INC, a Delaware corporation d/b/a SPECTRUM.COM,

Defendant.

Case No. 2:25-cv-02438-JLS-PVC

**CHARTER COMMUNICATIONS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

*[Filed concurrently with Proposed Order, Declaration of Jose Lua-Valencia, and Appendix of Plaintiff's CIPA Cases]*

Hearing: July 18, 2025
Time: 10:30 a.m.
Judge: Hon. Josephine L. Staton
Courtroom: 8A

Complaint Filed: February 13, 2025

Notice of Removal Filed: March 19, 2025

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that on July 18, 2025, or as soon thereafter as counsel may be heard, in Courtroom 8A, 8th Floor, of the above-entitled Court, located at 350 West 1st Street, Los Angeles, California 90012, the Honorable Josephine L. Staton presiding, Defendant Charter Communications, Inc. ("Charter"), will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing the First Amended Complaint in its entirety with prejudice and for other and further relief as the Court deems just and proper, on the ground that the Complaint fails to state a claim upon which relief can be granted.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all pleadings and files in this matter, and any further submissions or argument of counsel that may be filed with or presented to the Court at or before the hearing on this Motion.

**Statement of Rule 7-3 Compliance**

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on May 23, 2025. The parties thoroughly discussed the substance and a potential resolution of the filed motion by written correspondence.

DATED: May 30, 2025 **THOMPSON COBURN LLP**

By: *\/s/ Jose L. Lua-Valencia*

**LUKAS SOSNICKI**
**JOSE L. LUA-VALENCIA**
Attorneys for Defendant CHARTER COMMUNICATIONS, INC.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. THE FIRST AMENDED COMPLAINT'S ALLEGATIONS ..... 2

III. LEGAL STANDARD ..... 5

IV. ARGUMENT ..... 5

A. The FAC Fails to State an Aiding-and-Abetting Claim Under Section 631(a). ..... 5

1. Plaintiff Lacks Statutory Standing to Bring a Private Claim Under CIPA Because He Fails to Allege Any Cognizable Injury Specifically Resulting from a CIPA Privacy Violation. ..... 6

a. Statutory Standing Under CIPA Requires Both a Privacy Violation and a Resulting Cognizable Injury. ..... 7

b. Plaintiff Cannot Plausibly Incur a Cognizable Privacy Injury as a Privacy-Violation "Tester." ..... 8

c. Plaintiff Fails to Allege a Protectable Privacy Interest Under CIPA. ..... 10

d. Plaintiff's Alleged Emotional Harms are Not Cognizable Injuries. ..... 11

2. Plaintiff Fails to Plead That Asapp Violated Section 631(a) Given Section 631(a)'s "Party Exemption." ..... 12

a. Even if Asapp Accepts Charter's Payment to Analyze Charter's Webchats, That Is No Violation of CIPA. ..... 13

b. The FAC Mischaracterizes Asapp's Website, Which in Fact, Confirms Asapp's Analysis Complies with CIPA. ..... 14

3. Plaintiff Fails to Plead that Charter Knowingly or Willfully Aided and Abetted Asapp's Purported CIPA Violation. ..... 17

4. Plaintiff Failed to Adequately Plead that His Communications Were Intercepted While in Transit. ..... 19

B. The FAC Should Be Dismissed With Prejudice. ..... 21

V. CONCLUSION ..... 21

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Abe v. AFCH, Inc.*,
2021 U.S. Dist. LEXIS 104688 (C.D. Cal. June 1, 2021) ..... 19

*Ades v. Omni Hotels Mgmt. Corp.*,
46 F. Supp. 3d 999 (C.D. Cal. 2014) ..... 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 5

*Bass v. County of Butte*,
458 F.3d 978 (9th Cir. 2006) ..... 7

*Boorstein v. CBS Interactive, Inc.*,
222 Cal. App. 4th 456 (2013) ..... 8

*Boorstein v. Men's Journal, LLC*,
2012 U.S. Dist. LEXIS 83101 (C.D. Cal. July 14, 2012) ..... 8

*In re BPS Direct, LLC*,
705 F. Supp. 3d 333 (E.D. Pa. 2023) ..... 11

*Branch v. Tunnell*,
14 F.3d 449 (9th Cir. 1994) ..... 3

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) ..... 13, 16

*Byars v. Sterling Jewelers, Inc.*,
2023 U.S. Dist. LEXIS 61276 (C.D. Cal. Apr. 5, 2023) ..... 9

*In re C.H.*,
53 Cal. 4th 94 (2011) ..... 7

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ..... 20

*Carrese v. Yes Online Inc.*,
2016 U.S. Dist. LEXIS 187761 (C.D. Cal. Oct. 13, 2016) ..... 9, 11

*Carrico v. City & Cnty. of San Francisco*,
656 F.3d 1002 (9th Cir. 2011) ..... 21

*Cody v. Boscov's, Inc.*,
658 F. Supp. 3d 779 (C.D. Cal. 2023) .......... 16

*Dix v. Superior Court*,
53 Cal. 3d 442 (1991) .......... 7

*Dumas v. Kipp*,
90 F.3d 386 (9th Cir. 1996) .......... 21

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 16

*Frio v. Sup. Ct.*,
203 Cal. App. 3d 1480 (1988) .......... 9

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 10, 12, 13, 16

*Heiting v. Athenahealth, Inc.*,
2024 U.S. Dist. LEXIS 133617 (C.D. Cal. July 29, 2024) .......... 20

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) .......... 18, 20, 21

*Holmes v. Elephant Ins. Co.*,
2023 U.S. Dist. LEXIS 110161 (E.D. Va. June 26, 2023) .......... 11

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) .......... 11

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) .......... 18

*Jones v. Tonal Sys.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) .......... 13

*King v. Conde Nast Publications*,
2012 U.S. Dist. LEXIS 109120 (C.D. Cal. Aug. 3, 2012),
aff'd 554 Fed. Appx. 545 (9th Cir. 2014) .......... 8

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) .......... 4

*Licea v. Cinmar*,
659 F. Supp. 3d at 1085 .......... 19

*Licea v. Cinmar*,
659 F. Supp. 3d at 1109–10 ........ 19

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ........ 14

*Licea v. Old Navy, LLC*,
669 F. Supp. 3d 941 (C.D. Cal. 2023) ........ 12, 14

*Licea v. Vitacost.com*,
683 F. Supp. 3d 1118 (S.D. Cal. 2023) ........ 12

*Licea v. Vitacost.com*,
683 F. Supp. 3d at 1123–24 ........ 15

*Lieberman v. KCOP Television, Inc.*,
110 Cal. App. 4th 156 (2003) ........ 9

*Lightoller v. Jetblue Airways Corp.*,
2023 U.S. Dist. LEXIS 102158 (S.D. Cal. June 12, 2023) ........ 10

*Massie v. Gen. Motors LLC*,
2022 U.S. Dist. LEXIS 28969 (D. Del. Feb. 17, 2022) ........ 11

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ........ 6

*Mavrix Photographs LLC v. Livejournal, Inc.*,
2013 U.S. Dist. LEXIS 197703 (C.D. Cal. Aug. 2, 2013) ........ 4

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ........ 11

*Miller v. Hearst Communications, Inc.*,
2012 U.S. Dist. LEXIS 109121 (C.D. Cal. Aug. 3, 2012), aff'd 554 Fed. Appx. 657 (9th Cir. 2014) ........ 8

*Mintz v. Subaru of Am., Inc.*,
716 F. App'x 618 (9th Cir. 2017) ........ 5

*People v. Avery*,
27 Cal. 4th 49 (2002) ........ 5

*Revitch v. New Moosejaw, LLC*,
2019 U.S. Dist. LEXIS 186955 (Oct. 23, 2019) ........ 16

*Rodriguez v. Autotrader.Com, Inc.*,
2025 U.S. Dist. LEXIS 47308 (C.D. Cal. March 14, 2025) ................................ 9

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) ................................................................ 14

*Smidga v. Spirit Airlines, Inc.*,
2024 U.S. Dist. LEXIS 62801 (W.D. Pa. Apr. 5, 2024) ................................ 11

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) ................................................................ 5

*Surrey v. TrueBeginnings, LLC*,
168 Cal. App. 4th 414 (2008), overruled on other grounds by *White v. Square, Inc.*, 7 Cal. 5th 1019 (2019) ................................................ 7

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ................................................ 6

*Tavernetti v. Super. Ct.*,
22 Cal. 3d 187 (1978) ................................................................ 5

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
315 F. Supp. 3d 1147 (C.D. Cal. 2018) ................................................ 5

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ................................................ 19

*Valenzuela v. Nationwide*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) ................................................ 20

*Valenzuela v. Super Bright LEDs Inc.*,
2023 U.S. Dist. LEXIS 218403 (C.D. Cal. Nov. 27, 2023) ................................ 16

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ................................................ 20, 21

*Wadsworth v. Kross, Lieberman & Stone, Inc.*,
12 F.4th 665 (7th Cir. 2021) ................................................................ 11

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979) ................................................................ 5

*Wilkinson v. Olympia Dev. of Mich. LLC*,
2022 U.S. Dist. LEXIS 180669 (E.D. Mich. Oct. 3, 2022) ................................ 11

*Williams v. What If Holdings, LLC*,
2022 U.S. Dist. LEXIS 230732 (N.D. Cal. Dec. 22, 2022) ................................ 12

*Wingate v. Donahoe*,
2013 U.S. Dist. LEXIS 139899 (N.D. Cal. Sept. 26, 2013)................................ 19

*Yoon v. Lululemon United States*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021)....................................................... 7, 8, 10

**Statutes & Rules**

Cal. Pen. Code § 631(a)............................................................................... *passim*
Cal. Pen. Code § 637.2 ............................................................................... 7, 8
Cal. Rules of Court, Rule 7-3 ........................................................................ 2
Fed. R. Civ. P. 12(b)(6) .............................................................................. 2, 5

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Charter Communications, Inc. ("Charter") respectfully submits this Memorandum of Points and Authorities in Support of Charter's Motion to Dismiss Plaintiff's First Amended Complaint ("FAC").

## I. INTRODUCTION

Plaintiff Miguel Esparza ("Plaintiff"), a "tester" of suspected violations of the California Invasion of Privacy Act ("CIPA") (*see* Appendix of Plaintiff's CIPA Cases ("Appx.") filed concurrently), brings this action against Charter based on Charter's decision to outsource certain website-visitor data-retention and data-management operations to an outside vendor. This is fairly standard practice, as outside vendors are often much better equipped to retain and analyze website traffic data for website operators than operators themselves. Plaintiff and his lawyers, however, contend this practice violates website visitors' privacy rights because vendors that analyze website operators' data are actually "wiretapping" communications in violation of CIPA—a 1960s-era statute originally intended to deter wiretapping of telephones—and that companies that hire such vendors are aiding-and-abetting CIPA violations.

Charter previously moved to dismiss this case because Plaintiff's initial Complaint was grossly deficient in pleading the most basic facts for a plausible CIPA claim. D.E. 12 (motion). Rather than oppose that motion, Plaintiff elected to amend his Complaint, mooting the motion. D.E. 15 (Order).

Putting aside the dubious public benefit of Plaintiff's numerous CIPA lawsuits, Plaintiff's FAC remains grossly deficient as a matter of law. The FAC alleges Charter sells phone, TV, and internet access through its Spectrum.com website, which he alleges contains a chat feature for visitors to communicate with Charter, and Charter hired Asapp, a third party, to embed software into the chatbox to collect, store, and analyze transcripts of webchats on Charter's behalf. In doing so, Plaintiff alleges Asapp violates CIPA by wiretapping and eavesdropping on webchats, and Charter allegedly aids and abets Asapp's CIPA violations.

Plaintiff's CIPA aiding-and-abetting claim against Charter remains insufficiently pleaded. ***First,*** the FAC, like the original Complaint, lacks any allegation of a cognizable injury stemming from a privacy violation. Plaintiff only alleges emotional harm, which is not a cognizable injury for statutory standing—especially when pled by a "tester" litigant who presumably expects the alleged privacy invasion. ***Second,*** CIPA contains a "party exemption" that recognizes parties cannot eavesdrop on their own conversations. Numerous courts have applied this exemption to scenarios like what Plaintiff alleges here: Charter paid a vendor to store and analyze webchats ***on behalf of Charter***. ***Third,*** the FAC fails to allege the requisite scienter because the FAC only pleads vague, conclusory allegations that Charter knew or intended for Asapp to intercept the webchat communication for Asapp's own purposes (as opposed to intercepting to perform work for Charter). And, ***fourth***, Plaintiff fails to sufficiently allege the webchat interception occurred while the communications were "in transit," which is required for an actionable CIPA claim.

Accordingly, the Court should dismiss Plaintiff's FAC.

## II. <u>THE FIRST AMENDED COMPLAINT'S ALLEGATIONS</u>

Charter sells phone, TV, and internet access solutions via its website, Spectrum.com. *See* FAC at ¶ 4. Plaintiff alleges that Charter pays a third-party vendor, Asapp, to embed its "chat technology code" into the chat feature on Spectrum.com, so whenever a visitor on the site "chats" through the feature, "the chat is routed through Asapp's servers so they may simultaneously collect a transcript … along with other user data, in real time and save it for later access." *Id.* at ¶ 9. Plaintiff further alleges that webchats on Charter's Spectrum.com website may contain "personally identifiable information ("PII"). *Id.* at ¶¶ 9–12.

The FAC does not define specific PII that Asapp's software collected from Plaintiff (*id.*), and Plaintiff only claims he used Spectrum.com's webchat feature to ask about "what TV options are available for deaf people." *Id.* at ¶ 33. Other than alleging that Asapp intercepts webchats "in real time" and routes

"inputs…instantaneously" (*id.* at ¶¶ 10, 34), Plaintiff does not provide specific details about exactly when Asapp intercepts, saves, and analyzes webchat data. *Id.* at ¶¶ 12–14. On this point, Plaintiff instead includes screenshots of page-source code purportedly related to the webchat feature at issue; the code, however, does not appear to provide any information concerning the timing of the interception. *Id.* at ¶¶ 12–13.

Presumably in response to Charter's prior motion to dismiss, the FAC also includes new allegations relating to Charter's alleged purpose for hiring Asapp to record webchat data. Plaintiff now alleges Asapp does more than record webchats; it analyzes the data to allow Charter to run targeted social media advertising and, after feeding the data into Asapp's AI model, to allow Charter's chatbot on Spectrum.com to know what responses to give website users. *Id.* at ¶¶ 14, 19.

The FAC further alleges Asapp analyzes Charter's webchat data for Asapp's own purposes in two respects. *Id.* at ¶¶ 14–15. First, Plaintiff contends Asapp is "interested" in analyzing the data because Asapp "profit[s]" from analyzing the webchats as the analysis and not just the "storage function…is why Defendant pays Asapp for its software." *Id.* Second, Plaintiff contends Asapp also analyzes Charter's webchat data because Asapp "utilizes data collected from chats initiated on [Charter's] Website to improve [Asapp's] own AI model," which is advertised on Asapp's website to Asapp's other potential clients. *Id.* at ¶¶ 23–27.

The FAC cites several URLs to Asapp's website in support of the theory that Asapp uses Charter's webchat data for Asapp's own purposes. But Plaintiff elected not to include the full content of those URLs in the FAC. *Id.* Accordingly, Charter does so here. *See* Lua-Valencia Declaration (filed herewith), Exhibits A–B.[1] Those

[1] In ruling on a 12(b)(6) motion to dismiss, the Court must ignore allegations contradicted by "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir. 1994). The Court may, accordingly,

URLs outline Asapp's three-phased self-improving process to build a bespoke AI model for every Asapp client. *Id.* Contradicting Plaintiff's allegations, the URLs confirm Asapp's analysis of Charter's webchats is ***only*** capable of being useful ***for Charter's specific purposes***. *See id.* The process consists of the following: (1) "Initial Learning Phase"; (2) "Real-time Guidance"; and (3) "Continuous Improvement." Lua-Valencia Decl., Ex. B. At the "Initial Learning Phase," the Asapp "machine-learning models analyze interactions of [a client's] top-performing agents to understand effective words and actions." *Id.* During the subsequent "Real-time Guidance" phase, "[t]he insights are fed into [Asapp's] Generative AI products and automated workflow capabilities, guiding [the client's] other agents on what to say and do." *Id.* Lastly, at the "Continuous Improvement" phase, "[t]he models continue to learn from every interaction, ensuring that the guidance remains current and increasingly impactful." *Id.* Thus, in contrast to Plaintiff's averments, each Asapp client, including Charter, has ***its own*** uniquely-tailored AI model that continuously self-improves, using only unique data from the client's agents, to assist the client's other agents. *Id.* ("Our machine-learning models analyze interactions of ***your*** top-performing agents to understand effective words and actions.") (emphasis added); *id.* ("Designed for customer experience leaders, real-time agent assistance offers unparalleled benefits that cater to ***your unique*** needs.") (emphasis added). This perhaps is not surprising because, for example, chat information from other Asapp clients would not be helpful in analyzing how ***Charter's agents*** should respond to particular inquiries or concerns.

Despite Asapp's statements on its website to the contrary, Plaintiff alleges Asapp violates CIPA by eavesdropping on his communications with Charter and

---

take judicial notice of and give deference to the URLs cited in the FAC. *See Mavrix Photographs LLC v. Livejournal, Inc.*, 2013 U.S. Dist. LEXIS 197703, *9 (C.D. Cal. Aug. 2, 2013) (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (on a motion to dismiss, taking judicial notice of webpage URLs cited in a complaint)).

using those communications for its own purposes, and brings a single cause of action under CIPA against Charter for aiding-and-abetting Asapp's alleged CIPA violation. FAC at ¶ 51.

## III. LEGAL STANDARD

This Court should grant a Rule 12(b)(6) motion to dismiss if the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint fails to state a claim if it fails to state a cognizable legal theory or has not alleged sufficient facts to support a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). Well-pleaded factual allegations are assumed to be true, but courts need not credit conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *Mintz v. Subaru of Am., Inc.*, 716 F. App'x 618, 621 (9th Cir. 2017). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Neither are allegations that "merely tracks the language of the statutes itself, without providing facts to substantiate the claimed legal conclusions." *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.,* 315 F. Supp. 3d 1147, 1175 (C.D. Cal. 2018).

Furthermore, the Court must construe any ambiguity in application of CIPA in Defendants' favor. *People v. Avery*, 27 Cal. 4th 49, 58 (2002) ("ambiguous penal statutes are construed in favor of defendants . . . [if] two reasonable interpretations of the same provision stand in relative equipoise"); *see Warden v. Kahn*, 99 Cal. App. 3d 805, 814, 818, n.3 (1979) (as a penal statute, ambiguity in Section 631 should be interpreted narrowly).

## IV. ARGUMENT

### A. The FAC Fails to State an Aiding-and-Abetting Claim Under Section 631(a).

CIPA's Section 631(a) protects against three types of harms and against aiding and abetting conduct that results in those harms. *Tavernetti v. Super. Ct.*, 22 Cal. 3d

187, 191–192 (1978); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021). Section 631(a) thus imposes liability under the following four clauses:

> (1) …intentionally tap[ping]…any telegraph or telephone wire, line, cable, or instrument';
>
> (2) …'willfully and without consent of all parties to the communication…read[ing], or attempt[ing] to read, or to learn the contents or meaning of any message… or communication while the same is in transit';
>
> (3) …'us[ing], or attempt[ing] to use…or to communicate in any way, any information so obtained'; and
>
> (4) …'aid[ing], agree[ing] with, employ[ing], or conspir[ing] with any person … to unlawfully do, or permit, or cause to be done any of the acts … mentioned above.'

*Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 743 (N.D. Cal. 2023) (quoting statute).

Plaintiff alleges Charter is liable under the fourth clause "because [Charter] 'aids, agrees with, employs, or conspires with'" Asapp (FAC at ¶ 51), which Plaintiff contends violated the second clause of Section 631(a) by accepting Charter's payment to store and conduct data analysis of transcripts from webchats that visitors had on the Spectrum.com website. *Id.* at ¶¶ 9–15.

This claim cannot survive dismissal for each of the reasons set forth below.

**1. Plaintiff Lacks Statutory Standing to Bring a Private Claim Under CIPA Because He Fails to Allege Any Cognizable Injury Specifically Resulting from a CIPA Privacy Violation.**

Plaintiff's aiding-and-abetting claim cannot survive dismissal because Plaintiff failed to adequately plead any cognizable injury to support his statutory standing to bring a CIPA claim.

As explained below, CIPA's plain language requires private plaintiffs to allege a ***violation*** of CIPA and also allege ***injury*** resulting from the purported CIPA violation

for a viable claim. Cal. Penal Code § 637.2 ("Any person ***who has been injured*** by a violation of this chapter [*i.e.*, CIPA] may bring an action against the person who committed the violation[.]") (emphasis added). Here, the FAC pleads no injury resulting from any alleged violation.

**a. <u>Statutory Standing Under CIPA Requires Both a Privacy Violation and a Resulting Cognizable Injury.</u>**

California's longstanding canons of statutory interpretation dictate that a plaintiff alleging a CIPA claim must show an injury that is separate and distinct from the alleged CIPA violation. "When construing a state statute, federal courts apply state law of statutory construction." *Ades v. Omni Hotels Mgmt. Corp.*, 46 F. Supp. 3d 999, 1005 (C.D. Cal. 2014) (citing *Bass v. County of Butte*, 458 F.3d 978, 981 (9th Cir. 2006)). The prerequisites for statutory standing are determined from the statutory language as well as the underlying legislative intent and the purpose of the statute. *Surrey v. TrueBeginnings, LLC*, 168 Cal. App. 4th 414, 417–18 (2008), overruled on other grounds by *White v. Square, Inc.*, 7 Cal. 5th 1019 (2019).

By its plain terms, CIPA requires "injury." The Court must give effect to the word "injury," which must be read as separate from a mere "violation" of CIPA—a term separately referenced in the same sentence. Otherwise, the word "injury" would be rendered impermissibly superfluous. *See Dix v. Superior Court*, 53 Cal. 3d 442, 459 (1991) (Courts "avoid statutory constructions that render particular provisions superfluous or unnecessary."); *In re C.H.*, 53 Cal. 4th 94, 107 (2011) ("When the Legislature uses different words or phrasing in contemporaneously enacted statutory provisions, a strong inference arises that a different meaning was intended.").

Giving effect to the word "injury" under CIPA—and with a definition that is different from a mere CIPA privacy violation—would be consistent with this Court's prior interpretation of CIPA in *Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073, 1085 (C.D. Cal. 2021). There, the plaintiff brought CIPA claims against Lululemon and its vendor, Quantum Metric, whose software Lululemon used to

capture data about visits to the Lululemon website. *Id.* at 1085. The court dismissed both claims. *Id.* With respect to Quantum Metric, the court found the plaintiff failed to allege any injury stemming from Quantum Metric's purported CIPA violation, which warranted dismissal because "CIPA is far more straightforward than the analogous language of the Wiretap Act: only a person 'who has been ***injured*** by a violation of this chapter' may assert a civil claim") (quoting CIPA § 637.2) (emphasis added).

Such a statutory construction of CIPA would also be consistent with instances where other courts have applied the same basic statutory-interpretation tenets to similar privacy-based California statutes, holding that a plaintiff must plead ***both*** a "violation" ***and*** an "injury" to allege a viable private claim. *See, e.g., Boorstein v. CBS Interactive, Inc.*, 222 Cal. App. 4th 456, 460 (2013). In *Boorstein*, the plaintiff filed an action under California's shine the light law ("STL"), a statute that requires "businesses that share customers' personal information with third parties" to make certain disclosures. *Id.* As with CIPA, the STL provides that a claimant "***injured*** by a ***violation*** of [the STL] may institute a civil action to recover damages." *Id.* at 466 (quoting STL statute) (emphasis added). The California Court of Appeal held that the plaintiff lacked statutory standing under the STL because he failed to allege an injury separate from the violation at issue. *Id.* *See also Boorstein v. Men's Journal, LLC*, 2012 U.S. Dist. LEXIS 83101, at *10–13 (C.D. Cal. July 14, 2012) (same); *Miller v. Hearst Communications, Inc.*, 2012 U.S. Dist. LEXIS 109121, at *12–13 (C.D. Cal. Aug. 3, 2012), aff'd 554 Fed. Appx. 657 (9th Cir. 2014) (same); *King v. Conde Nast Publications*, 2012 U.S. Dist. LEXIS 109120, at *5–6 (C.D. Ca1. Aug. 3, 2012), aff'd 554 Fed. Appx. 545 (9th Cir. 2014).

**b. <u>Plaintiff Cannot Plausibly Incur a Cognizable Privacy Injury as a Privacy-Violation "Tester."</u>**

Applied here, to survive Charter's 12(b)(6) motion, Plaintiff must have pleaded a CIPA violation ***as well as some concrete privacy injury***, presumably resulting from

harm to some protectable privacy interest. *See, e.g.*, *Lieberman v. KCOP Television, Inc.,* 110 Cal. App. 4th 156, 166–68 (2003) (a viable CIPA claim requires an injury "caused" by the violation, and a violation only occurs where the claimant has a "reasonable expectation of privacy" over the at-issue information); *Carrese v. Yes Online Inc*., 2016 U.S. Dist. LEXIS 187761, at *10–11 (C.D. Cal. Oct. 13, 2016) (assessing whether statutory standing was adequately plead, and holding that "[t]o state a claim under CIPA, 'a party to the communication' must have the reasonable expectation of confidentiality") (citing *Frio v. Sup. Ct.*, 203 Cal. App. 3d 1480, 1488 (1988)). The FAC, however, utterly fails to plausibly allege any cognizable injury resulting from harm to any protectable privacy interest.

Plaintiff alleges Asapp violated CIPA when Asapp captured his "personally identifying information" and his inquiry regarding services for the deaf while using the webchat feature. FAC at ¶¶ 31–39. He alleges that, as a result of that purported violation, he "felt upset, disturbed, and/or violated." *Id.* at ¶¶ 40–41. Plaintiff, however, is plainly a "tester" of suspected privacy violations. *See* Appx. As such, Plaintiff visited Spectrum.com "fully expecting" data regarding his visit and webchat to be retrieved, entirely precluding the plausibility of any protectable privacy interest to support his alleged resulting emotional "injury." *See Rodriguez v. Autotrader.Com, Inc.*, 2025 U.S. Dist. LEXIS 47308, *5–6 (C.D. Cal. March 14, 2025) (dismissing CIPA claim because "Plaintiff is a tester that seeks out invasions of privacy…Having expected an invasion of privacy, she cannot claim that she had a reasonable expectation to privacy, and therefore lacks an injury in fact sufficient to establish standing.") (citing *Byars v. Sterling Jewelers, Inc.*, 2023 U.S. Dist. LEXIS 61276, at *9–10 (C.D. Cal. Apr. 5, 2023) (dismissing privacy claims for lack of standing because a tester plaintiff has no expectation of privacy and therefore cannot be injured). As "tester" plaintiffs have no reasonable expectation of privacy—and cannot plausibly claim injury from the alleged invasion of a privacy interest they never had—they lack statutory standing to bring CIPA claims.

c. **Plaintiff Fails to Allege a Protectable Privacy Interest Under CIPA.**

Plaintiff also has not even attempted to explain what reasonable expectation of privacy Asapp violated by allegedly capturing his chat on Spectrum.com. All Plaintiff alleges on the point is the following: he visited a public commercial website and shared "personal data"; and he briefly inquired over webchat "about what TV options are available for deaf people." FAC at ¶¶ 32–33. The FAC makes no effort to explain why this information is personal or private.

Notably, not all data that commercial websites may collect—even personally identifiable information—is CIPA-protected. *See, e.g.*, *Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (Section 631(a) does not protect "routine identifiers, ***whether automatically generated or not***.") (emphasis added); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (Section 631(a) does not apply to "record information" generated in the course of a communication, such as a customer's name, address, subscriber number, or identity.). Merely alleging Asapp collected "personal data" and a webchat about deaf services does not adequately plead a privacy interest because Plaintiff has not even alleged on whose behalf he inquired. If Plaintiff believes the "personal data" at issue is a webchat identifying him as a deaf person because he is, in fact deaf, then he must allege this under the well-pled complaint standard. If, alternatively, he believes the "personal data" at issue is merely his interest in services for the deaf, then he must plead that instead. As pled, however, the FAC leaves Charter without notice of what purported privacy interest Plaintiff claims over his webchat about deaf services. And, again, without identified privacy interests, Plaintiff cannot have suffered the injury necessary to plead a viable CIPA claim.

Applying a comparable analysis for Article III standing, courts hold that complaints like the FAC cannot support injury-in-fact under CIPA if they do not allege concrete harm. *See Lightoller v. Jetblue Airways Corp.*, 2023 U.S. Dist. LEXIS

102158 (S.D. Cal. June 12, 2023); *Mikulsky v. Noom, Inc.,* 682 F. Supp. 3d 855 (S.D. Cal. 2023); *Massie v. Gen. Motors LLC,* 2022 U.S. Dist. LEXIS 28969, at *7–8 (D. Del. Feb. 17, 2022); *Smidga v. Spirit Airlines, Inc.,* 2024 U.S. Dist. LEXIS 62801, at *16 (W.D. Pa. Apr. 5, 2024); *In re BPS Direct, LLC*, 705 F. Supp. 3d 333, 357 (E.D. Pa. 2023); *Carrese v. Yes Online Inc*., 2016 U.S. Dist. LEXIS 187761, at *6–16 (C.D. Cal. Oct. 13, 2016). If Plaintiff's pleading cannot clear even the initial hurdle of injury-in-fact for Article III standing, it certainly cannot adequately plead injury for statutory standing under CIPA.

**d. <u>Plaintiff's Alleged Emotional Harms are Not Cognizable Injuries.</u>**

The FAC fails to plead statutory standing for yet another reason: Plaintiff's only alleged injuries are that he "felt upset, disturbed, and/or violated." FAC at ¶¶ 40–41. Emotional harms of that sort are not cognizable injuries for standing. *See, e.g.*, *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1052 (N.D. Cal. 2022) (claims of stress in data breach case did not constitute an injury for standing); *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 667–69 (7th Cir. 2021) (recent decisions assessing statutory standing "makes clear, anxiety and embarrassment are not injuries in fact"); *Holmes v. Elephant Ins. Co.*, 2023 U.S. Dist. LEXIS 110161, *13 (E.D. Va. June 26, 2023) ("Because the plaintiffs plead only 'bare assertion of emotional injury,' they have not pleaded an injury-in-fact."); *Wilkinson v. Olympia Dev. of Mich. LLC*, 2022 U.S. Dist. LEXIS 180669, at *7 (E.D. Mich. Oct. 3, 2022) ("[B]are allegations of 'stress, fear, anger, and frustration' do not amount to a concrete injury."). As such, the FAC fails to establish a cognizable injury caused by the violation of his privacy interest.

In sum, Plaintiff's CIPA claim fails on the most basic element: injury stemming from the conduct alleged.

### 2. Plaintiff Fails to Plead That Asapp Violated Section 631(a) Given Section 631(a)'s "Party Exemption."

Plaintiff's aiding-and-abetting claim also fails because the FAC's own alleged facts and information from Asapp's website confirm Asapp does not record, store, and analyze Spectrum.com webchats in violation of CIPA. Rather, Asapp is a mere extension of Charter, and is subject to CIPA's "party exemption."

To adequately plead liability for aiding and abetting a recording in violation of Section 631(a), a "[p]laintiff must first adequately plead [the third party's] underlying violations of the statute," and to do so, "Plaintiff must provide facts suggesting that the third party recorded [the defendant's] customers' information for some use or potential future use ***beyond*** simply supplying this information back to [the defendant]." *Licea v. Old Navy, LLC*, 669 F. Supp. 3d 941, 946–47 (C.D. Cal. 2023) (emphasis added) (citing *Williams v. What If Holdings, LLC*, 2022 U.S. Dist. LEXIS 230732, *10 (N.D. Cal. Dec. 22, 2022).

It is well-settled under CIPA that a party to a communication cannot be liable for eavesdropping on its own conversation; this "party exemption" applies even when a party hires a vendor to use software to transcribe and analyze webchats. *See, e.g.*, *Licea v. Vitacost.com*, 683 F. Supp. 3d 1118, 1123–24 (S.D. Cal. 2023) (citing several decisions and agreeing "a website owner that engages a vendor to record website-based communications for the website owner's own purposes is not thereby aiding and abetting eavesdropping by a third party in violation of Section 631(a)."); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021) ("a party to a communication can record it (and is not eavesdropping when it does)"). Courts have repeatedly held that use of a third party to record, store, and analyze data collected from a website's chat feature does not violate Section 631(a), even under an aiding-and-abetting theory. *Id.*

As Charter argued in its initial motion to dismiss, Plaintiff's Complaint failed to adequately plead that Asapp is anything more than a vendor subject to CIPA's party

exemption. *See* D.E. 12. The FAC fails to cure this fatal defect.

**a. Even if Asapp Accepts Charter's Payment to Analyze Charter's Webchats, That Is No Violation of CIPA.**

Plaintiff fails to plead Asapp is anything more than Charter's party-exempted vendor. In sweeping, conclusory fashion—and misunderstanding CIPA case law requiring plaintiffs to plead third-party use "beyond" supplying information back to defendants—Plaintiff alleges Asapp falls outside Section 631(a)'s party exemption because Asapp analyzes and does not merely record Charter's webchats. FAC at ¶ 15. On this point, Plaintiff alleges Asapp analyzes Charter's webchats for Asapp's "own purposes" because Charter pays Asapp for the analysis, resulting in profit for Asapp. FAC at ¶¶ 14–15. But analyzing ***Charter's data for Charter's benefit*** does not preclude Asapp from the party exemption nor somehow demonstrate Asapp uses webchat data for its "own purposes." Even if true that Charter pays Asapp to analyze webchats, Asapp is still only an outsourced data analyst—a mere extension of Charter—not a third party violating Section 631(a).

*Jones v. Tonal Sys.* confirms this. 751 F. Supp. 3d 1025, 1033–36 (S.D. Cal. 2024). There, the plaintiff alleged a company (Tonal) paid a vendor (Drift) to store and analyze webchats in violation of CIPA because the vendor's analysis meant the vendor used the communications "for its own purposes," but the court disagreed. *Id.* at 1035–36 (vendor's analysis of data "only supports the inference that [the vendor] receives and stores communications for the benefit of its client") (citing *Byars v. Hot Topic, Inc.,* 656 F. Supp. 3d 1051, 1068 (C.D. Cal. 2023) (granting motion to dismiss CIPA chatbot lawsuit because "Defendant uses a third-party vendor to record and analyze its own data in aid of [Defendant's] business, not the aggregation of data for resale, which makes the third-party an extension of Defendant's website…") (quotations and citation omitted).

Similarly, in *Graham v. Noom, Inc.,* 533 F. Supp. 3d 823 (N.D. Cal. 2021), the plaintiffs visited Noom's website to investigate Noom's "diet offerings." *Id.* at 829–

31. Noom had hired a vendor "to capture and analyze data" to allow Noom to see how visitors used the website. *Id.* at 828. The plaintiffs alleged the vendor embedded code on the website to capture data and store it "on [the vendor's] servers." *Id.* Plaintiffs sued under CIPA § 631(a), arguing Noom aided and abetted the third party's eavesdropping. *Id.* at 831. Noom brought a motion to dismiss, which the court granted because the vendor was merely Noom's tool. *Id.* at 832–33 (holding the vendor merely "provides a tool — like [a] tape recorder … that allows [the client] to record ***and analyze*** its own data in aid of [its] business") (emphasis added) (citing *Rogers v. Ulrich,* 52 Cal. App. 3d 894, 899 (1975)).

Likewise, Asapp's ability to analyze data ***for Charter*** does not preclude Asapp from the "party exemption" to a 631(a) claim, even if, as the FAC alleges, Charter pays Asapp to analyze data. *See Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1108–09 (C.D. Cal. 2023) (dismissing Section 631(a) aiding-and-abetting claim where plaintiff alleged defendant used vendor to intercept highly sensitive data from website chats for financial gain by "[d]efendant ***and*** third parties"). If a third party sees financial gain from data analysis, that does not mean the analysis serves the vendor's "own purposes" if "[t]he bare allegations only suggest that the third party analyzed or used the data on behalf of or in tangent with Defendant." *Id.*

The Court should reject Plaintiff's theory that Charter's payment to Asapp means Asapp analyzes webchats for its "own purposes" in violation of CIPA.

**b. <u>The FAC Mischaracterizes Asapp's Website, Which in Fact, Confirms Asapp's Analysis Complies with CIPA.</u>**

In its initial motion to dismiss, Charter apprised Plaintiff that allegations that Asapp profits from analyzing Charter's webchats did not transform Asapp's conduct into a CIPA violation. *See* D.E. 12. Plaintiff declined to oppose the motion, and instead opted to amend the Complaint. To survive the pleading stage, Plaintiff was required to add allegations to his FAC demonstrating Asapp analyzes Charter's webchats for some reason beyond serving Charter's own purposes. *See Licea v. Old*

*Navy, LLC*, 669 F. Supp. 3d at 947; *Licea v. Vitacost.com*, 683 F. Supp. 3d at 1123–24. Ostensibly to meet this pleading standard, the FAC adds allegations suggesting Asapp's analysis of Charter's webchats serves Asapp's own purposes because Asapp owns standard AI models that continuously self-improve based on what the models learn from Charter's (and presumably other clients') webchat data, and the improved AI models can be purchased by other Asapp clients. *See* FAC at ¶¶ 24–27 (citing URLs to Asapp's website). These new allegations, however, fail to show Asapp's analysis of Charter's data violates CIPA. In fact, the URLs of the Asapp website provided in the FAC confirm Asapp's analysis is only capable of serving ***Charter's purposes***, not Asapp's.

The information on Asapp's website shows the FAC plainly misstates what Asapp advertises as its "Self-improving" AI models. *See* Lua-Valencia Decl., Exs. A–B. Contrary to Plaintiff's contentions, Asapp's website is clear that each Asapp client ***has its own*** AI model that continuously self-improves, using only that client's unique data, to build a bespoke AI model to assist that client's customer service agents. Lua-Valencia Decl., Ex. B ("Designed for customer experience leaders, real-time agent assistance offers unparalleled benefits that cater to ***your unique*** needs.") (emphasis added). Asapp's referenced webpage outlines a three-phased process confirming Asapp's analysis of Charter's webchats is ***only*** capable of being useful for Charter's specific purposes. *See id.* The three-phased self-improving process for any client only consists of the following: (1) "Initial Learning Phase," where the specific AI models used by the client learn only from that client's data; (2) "Real-time Guidance," where insights from that analysis are fed into the client's AI models to guide the client's agents; and (3) "Continuous Improvement," where "[t]he models continue to learn from every interaction, ensuring that the guidance remains current and increasingly impactful." *Id.* As this shows, far from learning anything useful from Charter's data for other clients' AI models, the AI models' analysis is ***only*** capable of being useful for Charter's specific purposes because an AI model's

guidance can only be "current" for a client if the model self-improves based on that client's unique data.

Notably, Asapp's self-improvement process for AI models outlined on Asapp's webpages directly contrasts circumstances where courts have held at the pleading stage that a third party was ***not*** subject to the "party exemption." Those complaints alleged, for example, that the third party captured website data to sell to advertisers to generate revenue, which constituted use of data for the third party's own purposes. *See In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 607–08 (9th Cir. 2020); *Revitch v. New Moosejaw, LLC*, 2019 U.S. Dist. LEXIS 186955, *2 (Oct. 23, 2019). In fact, courts routinely contrast complaints where the party exemption applies against complaints alleging ***the vendor resells the data it allegedly collects***. *See Graham,* 533 F. Supp. 3d at 832 (distinguishing vendors that function as "tools" from "independent parties who mined information from other websites and sold it"); *Byars v. Hot Topic, Inc.,* 656 F. Supp. 3d 1051, 1068 (C.D. Cal. 2023) (holding a third party was a tool rather than an eavesdropper because the complaint failed to alleged the vendor "aggregat[ed] … data for resale"); *Valenzuela v. Super Bright LEDs Inc.,* 2023 U.S. Dist. LEXIS 218403, at *22 (C.D. Cal. Nov. 27, 2023) (dismissing Section 631(a) aiding-and-abetting claim predicated on vendor's alleged chat interception because "it has not been alleged that the software could simultaneously disclose [the plaintiff's] communications to anyone other than [the defendant]"). Here, Asapp's webpage disproves any suggestion that Asapp sells AI models to other clients after they self-improve with Charter's data.

Beyond this, the FAC does not plead adequate facts—as opposed to bare allegations—that Asapp did more than analyze data for Charter's purposes. *See, e.g.*, *Cody v. Boscov's, Inc.*, 658 F. Supp. 3d 779, 782–83 (C.D. Cal. 2023) (disregarding "allegation that Webex and Customer use the code embedded in the chat program to 'harvest valuable data from such [customer] communications for the benefit of their clients like Defendant'" because such an allegation is "too vague and conclusory to

meet [the well-pled complaint] standard" for a CIPA aiding-and-abetting claim).

The FAC demonstrates Plaintiff's CIPA claim falls within the "party exemption" and should be dismissed without leave to amend.

**3. Plaintiff Fails to Plead that Charter Knowingly or Willfully Aided and Abetted Asapp's Purported CIPA Violation.**

The FAC also fails to plausibly allege that Charter acted with the requisite knowledge or intent to aid and abet Asapp's purported eavesdropping violation under Section 631(a). Charter moved to dismiss Plaintiff's initial Complaint, arguing, among other things, that Plaintiff failed to plausibly allege Charter acted with requisite scienter. Despite including new allegations regarding scienter, the FAC has not remedied the defect.

The FAC adds only the following scienter allegations:

- "Defendant is aware that this is what Asapp is doing with chat communications … If Asapp did not work with the chat communications and data in this way, its services would be of no value and Defendant would not have contracted with it." (FAC at ¶ 29); and
- "Upon information and belief, Defendant knowingly routes communications to Asapp, as discussed above, and knows that Asapp will analyze those chats and use the data for its own purposes." (*id.* at ¶ 30).

These threadbare allegations fail to support a plausible CIPA aiding-and-abetting claim for several reasons.

*First*, Charter cannot plausibly know or intend to aid and abet the purported CIPA violation given what Asapp discloses about its product. The crux of Plaintiff's theory for how Asapp violates CIPA is that Asapp's AI models analyze Charter's webchats to self-improve, and Asapp then sells these self-improved AI models to other clients, meaning Asapp's analysis serves Asapp's "own purposes." As explained *supra*, however, that theory is at odds with Asapp's representations on its website. *See, e.g.*, Lua-Valencia Decl., Ex. B (Asapp webpage, showing each Asapp

client has a unique AI model that continuously self-improves, using only that client's unique data, to "cater" to that client's "unique needs."). Even if Plaintiff believes Asapp misrepresents its use of clients' webchats on its website and services agreements, it is unreasonable to infer Charter knows Asapp is publicly misrepresenting how its product operates—and certainly no facts suggest as much. *See James v. Walt Disney Co.,* 701 F. Supp. 3d 942, 954 (N.D. Cal. 2023) (dismissing aiding-and-abetting CIPA claim because "while it can reasonably be inferred that Disney knew Oracle would intercept for the benefit of Disney, it cannot reasonably be inferred that Disney knew Oracle would intercept for the benefit of a company other than Disney.").

*Second*, alleging Charter is aware Asapp is doing "this" is too vague to meet the well-pled complaint standard. *See* FAC ¶ 29; *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1126 (C.D. Cal. 2024) (granting motion to dismiss amended complaint because "Plaintiff's allegations regarding whether Defendant willfully aided and abetted any CIPA violation…remain concerningly vague."). It is unclear what Plaintiff means by "this" because the preceding paragraph only makes vague and conclusory references to "Asapp's exploitation, monetization, use of, and interaction with" Charter's data. *See* FAC at ¶ 28. The paragraph does not refer to Asapp's analysis of Charter's webchats for self-improving AI models for other clients—the basis for Plaintiff's theory that Asapp violates CIPA." *See id.*

*Third*, to the extent Plaintiff argues Charter's payment to Asapp plausibly pleads scienter, Plaintiff is wrong. As the court held in *Heiting*:

> While the Complaint alleges that Defendant ***paid*** [the vendor] to intercept messages, ***it does not allege facts demonstrating Defendant acted with the requisite knowledge or intent*** to aid and abet Genesys's purported CIPA violation. Therefore, the Court finds that Plaintiff has not plausibly alleged scienter under the statute.

709 F. Supp. 3d at 1009 (emphasis added). Likewise, an allegation that Charter "contracted with" Asapp (*see* FAC at ¶ 29) is insufficient to plausibly allege scienter.

*Fourth*, the FAC's allegation that, "[u]pon information and belief," Charter knows Asapp analyzes its webchat data for its own purposes (*see id.* at ¶ 30) is too conclusory to meet the well-pled complaint standard. *See Wingate v. Donahoe*, 2013 U.S. Dist. LEXIS 139899, at *22–23 (N.D. Cal. Sept. 26, 2013) (granting motion to dismiss because conclusory allegations based on information and belief are "insufficient to withstand a motion to dismiss."); *Abe v. AFCH, Inc.*, 2021 U.S. Dist. LEXIS 104688, at *18 (C.D. Cal. June 1, 2021) ("[A]llegations of scienter based on information and belief lack the requisite factual support.").

**4. Plaintiff Failed to Adequately Plead that His Communications Were Intercepted While in Transit.**

Plaintiff's aiding-and-abetting claims also fails because Plaintiff has not plead sufficient facts showing the communications were intercepted in transit. "The second clause of Section 631(a) requires that messages be intercepted while in transit." *Licea v. Cinmar*, 659 F. Supp. 3d at 1109–10. Mere allegations that a message was intercepted "in real time," however, are insufficient. *Id.* A plaintiff asserting a Section 631(a) claim "must provide more than conclusory allegations that messages were 'intercepted in real time.'" *Id.* Dismissal is warranted where a plaintiff fails to allege "sufficient facts as to how and when the third party receives the communications." *Id.*

Plaintiff fails to plausibly allege that his webchats were intercepted "in transit" under this standard. The FAC alleges, in conclusory fashion, that Asapp "secretly intercept[s]" webchats "in real time" "instantaneously." FAC at ¶¶ 10, 17, 34. These allegations are materially indistinguishable from allegations that other courts have found insufficient to plead a plausible in-transit interception under Section 631(a). *See Licea v. Cinmar*, 659 F. Supp. 3d at 1085 (finding plaintiff's general pleading regarding real time interception using chat box software insufficient to state a claim); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758–59 (N.D. Cal. 2023) (finding allegation that defendant's code allowed third party to "secretly

intercept in real time, eavesdrop upon and store transcripts of" chat communications was insufficient to plead the in transit requirement); *Heiting*, 709 F. Supp. 3d at 1018–19 ("Plaintiff has alleged, in general terms, how the interception occurs: through the ***code*** embedded on Defendant's website. However, Plaintiff has not added any ***additional*** factual details to make clear when the interception occurred. Merely parroting the statutory requirement that it occurred in transit is insufficient.") (emphasis added).

Plaintiff is under the mistaken impression that including screenshots of purported page-source code from Spectrum.com give his conclusory allegations adequate specificity to survive the pleading stage. FAC at ¶¶ 12–13. But this Court has found such technical graphics insufficient to plead CIPA's "in transit" element. *See In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1227–28 (C.D. Cal. 2017) ("…Plaintiffs rely on a rather inscrutable graphic with no textual explanation … about how [defendant's] data collection occurs 'in real time.'"); *Heiting v. Athenahealth, Inc.*, 2024 U.S. Dist. LEXIS 133617, *13 (C.D. Cal. July 29, 2024) ("The graphic included in the FAC, which purports to 'show numerous network transmissions from [Defendant] to Salesforce' is largely unintelligible and does not readily illustrate real-time transmissions..."). The FAC needs details regarding interception, but those details need to be alleged in plain English, not graphics of unintelligible code.

Where courts have found plausible allegation that communications were intercepted while in transit, the claimant alleged much greater details than Plaintiff provides about the nature of the interception. *See Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) ("in transit" adequately pled where the plaintiff alleged the defendant reacted right away to the finding of the scan); *Valenzuela v. Nationwide*, 686 F. Supp. 3d 969, 978 (C.D. Cal. 2023) (finding plaintiff plausibly alleged in transit interception where she cited the vendor's statements that "[d]ata from every use event" is "***collected as it happens***.") (emphasis in original). The FAC

here contains no such allegations.

As with the *Heiting* and *Vizio* plaintiffs, Plaintiff fails to meet basic pleading standards to satisfy CIPA's "in transit" element. In its motion to dismiss the initial Complaint, Charter warned Plaintiff he pled the "in transit" element without requisite detail to survive the motion, but the additional text he added to his FAC fails to remedy the. The new language essentially parrots his initial Complaint's allegations—that interception of webchats occurs in "real time." FAC at ¶¶ 17, 34. Given the only new "in transit" allegations Plaintiff could muster for the FAC are recycled conclusory statements, the Court should dismiss the FAC without leave to amend.

### B. <u>The FAC Should Be Dismissed With Prejudice.</u>

The Court should not grant Plaintiff leave to amend the FAC because amendment would be futile given Asapp's only alleged CIPA violation consists of receiving payment from Charter to analyze webchat data, and purportedly improving Asapp's AI models with Charter's webchat data. As the URLs cited in the FAC go on to explain, ***only*** the AI models used by Charter self-improve with Charter's data. Asapp's webchat analysis is incapable of serving Asapp's own purposes because analysis of Charter's data is only useful for improving the AI customer-service models used by Charter. Taking these allegations as true, Asapp falls squarely within the "party exemption" of Section 631(a), and Charter cannot have aided and abetted conduct that did not violate Section 631(a). As these pleading deficiencies cannot be cured, this Court should dismiss the FAC with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996); *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## V. <u>CONCLUSION</u>

For the reasons above, Plaintiff respectfully requests this Court to grant the Motion and dismiss this case in its entirety, with prejudice.

DATED: May 30, 2025 **THOMPSON COBURN LLP**

By: */s/ Jose L. Lua-Valencia*
**LUKAS SOSNICKI**
**JOSE L. LUA-VALENCIA**
Attorneys for Defendant CHARTER COMMUNICATIONS, INC.

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Charter Communications, Inc. certifies that this brief contains 7,000 words, which complies with the word limit of L.R. 11-6.1.

DATED: May 30, 2025 **THOMPSON COBURN LLP**

By: */s/ Jose L. Lua-Valencia*
**LUKAS SOSNICKI**
**JOSE L. LUA-VALENCIA**
Attorneys for Defendant CHARTER COMMUNICATIONS, INC.

# PROOF OF SERVICE

**Miguel Esparza v. Charter Communications, Inc.**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 10100 Santa Monica Boulevard, Suite 500, Los Angeles, California 90067.

On May 30, 2025, I served true copies of the following document(s) described as **CHARTER COMMUNICATIONS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

| | |
|---|---|
| Todd M. Friedman<br>Adrian R. Bacon<br>Matthew R. Snyder<br>Law Offices of Todd M. Friedman, P.C.<br>21031 Ventura Blvd., Suite 340<br>Woodland Hills, California 91364<br>Tel: (323) 306-4234<br>tfriedman@toddflaw.com<br>abacon@toddflaw.com<br>msnyder@toddflaw.com | Attorneys for Plaintiff<br>MIGUEL ESPARZA |

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 30, 2025, at Los Angeles, California.

/s/ Blanca Gutierrez

Blanca Gutierrez