Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
Matthew R. Snyder (SBN 350907)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21031 Ventura Blvd, Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
msnyder@toddflaw.com
*Attorneys for Plaintiff, and all others similarly situated*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MIGUEL ESPARZA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CHARTER COMMUNICATIONS, INC, a Delaware corporation d/b/a SPECTRUM.COM,<br><br>Defendant. | Case No. 2:25-cv-02438-JLS-PVC<br><br>**PLAITNIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: July 18, 2025<br>Time: 10:30 AM<br>Dept: Courtroom 8A<br>Judge: Hon. Josephine L. Staton |

# TABLE OF CONTENTS


I. Introduction....................................................................................1

II. Statement of Facts ........................................................................2

III. Legal Standard ..............................................................................4

IV. Argument .......................................................................................4

A. Defendant conflates statutory standing with consent and improperly asks this Court to infer that Plaintiff consented to its conduct. .......................4

B. Defendant aided, abetted, and paid Asapp to eavesdrop on Plaintiff in violation of Penal Code § 631 and the Wiretap Act. .....................................8

1. Asapp is a third-party eavesdropper because Plaintiff alleges that it analyzes and uses the data it records...............................................8

2. Defendant's Motion to Dismiss improperly seeks a factual determination regarding the capability of Asapp's AI model. ............11

3. Asapp intercepts chat bot communications while they are in transit because Defendant automatically routes those communications to Asapp. ..........................................................................12

4. Defendant aided Asapp in the above-described violations of Section 631. ..................................................................13

V. Leave to amend should be freely granted. .........................................15

VI. Conclusion ......................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Ades v. Omni Hotels Mgmt. Corp.*, 46 F.Supp.3d 999 (C.D. Cal. 2014) ....................5

*Ahringer v. LoanDepot, Inc.*, 715 F.Supp.3d 1274 (C.D. Cal. 2024)................10, 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....................................................................4

*Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007)...............................................4

*Brown v. Google LLC*, 525 F.Supp.3d 1049 (N.D. Cal. 2021) ................................7

*Calhoun v. Google LLC*, 526 F.Supp.3d 605 (N.D. Cal. 2021) ............................6, 7

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020)....................................6

*Clark v. State Farm Mut. Auto. Ins. Co.*, 231 F.R.D. 405 (C.D. Cal. 2005) .......4, 14

*D'Angelo*.....................................................................................................15

*Desertrain v. City of Los Angeles*, 754 F.3d 1147 (9th Cir. 2014)..........................15

*Doe v. United States*, 419 F.3d 1058 (9th Cir. 2005) ...............................................4

*Earth Island Institute v. United States Forest Service*, 87 F.4th 1054, 1071 (9th Cir. 2023).....................................................................................................4

*Heerde v. Learfield Commc'ns, LLC*, 741 F.Supp.3d 849 (C.D. Cal. 2024) ....10, 13

*Heiting v. Athenahealth, Inc.*, No. 23-cv-01338, 2024 WL 3761294 (C.D. Cal. July 29, 2024).....................................................................................................13

*Heller v. Norcal Mut. Ins. Co.*, 8 Cal.4th 30 (1994)................................................4

*Hovhannisyan v. U.S. Dept. of Homeland Sec.*, 624 F.supp.2d 1135 (C.D. Cal. 2008).....................................................................................................12

*In re Facebook Privacy Litig.*, 572 Fed.App'x 494 (9th Cir. 2014).........................6

*In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013).....................................................................................................4, 7

*In re Metal Pixel Healthcare Litig.*, 647 F.Supp.3d 778 (N.D. Cal. 2022)...............7

*In re Path Network, Inc.*, 703 F.Supp.3d 1046 (N.D. Cal. 2023).............................7

*In re Vizio, Inc. Consumer Priv. Litig.*, 238 F.Supp.3d 1204 (C.D. Cal. 2017) 12, 13
*India Price v. Carnival Corp.*, 712 F.Supp.3d 1347 (S.D. Cal. 2024) .............10, 13
*Javier v. Assurance IQ, LLC,* 649 F.Supp.3d 891 (N.D. Cal. 2023) ...................8, 13
*Kauffman v. Papa John's International, Inc.*, No. 22-cv-1492, 2024 WL 171363 (S.D. Cal. Jan. 12, 2024) ..........11
*Kimmel v. Goland*, 51 Cal.3d 202 (1990) ..........5
*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002) ..........12
*Licea v. American Eagle Outfitters, Inc.*, No. EDDCV 22-1702, 2023 WL 2469630 (C.D. Cal. Mar. 7, 2023)..........5
*Licea v. Cinmar, LLC*, 659 F.Supp.3d 1096 (C.D. Cal. 2023) ..........6, 7
*Lieberman v. KCOP Television, Inc.*, 110 Cal.App.4th 156 (2003)..........4, 5, 6
*Makaron v. Enagic USA, Inc.*, 324 F.R.D. 228 (C.D. Cal. 2018) ..........7
*Matera v. Google, Inc.*, No. 15-cv-4062-LHK, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016)..........5
*Mathew v. Walt Disney Co.*, 690 Fed.App'x 509 (9th Cir. 2017) ..........11
*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 332 F.d 147 (2d Cir. 2003) ..........11
*Osgood v. Main Streat Mktg., LLC*, No. 16-cv-2415, 2017 WL 131829 (S.D. Cal. Jan. 13, 2017)..........5
*Raffin v. Medicredit, Inc.*, No. CV 15-4912, 2016 WL 7743504 (C.D. Cal. Dec. 19, 2016)..........5
*Ribas v. Clark*, 38 Cal.3d 355 (1985) ..........4
*Rodriguez v. Aquatic Sales Solutions LLC*, No. 23-cv-05198, 2024 WL 2804097 (C.D. Cal. May 29, 2024)..........10
*Rodriguez v. Ford Motor Co.*, No. 3:23-cv-00598, 2024 WL 4957566 (S.D. Cal. Dec. 3, 2024) ..........9
*Rosenow v. Facebook, Inc.*, No. 19-cv-1297, 2025 WL 951277 (S.D. Cal. Mar. 28

2025) ....................................................................................................7
*Smith v. Google*, LLC, 735 F.Supp.3d 1188 (N.D. Cal. 2024)...............................10
*Tanner v. Acushnet Co.*, No. 23-cv-00346, 2023 WL 8152104 (C.D. Cal. Nov. 20, 2023) ...............................................................................................9, 10
*Tate v. VITAS Healthcare Corp.*, 762 F.Supp.3d 949 (E.D. Cal. 2025)...................8
*Tavernetti v. Superior Ct.*, 22 Cal.3d 187 (1978) ..................................................8
*Turner v. Nuance Communications, Inc.*, 735 F.Supp.3d 1169 (N.D. Cal. 2024) ....9
*Van Patten v. Vertical Fitness Grp., LLC*, 847 F3d 1037 (9th Cir. 2017) ................7
*Williams v. What If Holdings LLC*, No. 22-cv-3780, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ...............................................................................9

**Statutes**

Cal. Penal C. § 631(a) ..........................................................................8, 13
Cal. Penal C. § 637.2(c) ..............................................................................4

**Other Authorities**

Black's Law Dictionary (12th ed. 2024), consent ..............................................6

**Rules**

Fed R. Civ. P. 12(b)(6)...........................................................................4, 7
Fed. R. Civ. P. 15(a) ...............................................................................15
Fed. R. Civ. P. 8 .........................................................................................4
Fed. R. Civ. P. 9 .......................................................................................14

## I. Introduction

Defendant Charter Communications, Inc. ("Defendant") moves to dismiss Plaintiff Miguel Esparza's ("Plaintiff") First Amended Complaint by inventing new pleading standards under California's Invasion of Privacy Act ("CIPA"), making procedurally improper arguments, and misconstruing the legal standards at the pleading stage. Defendant's most flagrant attempt to reinvent the legal standards applicable to this case is its purported statutory standing argument. The Court should not be fooled—this is simply a consent defense disguised as a statutory standing argument. Defendant argues that Plaintiff has not suffered an injury actionable under CIPA because he does not have a protected privacy interest that could have been violated due to his participation in other consumer privacy litigation. Defendant effectively asks this Court to infer that Plaintiff consented to its conduct because he knew or should have known that Defendant was routing his chat communications to an undisclosed third party—explicitly contrary to the facts pled in paragraph 37 of the First Amended Complaint. But that is not the standard for statutory standing. It is the standard for consent.

Defendant is certainly entitled to avail itself of a consent defense. However, consent is an affirmative defense for which Defendant bears the burden of proof. Instead of conducting discovery and putting on evidence to support that defense—as is the proper way to litigate the issue—Defendant seeks to impose a heightened pleading standard created from whole cloth to avoid having to do so. Allowing Defendant to shift its burden of proving consent onto Plaintiff runs afoul of the Rules of Civil Procedure, well established appellate authority regarding pleading standards, and California Supreme court authority interpreting CIPA. The Court should decline to do so and deny Defendant's Motion.

What's more, Defendant argues that Plaintiff fails to plead a violation of CIPA because its third-party chat bot vendor is not a third-party eavesdropper. Yet

Defendant completely neglects to advise the Court of the split within the Ninth Circuit regarding the standard for that determination, opting to only cite cases that require that a third-party be actively using chat data to qualify as a third-party eavesdropper. However, there are a wealth of cases in which courts have refused to write such a "use" requirement into CIPA. Not one of them is cited by Defendant.

Even were the Court to apply Defendant's cherry-picked standard, determining whether a third-party is working with or using data is a fact question not ripe for resolution at the pleading stage and Plaintiff's allegations pass muster. While Defendant may believe that Plaintiff has mischaracterized how it's chat vendor operates, that is an issue for discovery not a pleadings challenge. Defendant's Motion should be denied.

## II. Statement of Facts

### A. Defendant utilizes Asapp to power its website's chat bot.

Plaintiff alleges that Defendant secretly pays a third party company called "Asapp" to embed its chat technology code into the chat feature offered on Defendant's Website. Pl.'s First Am. Compl. at ¶ 9 [ECF No. 13] ("FAC"). Asapp's product is a type of automatic routing software that automatically acquires and transmits user chat communications without any active input from either Defendant's employees, agents, or human representatives. *Id.* at ¶ 10. Through this chat technology, Defendant redirects the inputs made by users to its online chat system, in real time, from Defendant's own website to Asapp's chat technology platform. *Id.* at ¶ 17. Asapp then records the inputs made by users of Defendant's chat system, analyzes them using its artificial intelligence ("AI") language model to determine what response the chat bot should give, and then communicates that response back to Defendant's website. *Id.* at ¶ 18.

Asapp—at Defendant's direction—records every communication made to Defendant's chat system by a user, and then analyzes those communications. *Id.* at ¶

20. Importantly, at no time is Asapp's interception of these transmissions disclosed to users. *Id.* at ¶¶ 36–37. Plaintiff also alleges that Asapp utilizes this chat data to refine its AI model and make it more marketable. *Id.* at ¶¶ 21–27. Because all chat systems that utilize Asapp's platform use Asapp's AI models, Plaintiff alleges that chat communications intercepted and analyzed by Asapp are used to improve AI models beyond just Defendant's chat bot. *Id.* at ¶¶ 21–23.

The only reason Asapp is able to do any of this is because Defendant embedded the chat technology into its own website, and caused communications made to that chat bot to be routed to Asapp's chat technology platform. *Id.* at ¶ 19. Plaintiff alleges that Defendant is aware that Asapp is analyzing chat communications that are routed to it, and that Asapp's AI language model is learning from those communications. *Id.* at ¶ 29.

**B. Plaintiff's interaction with Defendant's chat bot.**

On or around August 21, 2024, Plaintiff utilized Defendant's chat feature on its Website. *Id.* at ¶ 33. Plaintiff asked the chat feature several questions about what TV options Defendant had available for deaf people. *Id.* Plaintiff alleges that Defendant routed each of these inputs instantaneously to Asapp, and that Asapp then recorded and analyzed the chat messages using its AI model, to determine how the chat bot should respond, and then routed the response back to Defendant's website to be displayed in the chat box for Plaintiff to read. *Id.* at ¶¶ 34–35. Defendant did not inform Plaintiff that Asapp was doing this, nor did Plaintiff know that Asapp was intercepting his communications. *Id.* at ¶¶ 36–37.

Plaintiff alleges that by engaging in this conduct, Defendant has invaded his privacy, and that he felt upset, disturbed, and violated upon learning that Asapp had intercepted and recorded his communications. *Id.* at ¶¶ 39–41. Plaintiff also alleges that he provided Defendant and Asapp with valuable data without his consent or

knowledge. *Id.* at ¶ 42.

## III. Legal Standard

Federal Rule of Civil Procedure 8 requires that a Plaintiff only plead facts sufficient to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007). "Rule 8's pleading standard is 'liberal.'" *Earth Island Institute v. United States Forest Service*, 87 F.4th 1054, 1071 (9th Cir. 2023). "When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences drawn from them—as true and must construe them in the light most favorable to the non-moving party." *Yoon v. Lululemon USA, Inc.*, 549 F.Supp.3d 1073, 1078 (C.D. Cal. 2021) (citing *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005)). A motion to dismiss under Rule 12(b)(6) should only be granted if the complaint does not "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## IV. Argument

### A. Defendant conflates statutory standing with consent and improperly asks this Court to infer that Plaintiff consented to its conduct.

"It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages." Cal. Penal C. § 637.2(c). "[A]n actionable violation of [CIPA] occurs the moment the surreptitious recording is made." *Lieberman v. KCOP Television, Inc.*, 110 Cal.App.4th 156, 166–67 (2003); *see also In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *17 (N.D. Cal. Sept. 26, 2013) ("The California case law on CIPA cuts against Google's contention that 'injured' requires independent injury."). The California Supreme Court has repeatedly held that a violation of CIPA itself constitutes an injury sufficient to convey statutory standing. *See, e.g., Ribas v. Clark*, 38 Cal.3d 355, 365 (1985); *Heller v. Norcal Mut. Ins. Co.*, 8 Cal.4th 30, 53

(1994); *Kimmel v. Goland*, 51 Cal.3d 202, 211 (1990). Moreover, federal courts have consistently held that an invasion of privacy confers Article III standing. *See, e.g.*, *Osgood v. Main Streat Mktg., LLC*, No. 16-cv-2415, 2017 WL 131829, at *7 (S.D. Cal. Jan. 13, 2017); *Matera v. Google, Inc.*, No. 15-cv-4062-LHK, 2016 WL 5339806, at *14 (N.D. Cal. Sept. 23, 2016); *Ades v. Omni Hotels Mgmt. Corp.*, 46 F.Supp.3d 999, 1018 (C.D. Cal. 2014); *Licea v. American Eagle Outfitters, Inc.*, No. EDDCV 22-1702, 2023 WL 2469630, at *3 (C.D. Cal. Mar. 7, 2023); *Raffin v. Medicredit, Inc.*, No. CV 15-4912, 2016 WL 7743504, at *3 (C.D. Cal. Dec. 19, 2016).[1]

In *Lieberman*, the plaintiff brought claims under Penal Code section 632 against a local news station. 110 Cal.App.4th at 161. There, the doctor-plaintiff had been secretly recorded by a local news station's investigators. *Id.* The news station then aired the recordings as part of a segment. *Id.* The plaintiff alleged that because of the broadcast of the recording he lost several patients and had to resign from a professional association. *Id.* The defendant moved to strike the complaint, in part, on the basis that the plaintiff had not alleged an injury resulting from the recording because his alleged injury was caused by the broadcasting of the recordings. *Id.* at 166. The Court of Appeal disagreed stating that even though the damages alleged as a result of the broadcast were not recoverable under CIPA, the plaintiff had nonetheless suffered an injury giving him statutory standing because the invasion of his privacy was a sufficient injury. *Id.* at 166–67.

Here, like in *Lieberman*, Plaintiff alleges that Defendant allowed Asapp to

---

[1] Defendant absurdly argues that Plaintiff "cannot clear even the initial hurdle of injury-in-fact for Article III standing," despite having removed this action to this Court and affirmatively represented that this Court has jurisdiction over this matter. *See* Def.'s Mot. to Dismiss at 10 [ECF No. 23]. While Defendant does not seek dismissal on an Article III basis, its argument that Plaintiff does not have Article III standing borders on bad faith.

surreptitiously intercept his chat communications in violation of CIPA. FAC ¶¶ 34–36. Plaintiff alleges that he did not know that Defendant was doing so, and as such his privacy rights were violated. FAC ¶¶ 36–40. Thus, as in *Lieberman*, the invasion of Plaintiff's privacy constitutes an injury that conveys statutory standing. 110 Cal.App.4th at 166–67. Though courts have consistently held that this alone is sufficient, Plaintiff also alleges that he "felt upset, disturbed, and/or violated upon learning" that his privacy had been invaded, and that he effectively lost money or property because he "provided valuable data to Defendant." FAC ¶¶ 41–44. Thus, even if the invasion of Plaintiff's privacy were insufficient to convey statutory standing, Plaintiff has alleged additional harms that also convey standing. *See In re Facebook Privacy Litig.*, 572 Fed.App'x 494, 494 (9th Cir. 2014); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1118 (9th Cir. 2020) ("CIPA section 631 [is] targeted at the substantive intrusion that occurs when private communications are intercepted by someone who does not have the right to access them.").

Faced with this exceedingly clear mandate from California courts, Defendant resorts to conflating standing with consent. Effectively, Defendant argues that Plaintiff cannot possibly have suffered an invasion of his privacy because he knew or should have known Defendant was routing his conversations to Asapp due to his status as a "tester." This is simply an attempt to shoehorn a consent element into CIPA's statutory standing requirement, presumably because consent is ordinarily an affirmative defense that would be Defendant's burden to prove. *Calhoun v. Google LLC*, 526 F.Supp.3d 605, 623 (N.D. Cal. 2021); *see also Licea v. Cinmar, LLC*, 659 F.Supp.3d 1096, 1106 (C.D. Cal. 2023); Black's Law Dictionary (12th ed. 2024), consent ("Consent is an affirmative defense to . . . torts such as defamation, [and] invasion of privacy."). By disguising a consent argument as a statutory standing challenge, Defendant attempts to swap this burden onto Plaintiff

and avoid having to put on evidence to support its defense. This Court should not permit it to do so, as courts within the Ninth Circuit have consistently held that a plaintiff is not required to prove a lack of consent in privacy cases. *See, e.g., Van Patten v. Vertical Fitness Grp., LLC*, 847 F3d 1037, 1044 (9th Cir. 2017); *Makaron v. Enagic USA, Inc.*, 324 F.R.D. 228, 232–33 (C.D. Cal. 2018); *Brown v. Google LLC*, 525 F.Supp.3d 1049, 1063 (N.D. Cal. 2021); *In re Path Network, Inc.*, 703 F.Supp.3d 1046, 1074 (N.D. Cal. 2023); *Rosenow v. Facebook, Inc.*, No. 19-cv-1297, 2025 WL 951277 (S.D. Cal. Mar. 28 2025). If Defendant wishes to avail itself of a consent defense it must conduct discovery and put on evidence in support of that defense, not flip its burden onto Plaintiff by couching its affirmative defense as a statutory standing argument.

Even if Plaintiff were required to show a lack of consent to establish standing, he has adequately plead such a lack of consent here. "Consent can be explicit or implied, but any consent must be actual." *In re Metal Pixel Healthcare Litig.*, 647 F.Supp.3d 778, 793 (N.D. Cal. 2022) (quoting *In re Google, Inc.*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013)) (citation modified). Consent may be implied where "the parties whose communications were intercepted had adequate notice of the interception." *Calhoun v. Google LLC*, 526 F.Supp.3d 605, 623 (N.D. Cal. 2021) (internal quotations omitted). Courts have regularly held that simple allegations that a plaintiff did not consent are sufficient at the pleading stage. *See, e.g., Esparza v. Kohl's Inc.*, 723 F.Supp.3d 934, 941 (S.D. Cal. 2024); *Licea v. Cinmar, LLC*, 659 F.Supp.3d 1096, 1106 (C.D. Cal. 2023).

Nor can Defendant cite to other cases filed by Plaintiff to ask this Court to infer that Plaintiff impliedly consented. It is black letter law that "[w]hen evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences drawn from them—as true and

must construe them in the light most favorable to the non-moving party." *Yoon v. Lululemon USA, Inc.*, 549 F.Supp.3d 1073, 1078 (C.D. Cal. 2021). Plaintiff affirmatively alleges that he did not know that Defendant was routing his chat communications to Asapp. FAC ¶¶ 36–37. The Court must accept this allegation as true. *Yoon*, 549 F.Supp.3d at 1078.[2] Defendant's argument would require the Court to infer the opposite and, as such, should be rejected. Defendant's Motion should be denied.

**B. Defendant aided, abetted, and paid Asapp to eavesdrop on Plaintiff in violation of Penal Code § 631 and the Wiretap Act.**

Penal Code § 631 covers "three distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal.3d 187, 192 (1978). Specifically prohibited are (1) "intentional wiretapping;" (2) "attempting to learn the contents or meaning of a communication in transit over a wire;" and (3) "attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." Cal. Penal C. § 631(a). CIPA also imposes liability on anyone who "aids, agrees with, employs, or conspires with any person or persons" in violating the three clauses above. *Id.*

**1. Asapp is a third-party eavesdropper because Plaintiff alleges that it analyzes and uses the data it records.**

As an initial matter, Defendant completely fails to apprise the Court of the current split of authority within the Ninth Circuit regarding third-party eavesdroppers under CIPA. While it is true that some courts have required a showing that a third party be working with the data to qualify as an eavesdropper under CIPA, several others have held that no such requirement exists. *See, e.g., Javier v. Assurance IQ, LLC*, 649 F.Supp.3d 891, 900 (N.D. Cal. 2023); *Tate v.*

[2] Defendant is welcome to question Plaintiff regarding whether he knew Asapp was intercepting his messages at his deposition. Defendant's argument, however, is premature and procedurally improper.

*VITAS Healthcare Corp.*, 762 F.Supp.3d 949, 955 (E.D. Cal. 2025); *Rodriguez v. Ford Motor Co.*, No. 3:23-cv-00598, 2024 WL 4957566, at *8–9 (S.D. Cal. Dec. 3, 2024); *Turner v. Nuance Communications, Inc.*, 735 F.Supp.3d 1169, 1183 (N.D. Cal. 2024). These courts reason that "use is already an element of the third clause of section 631, which penalizes anyone 'who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information obtained by unauthorized wiretapping." *Turner*, 735 F.Supp.3d at 1183. Thus, "'reading a use requirement' into all three clauses would 'add requirements that are not present (and swallow the third [clause] in the process).'" *Id.* (quoting *Javier*, 649 F.Supp.3d at 900. Not one of these cases appears in Defendant's Motion to Dismiss, likely because a similar holding by this Court would doom Defendant's Motion.

Even if a use requirement did exist, Defendant still misstates the standard. Whether a party is a third-party eavesdropper under CIPA depends on whether they "acted merely as a tape-recorder . . . or a third party eavesdropper." *Tanner v. Acushnet Co.*, No. 23-cv-00346, 2023 WL 8152104, at *4 (C.D. Cal. Nov. 20, 2023). "[A] key distinction is whether or not the alleged third party software provider aggregates or otherwise processes the recorded information . . ." *Williams v. What If Holdings LLC*, No. 22-cv-3780, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) (collecting cases).[3]

In *Tanner*, the plaintiff alleged that the defendant utilized a third-party software company to "intercept and captur[e]" communications on its website. *Tanner*, 2023 WL 8152104, at *5. Thereafter, the third-party software company would "cross-reference and analyze user activity," to "recreate website visitors'

---

[3] Defendant essentially asks this Court to require not only that Asapp be using the data (a requirement not present in the statute, as discussed above), but also that it be doing so <u>for its own independent business purposes</u>. Defendant attempts to stretch the standard beyond even what its cited authority supports.

entire visit." *Id.* Thus, the plaintiff had adequately alleged that the third-party software company was "actively working with the data—not just storing it as a tape recorder." *Id.* Therefore, the third-party software company was not a mere tape recorder but was a third-party eavesdropper. *Id.*[4]

Similarly, here, Plaintiff alleges that "Asapp uses its record of Website users' interaction with Defendant's chat feature for data analytics and marketing/advertising to consumers." FAC ¶ 15. As Plaintiff has alleged, Asapp <u>must</u> do more than merely store the chat bot communications, because Asapp uses artificial intelligence to analyze customer communications to determine what response the chat bot should provide. *Id.* at ¶¶ 16, 18, 20–27. This simply cannot be done without Asapp conducting some type of analysis on the communications that it intercepts, and to conclude otherwise would be illogical. Thus, just as in *Tanner*, Plaintiff has alleged that Asapp is "actively working with the data—not just storing it as a tape recorder," and therefore Asapp is a third-party eavesdropper. *Tanner*, 2023 WL 8152104, at *5.[5] Nothing further is required at this stage. *Rodriguez v. Aquatic Sales Solutions LLC,* No. 23-cv-05198, 2024 WL 2804097, at *11–12 (C.D. Cal. May 29, 2024); *Heerde v. Learfield Commc'ns, LLC*, 741 F.Supp.3d 849, 860–61 (C.D. Cal. 2024); *India Price v. Carnival Corp.*, 712 F.Supp.3d 1347, 1355 (S.D. Cal. 2024); *Ahringer v. LoanDepot, Inc.*, 715 F.Supp.3d 1274, 1282 (C.D. Cal. 2024); *Smith v. Google*, LLC, 735 F.Supp.3d 1188, 1196-97 (N.D. Cal. 2024); Pl.'s Req. for Judicial Notice ("RJN") Ex. A.

Even if this Court were to require Plaintiff have plead an independent business use by Asapp, Plaintiff's allegations would still pass muster. Certainly, Plaintiff's

---

[4] Importantly, *Tanner* contained no allegations that the third party was utilizing intercepted data for its own business purposes or for the benefit of anyone other than the named principal Defendant.

[5] It would be an extreme—and frankly dangerous—understatement to conclude that a program powered by artificial intelligence is merely a tape recorder, given the power and potential for misuse that artificial intelligence presents.

FAC adds substantial allegations regarding Asapp's alleged use of the communications and data collected through Defendant's chat bot. Certainly, as Plaintiff alleges, "Asapp utilizes data collected from chats initiated on Defendant's Website to improve its own AI model." FAC at ¶ 27. Because "[a]ll chat systems that utilize Asapp's platform similarly use Asapp's AI models," the data and communications intercepted by Asapp are allegedly used to improve not only Defendant's own chat bot, but also all chat bots powered by Asapp. *Id.* at ¶¶ 23–27. Thus, by intercepting Plaintiff's communications, and thereby learning from them, Asapp independently used those communications to improve its AI language model, making its chat bot product better and more marketable. *Id*. Thus, even though an independent business use is not required under CIPA, Plaintiff's allegations still pass muster at this stage. *See* RJN Ex A. Defendant's Motion should be denied.

**2. Defendant's Motion to Dismiss improperly seeks a factual determination regarding the capability of Asapp's AI model.**

"It is fundamental that Rule 12(b)(6) requires a court to construe the allegations of the complaint in the light most favorable to the nonmoving party." *Mathew v. Walt Disney Co.*, 690 Fed.App'x 509, 512 (9th Cir. 2017). "A court's task in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 332 F.d 147, 158 (2d Cir. 2003) (quotation modified). Thus, factual determinations may not properly be made on a motion to dismiss. *See Mathew*, 690 Fed.App'x at 513. Whether a third party acts as an eavesdropper or a tape recorder is a question of fact for a jury "best answered after discovery." *Yoon*, 549 F.Supp.3d at 1081; *Kauffman v. Papa John's International, Inc.*, No. 22-cv-1492, 2024 WL 171363, at *7 (S.D. Cal. Jan. 12, 2024).

Defendant's Motion dedicates substantial space discussing Asapp's website

(contained in a declaration submitted by Defendant's counsel), asking the Court to find that "the AI models' analysis is *only* capable of being useful for Charter's specific purposes." Def.'s Mot. at 15. While the Court may properly consider the websites cited in Plaintiff's FAC, *Hovhannisyan v. U.S. Dept. of Homeland Sec.*, 624 F.supp.2d 1135, 1148 (C.D. Cal. 2008), it must draw inferences from those websites in favor of Plaintiff at this stage. *Yoon*, 549 F.Supp.3d at 1078. Whether Plaintiff has "mischaracterized" these webpages, and whether Asapp uses the chat data for its own purposes are factual determinations not fit for determination at the pleadings stage. *Id.* at 1081. Defendant invites the Court to commit error in making such a determination, and the Court should decline to do so. Defendant's Motion should be denied.

**3. Asapp intercepts chat bot communications while they are in transit because Defendant automatically routes those communications to Asapp.**

For purposes of CIPA a communication is intercepted in transit when it is "acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Courts have held that "at the motion to dismiss stage, a plaintiff is not expected to prove or even know how and when its communications were captured." RJN at Ex. B; *see, e.g.*, *In re Vizio, Inc. Consumer Priv. Litig.*, 238 F.Supp.3d 1204, 1228 (C.D. Cal. 2017) ("*Vizio*").

Plaintiff has clearly alleged that Asapp intercepted his communications while they were in transit: "Defendant redirects the inputs made by users to its chat bot system, in real time, from Defendant's own website to Asapp's chat technology platform." FAC ¶ 17, *see also* FAC ¶ 34 ("Defendant routed each of these inputs, instantaneously, to Asapp through the websocket as discussed above."). Thus, the moment a user sends their chat to Defendant's chat bot, the message is instantaneously routed to Asapp for recording and processing. The communications

are therefore intercepted while they are in transit. *Byars*, 654 F.Supp.3d at 1027 (allegations that interception of communications happened "in real time" were sufficient to satisfy the "in transit" requirement); *Campbell*, 77 F.Supp.3d at 848 ("the [SAC's] allegation that a user's messages were intercepted in transit is to be taken as true" at the motion to dismiss stage); *see also Rodriguez*, 2024 WL 2804097, at *12–13; *Heerde*, 741 F.Supp.3d at 862; *India Price*, 712 F.Supp.3d at 1359–60; *Ahringer*, 715 F.Supp.3d at 1282.

Defendants appeals to *Vizio* and *Heiting v. Athenahealth, Inc.*, No. 23-cv-01338, 2024 WL 3761294 (C.D. Cal. July 29, 2024), are inapposite. In both of those cases, the plaintiffs failed to state "when the interception occur[ed]." *Heiting*, 2024 WL 3761294, at *5; *Vizio*, 238 F.Supp.3d at 1228. Here, however, Plaintiff includes several specific allegations regarding when the chat transmissions are intercepted. *See, e.g.*, FAC ¶ 9 (chat transmissions are collected simultaneously in real time with the sending of the message), ¶ 10 (chat transmissions are routed automatically to Asapp), ¶ 34 (Defendant routed chat inputs instantenously to Asapp). Thus, unlike in *Vizio* and *Heiting*, Plaintiff has alleged precisely when the transmissions were intercepted—at the exact moment he sent them to Defendant. Plaintiff has adequately plead interception, and Defendant's Motion should be denied.[6]

**4. Defendant aided Asapp in the above-described violations of Section 631.**

Section 631 imposes liability on anyone who aids another in violating its three primary clauses. Cal. Penal C. § 631(a). "[I]f a third party listens in on a conversation between the participants (even if one participant consents to the presence of that third party), then the third party is liable under the second prong

---

[6] Plaintiff notes that Defendant does not challenge Plaintiff's claims under the first or third prongs of CIPA, save for the party-exception challenge discussed above. Thus, even if the Court rules that Plaintiff has not met the standard for interception in transit, his claims under the other two prongs of CIPA survive.

(and the participant is often liable under the fourth prong)." *Javier v. Assurance IQ, LLC*, 649 F.Supp.3d 891, 897–98 (N.D. Cal. 2023) (emphasis added).

In *D'Angelo*, the Plaintiff brought a putative CIPA class action against JC Penny under a nearly identical theory as here. *D'Angelo v. Penny OpCo, LLC*, No. 23-cv-0981, 2023 WL 7006793, at *7–9 (S.D. Cal. Oct. 24, 2023). There, the plaintiff alleged that "[t]he chat function is run through [the third party's] servers . . . In other words, [the third party] runs the chat service from its own servers, but consumers interact with the chat service on Defendant's Website, so it appears they are *only* communicating with a company representative of Defendant." *Id.* at *8. The Court held that these allegations were sufficient to plausibly allege that JC Penny had aided and abetted the third party. *Id.* at *9.

Here, as in *D'Angelo*, Plaintiff alleges that Asapp runs Defendant's chat bot from its servers. *See* FAC ¶¶ 9–13, 17, 19, 34. Just as in *D'Angelo*, Plaintiff only interacted with the chat bot on Defendant's website, such that it appeared she was only communicating with Defendant. *See id.* at ¶¶ 32–34. Moreover, Plaintiff here has alleged that "[t]he only reason Asapp is able to do any of this is because Defendant embedded the chat technology into its own website, and caused communications made to that chat bot to be routed to Asapp's chat technology platform" *Id.* ¶ 19. Thus, just as in *D'Angelo*, Plaintiff has plausibly alleged that Defendant aided Asapp in the illegal tapping and use of her communications. *D'Angelo*, 2023 WL 7006793, at *9.

Defendant's argument that Plaintiff has not adequately plead that it aided and abetted Asapp is based entirely on the basis that he has not adequately plead Defendant's knowledge of Asapp's conduct. This argument is foreclosed by the Rules of Civil Procedure: "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b) (emphasis added). Thus, the "ninth Circuit has interpreted these rules to mean that conclusory pleading is sufficient," for mental states and knowledge. *Clark v. State Farm Mut. Auto. Ins.*

*Co.*, 231 F.R.D. 405, 406 (C.D. Cal. 2005) (collecting cases). Plaintiff has adequately alleged that Defendant knew what Asapp was doing. See FAC ¶¶ 9–10, 29–30, 34. As was the case in *D'Angelo*, Plaintiff's allegations are sufficient at this stage and Defendant's Motion should be denied. 2023 WL 7006793, at *9.

## V. Leave to amend should be freely granted.

When a party requests to amend a pleading, the court must freely give leave when justice so requires. Fed. R. Civ. P. 15(a); *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014). Here, leave to amend will not cause undue delay or prejudice as this case is in its infancy, and there is no in bad faith. If the Court grants any part of Defendant's motion, Plaintiff requests the Court grant leave to amend.

## VI. Conclusion

For these reasons, Plaintiff respectfully requests that this Court deny Defendant's motion.

Dated: June 27, 2025 **LAW OFFICES OF TODD M. FRIEDMAN, P.C.**

BY: s/Todd M. Friedman
TODD M. FRIEDMAN, ESQ.
ATTORNEYS FOR PLAINTIFFS

Filed electronically on this 27th Day of June, 2025, with:
United States District Court CM/ECF system.
Notification sent electronically on this 27th Day of June, 2025, to:

United States District Court
Central District of California
Hon. Josephine L. Staton
And All Counsel of Record as Recorded On The Electronic Service List

/s/ Todd M. Friedman
TODD M. FRIEDMAN