**THOMPSON COBURN LLP**
**LUKAS SOSNICKI (SBN 295895)**
**lsosnicki@thompsoncoburn.com**
**JOSE L. LUA-VALENCIA (SBN 324087)**
**jlua-valencia@thompsoncoburn.com**
**10100 Santa Monica Boulevard, Suite 500**
**Los Angeles, California 90067**
**Tel: 310.282.2500 / Fax: 310.282.2501**

Attorneys for Defendant CHARTER COMMUNICATIONS, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

MIGUEL ESPARZA,

Plaintiff,

v.

CHARTER COMMUNICATIONS, INC, a Delaware corporation d/b/a SPECTRUM.COM,

Defendant.

Case No. 2:25-cv-02438-JLS-PVC

**CHARTER COMMUNICATIONS, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Hearing: July 18, 2025
Time: 10:30 a.m.
Judge: Hon. Josephine L. Staton
Courtroom: 8A

Complaint Filed: February 13, 2025

Notice of Removal Filed: March 19, 2025

# TABLE OF CONTENTS


Page

I. ARGUMENT ..... 1

A. Plaintiff Lacks Statutory Standing to Bring His CIPA Claim. ..... 1

B. Plaintiff's Alleged Emotional Harms Are Insufficient for Standing Purposes. ..... 5

C. CIPA's "Party Exemption" Applies to Asapp. ..... 6

D. The FAC Does Not Sufficiently Plead Scienter. ..... 9

E. The FAC Does Not Sufficiently Plead CIPA's "In Transit" Requirement. ..... 10

II. The FAC Should Be Dismissed Without Leave to Amend. ..... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ades v. Omni Hotels Mgmt. Corp.*,
46 F. Supp. 3d 999 (C.D. Cal. 2014) ........ 1

*Boorstein v. CBS Interactive, Inc.*,
222 Cal. App. 4th 456 (2013) ........ 2

*Boorstein v. Men's Journal, LLC*,
2012 U.S. Dist. LEXIS 83101 (C.D. Cal. July 14, 2012) ........ 2

*In re C.H.*,
53 Cal. 4th 94 (2011) ........ 1

*Dix v. Superior Court*,
53 Cal. 3d 442 (1991) ........ 1

*In re Google Inc. Gmail Litig.*,
2013 U.S. Dist. LEXIS 172784 (N.D. Cal. Sept. 26, 2013) ........ 4

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ........ 3

*Heller v. Norcal Mut. Ins. Co.*,
8 Cal. 4th 30 (1994) ........ 5

*Hubbard v. Google LLC*,
2024 U.S. Dist. LEXIS 117876 (N.D. Cal. July 1, 2024) ........ 3

*Kimmel v. Goland*,
51 Cal. 3d 202 (1990) ........ 5

*King v. Conde Nast Publications*,
2012 U.S. Dist. LEXIS 109120 (C.D. Cal. Aug. 3, 2012), aff'd 554 Fed. Appx. 545 (9th Cir. 2014) ........ 2

*Lieberman v. KCOP Television, Inc.*,
110 Cal. App. 4th 156 (2003) ........ 4, 5

*Lloyd v. Facebook, Inc.*,
2024 U.S. App. LEXIS 16527 (9th Cir. July 8, 2024) ........ 3

*Miller v. Hearst Communications, Inc.*,
2012 U.S. Dist. LEXIS 109121 (C.D. Cal. Aug. 3, 2012), aff'd 554 Fed. Appx. 657 (9th Cir. 2014) .......... 2

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .......... 5

*Surrey v. TrueBeginnings, LLC*,
168 Cal. App. 4th 414 (2008), overruled on other grounds by *White v. Square, Inc.*, 7 Cal. 5th 1019 (2019) .......... 1

*Thomas v. Papa Johns Int'l, Inc.*,
2024 U.S. Dist. LEXIS 84019 (S.D. Cal. May 8, 2024) .......... 3

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 3

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 4

*Yoon v. Lululemon United States*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 2

**Statutes**

California Consumer Privacy Act, Cal. Civ. Code. § 1798.120 et seq. .......... 3

Federal Wiretap Act, 18 U.S.C. § 2512, et seq. .......... 2

**Other Authorities**

Analysis of SB 690, Sen. Comm. on Pub. Safety, 2025-2026 Reg. Sess. (Cal. Apr. 25, 2025) .......... 4

# MEMORANDUM OF POINTS AND AUTHORITIES

Charter previously moved to dismiss this case because Plaintiff's initial Complaint was grossly deficient in pleading the most basic facts for a plausible CIPA aiding-and-abetting claim. Docket Entry ("D.E.") No. 12. Rather than oppose that motion, Plaintiff amended that Complaint. D.E. No. 15 (Order). The First Amended Complaint ("FAC"), however, still fails to cure key pleading deficiencies (including relating to Plaintiff's statutory standing and Charter's scienter), relies on inapposite caselaw, and without legal basis asks this Court to ignore judicially-noticeable facts.

Because the claim remains insufficiently pleaded, and because Plaintiff's Opposition gives no reason to conclude the FAC would be salvageable with leave to amend, Charter respectfully requests that the FAC be dismissed without further leave to amend.

## I. ARGUMENT

### A. Plaintiff Lacks Statutory Standing to Bring His CIPA Claim.

Charter explained in its Opening Brief that the Court should dismiss the FAC because Plaintiff fails to plausibly allege any cognizable injury to Plaintiff resulting from harm to any protectable privacy interest and, accordingly, has not sufficiently pleaded statutory standing to bring his CIPA claim. Charter explained that separate injury to a privacy interest is required based on CIPA's plain language (which requires "injury" separate from a statutory "violation"), longstanding principles of statutory interpretation, and decisions interpreting similarly-worded statutes.[1]

---

[1] *Ades v. Omni Hotels Mgmt. Corp.*, 46 F. Supp. 3d 999, 1005 (C.D. Cal. 2014) ("[F]ederal courts apply state law of statutory construction.") (citing *Bass v. County of Butte*, 458 F.3d 978, 981 (9th Cir. 2006)); *Surrey v. TrueBeginnings, LLC*, 168 Cal. App. 4th 414, 417–18 (2008), overruled on other grounds by *White v. Square, Inc.*, 7 Cal. 5th 1019 (2019) (Statutory standing requirements are determined from statutory language as well as underlying legislative intent and the purpose of the statute.); *Dix v. Superior Court*, 53 Cal. 3d 442, 459 (1991) (Courts "avoid statutory constructions that render particular provisions superfluous or unnecessary."); *In re*

Notably, Plaintiff does not address any of these points in his Opposition. Instead, Plaintiff cites California Supreme Court authority concerning wiretapping of telephone lines and declares that "federal courts have consistently held that an invasion of privacy confers Article III standing…." D.E. No. 24 at 5. For several reasons these arguments cannot save the FAC.

*First*, cases challenging wiretapping of telephone lines (which is what CIPA was actually passed to address) have no bearing on what privacy interest may be implicated by a consumer's visit to a public commercial website and decision to use the website's chat feature to review options for TV service—which is all the FAC pleads. Plaintiff alleges he visited Spectrum.com, a public commercial website; he shared "personal data" (which term he does not explain) through the webchat feature on that website; and he briefly inquired over webchat "about what TV options are available for deaf people." FAC at ¶¶ 32–33. The FAC makes no effort to explain why Plaintiff expected any information he shared in this context to be personal or private or why Plaintiff would have any reasonable expectation of privacy accessing a publicly-available website like Spectrum.com to ask about something as benign as

---

*C.H.*, 53 Cal. 4th 94, 107 (2011) (When a statute uses different words in contemporaneously-enacted provision, a strong inference arises that a different meaning was intended.); *Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073, 1085 (C.D. Cal. 2021) (dismissing CIPA claim because plaintiff failed to allege injury from a violation, warranting dismissal because "CIPA is far more straightforward than the analogous language of the Wiretap Act: only a person 'who has been ***injured*** by a violation of this chapter' may assert a civil claim") (quoting CIPA § 637.2) (emphasis added); *Boorstein v. CBS Interactive, Inc.*, 222 Cal. App. 4th 456, 460 (2013) (applying California's statutory-interpretation tenets to privacy-based statute like CIPA, and holding that a plaintiff must plead ***both*** a "violation" ***and*** an "injury" to allege a viable privacy claim); *Boorstein v. Men's Journal, LLC*, 2012 U.S. Dist. LEXIS 83101, at *10–13 (C.D. Cal. July 14, 2012) (same); *Miller v. Hearst Communications, Inc.*, 2012 U.S. Dist. LEXIS 109121, at *12–13 (C.D. Cal. Aug. 3, 2012), aff'd 554 Fed. Appx. 657 (9th Cir. 2014) (same); *King v. Conde Nast Publications*, 2012 U.S. Dist. LEXIS 109120, at *5–6 (C.D. Cal. Aug. 3, 2012), aff'd 554 Fed. Appx. 545 (9th Cir. 2014).

TV service. Moreover, and contrary to Plaintiff's position, California law *presumes* that websites may collect user information for certain purposes, including to provide requested services, perform analytics, and support marketing. The California Consumer Privacy Act, for example, specifically regulates what consumer disclosures website operators must provide to lawfully collect and share website visitor data, and, subject to an opt-out right as to certain sharing (and presuming the required disclosures are made), specifically allows online data collection and sharing. *See* Cal. Civ. Code. §§ 1798.120 (providing website visitors the right to opt out of having their personal information sold or shared), 1798.135 (establishing acceptable opt-out mechanisms); 1798.99.80(c) (implementing rules for "data brokers" who "collect[ ] and sell[ ] to third parties the personal information of a consumer with whom the business does not have a direct relationship"). It is not, as Plaintiff would have this Court believe, somehow a *per se* privacy violation for website operators to collect website user information online.

California courts have recognized as much, repeatedly holding there is no overarching expectation of privacy in all online activity. *See, e.g.*, *Lloyd v. Facebook, Inc.,* 2024 U.S. App. LEXIS 16527, at *5 (9th Cir. July 8, 2024) (plaintiff "did not have a reasonable expectation of privacy" where "data policy g[ave] clear notice that third party partners may share data"); *Hubbard v. Google LLC,* 2024 U.S. Dist. LEXIS 117876, at *22 (N.D. Cal. July 1, 2024) ("internet browsing involves the collection of users' data, including by tracking users across the internet, ***and a reasonable user should expect as much***.") (emphasis in original) (collecting cases); *Thomas v. Papa Johns Int'l, Inc.,* 2024 U.S. Dist. LEXIS 84019, at *3–4 (S.D. Cal. May 8, 2024) ("[T]he internet is not a place where users have a reasonable expectation of privacy.") (collecting cases); *see also United States v. Forrester,* 512 F.3d 500, 509–10 (9th Cir. 2008) ("Internet users have no expectation of privacy in . . . the IP addresses of the websites they visit."); *Heeger v. Facebook, Inc.,* 509 F. Supp. 3d

1182, 1190 (N.D. Cal. 2020) (similar).[2] Applied here, absent some recognized privacy interest in all potential online activity, which does not exist, Plaintiff has no viable privacy claim based on the facts he pleads in the FAC.

*Second*, stating that an "invasion of privacy" confers standing is entirely circular where the relevant question is what privacy right was invaded in the first place. To be clear, Charter acknowledges that, in certain circumstances, website visitors may be led to understand that their personal information (in particular medical or financial information) they share online will be kept private. But this is not such a case. And none of the cases Plaintiff cites on this issue are even remotely on point. Plaintiff first cites *Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156 (2003), which had nothing to do with statutory standing. *Lieberman* did not address whether CIPA requires an injury resulting from a privacy violation. Instead, *Lieberman* addressed whether a CIPA claimant needs to prove actual damages. *See Lieberman*, 110 Cal. App. 4th at 166 ("Appellant argues that the terms "injured" and "actual damages" within this statute should be viewed as synonymous."). Plaintiff next relies on *In re Google*, a 2013 case, to argue that no separate injury is required under CIPA. Setting aside that the law has significantly developed since 2013, that case concerned the defendant's alleged interception of students' private e-mails. *In re Google Inc. Gmail Litig.*, 2013 U.S. Dist. LEXIS 172784, at *65–66 (N.D. Cal. Sept. 26, 2013). There was little question in that case given the context that a legitimate and articulable privacy interest was involved. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1040

---

[2] The California Senate has likewise recognized that recent CIPA cases are stretching internet privacy rights to absurd results by unanimously passing Senate Bill 690 ("SB 690") "to protect businesses from vexatious litigation" under CIPA targeting online advertising technologies already regulated by the CCPA. *See* Analysis of SB 690, Sen. Comm. on Pub. Safety, 2025-2026 Reg. Sess. (Cal. Apr. 25, 2025). This "represents a novel attempt to bypass the limitations of the CCPA by leveraging a law designed for different circumstances, thus giving it a modern application in the digital age." *Id.* SB 690 would clarify that online businesses that comply with the CCPA's opt-out requirements cannot be liable under CIPA. *Id.*

(N.D. Cal. 2014) ("[T]his Court concludes, as others have, that there can be a legally protected privacy interest or reasonable expectation of privacy in any confidential and sensitive content within emails."). Similarly, Plaintiff's declaration that "[t]he California Supreme Court has repeatedly held that a violation of CIPA itself constitutes an injury sufficient to convey statutory standing" is based on cases involving a plausible expectation of privacy in one-on-one telephone communications that were eavesdropped upon. *See Ribas v. Clark,* 38 Cal. 3d 355, 365 (1985); *Kimmel v. Goland,* 51 Cal. 3d 202, 211 (1990). For this point, Plaintiff also cites *Heller v. Norcal Mut. Ins. Co.,* 8 Cal. 4th 30, 53 (1994) and *Lieberman v. KCOP Television, Inc.*. But *Heller* did not involve a CIPA or other wiretapping claim, and in any event, that case involved an obviously-plausible expectation of privacy because the plaintiff alleged the defendant disclosed her medical history in violation of the physician-patient privilege. 8 Cal. 4th at 53. Similarly, *Lieberman* involved secret audio and video recording of a doctor's private consultations with patients. 110 Cal. App. 4th at 161–62. In contrast, the FAC pleads no such obviously-plausible expectation of privacy in whatever (unexplained) communications Plaintiff allegedly had through a chatbox on a public commercial website.

Without a plausible expectation of privacy, Plaintiff cannot claim an injury to any privacy interest. And without an injury to a privacy interest, he lacks statutory standing under CIPA to bring his claim. Because the FAC fails to sufficiently plead statutory standing, and because Plaintiff's Opposition does nothing to explain how the FAC can survive dismissal if amended, Plaintiff's FAC should be dismissed with prejudice for that reason alone.

### B. Plaintiff's Alleged Emotional Harms Are Insufficient for Standing Purposes.

The Court should also dismiss the FAC because numerous courts have reiterated that emotional reactions like Plaintiff's "additional harms" are not cognizable injuries for standing. D.E. No. 23 at 11 (citing *I.C. v. Zynga, Inc.*, 600 F.

Supp. 3d 1034, 1052 (N.D. Cal. 2022) (claims of stress in data breach case did not constitute an injury for standing); *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 667–69 (7th Cir. 2021) (recent decisions assessing statutory standing "makes clear, anxiety and embarrassment are not injuries in fact"); *Holmes v. Elephant Ins. Co.*, 2023 U.S. Dist. LEXIS 110161, *13 (E.D. Va. June 26, 2023) ("Because the plaintiffs plead only 'bare assertion of emotional injury,' they have not pleaded an injury-in-fact."); *Wilkinson v. Olympia Dev. of Mich. LLC*, 2022 U.S. Dist. LEXIS 180669, at *7 (E.D. Mich. Oct. 3, 2022) ("[B]are allegations of 'stress, fear, anger, and frustration' do not amount to a concrete injury.")).

Rather than addressing the cases that Charter cited in its Opening Brief, Plaintiff cites inapplicable law. Specifically, he cites *In re Facebook Privacy Litig.,* 572 Fed. App'x 494, 496 (9th Cir. 2014), which cuts against Plaintiff's argument because the plaintiffs there alleged Facebook disseminated their personal information and further alleged that this resulted in ***loss of the sales value*** of that information, which the court determined was a "harm," establishing the damages element for the plaintiffs' breach of contract and fraud claims. *Id.* Here, Plaintiff has not sufficiently alleged loss of any economic value in intercepted data. *See* FAC at ¶¶ 41–42. Indeed, Plaintiff does not even plead what the intercepted data may have been.

### C. <u>CIPA's "Party Exemption" Applies to Asapp.</u>

In response to Charter's argument that a party to a communication cannot be liable for eavesdropping on its own conversation, and that this "party exemption" extends to third-party vendors like Asapp hired to use their software to transcribe and analyze webchats[3], Plaintiff argues there is a Ninth Circuit split. While that may be true, based on the FAC's allegations and judicially-noticeable facts, Asapp qualifies under the "party exemption" regardless of which competing analysis applies.

---

[3] *See, e.g.*, *Licea v. Vitacost.com*, 683 F. Supp. 3d 1118, 1123–24 (S.D. Cal. 2023); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021).

While Plaintiff is correct that there is a current split of Ninth Circuit authority as to the requirements for CIPA's "party exemption" to apply to third-party vendors, the split rests on a distinction without a difference for purposes of this case. As explained in *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 954 (E.D. Cal. 2025), the split concerns "whether a third-party entity must actually use the data it obtains for its own purposes or if it merely needs to have the ***capability*** to do so to act as a third party in violation of section 631(a)." (emphasis in original). Here, the FAC is entirely devoid of any alleged facts (as opposed to bare allegations) that any Charter information Asapp collects could be useful for Asapp's own purposes or can be used to benefit any of Asapp's other clients. As Asapp's website makes clear, each Asapp client has its own AI model that continuously self-improves, using only that client's unique data, to build a bespoke AI model to assist that client's customer service agents. Lua-Valencia Decl., Ex. B ("Designed for customer experience leaders, real-time agent assistance offers unparalleled benefits that cater to ***your unique*** needs.") (emphasis added). In other words, Asapp's analysis is ***only*** capable of being useful for Charter's specific purposes because Asapp's analysis of a client's data is only intended for that client's AI model to self-improve. For purposes of this Motion, if Plaintiff disagrees with Asapp's contentions and public representations in this respect, and believes Asapp is capable of using Charter-specific data to improve unrelated AI models for unrelated clients, he must both explain why and offer some facts in support. The FAC does neither.

Plaintiff also misreads *Tanner v. Acushnet Co.,* 2023 WL 8152104, at *4 (C.D. Cal. Nov. 20, 2023) to argue that Asapp is a CIPA eavesdropper solely because it is "actively working with the data." D.E. No. 24 at 9–10. *Tanner* held no such thing. Instead, *Tanner* focused on the plaintiff's allegations that vendors had the capability of using a client's data as a cross-reference for another client's data to improve the website-visit recreation *for that other client*. *See Tanner v. Acushnet Co.*, 2023 WL 8152104, at *5 (C.D. Cal. Nov. 20, 2023) ("the [vendors] cross-reference and analyze

user activity ***across all the websites they monitor***…This allegation in particular shows the [vendors] actively working with the data…and also implies that ***the [vendors] have some greater use for the data beyond simply storing it for Defendants' use***.). The determinative factor was not that the defendant "worked with" the data; it was what the defendants *did with* the data.

None of the other cases that Plaintiff cites stand for the proposition that Plaintiff need only allege Asapp's engagement with data to avoid the party exemption. *See Rodriguez v. Aquatic Sales Solutions LLC,* 2024 WL 2804097, at *11–12 (C.D. Cal. May 29, 2024) ("[P]laintiff alleges that Zendesk 'profit[s] from secretly exploiting the chat data through targeted social media advertising' in partnership with Meta."); *Heerde v. Learfield Commc'ns, LLC,* 741 F.Supp.3d 849, 860–61n.6 (C.D. Cal. 2024) (search terms were sent to third parties in exchange for money and for trackers to initiate advertisements); *India Price v. Carnival Corp.,* 712 F. Supp. 3d 1347, 1355 (S.D. Cal. 2024) (the website operator used third parties to recreate visits based on users' "pre-existing" data from visits to other websites, where the operator was not a party to the intercepted data); *Ahringer v. LoanDepot, Inc.,* 715 F.Supp.3d 1274, 1282 (C.D. Cal. 2024) (no argument was made that the third party only intercepted for the website operator); *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1197–98 (N.D. Cal. 2024) (Google aggregates collected data to power its algorithms and for its users to access it). The allegations in all of these cases gave the courts reason to infer that the third-party vendors were capable of using the data for their own, independent business purposes. Again, here, there are no factual allegations that support the FAC's bare allegations that Asapp uses Charter's data to improve other clients' AI models.

Moreover, and as Charter also explained in its Opening Brief, judicially-noticeable content from Asapp's website directly contradicts the FAC's allegations that Asapp is capable of using Charter's webchat data to improve AI models relating to other clients. The Court may take judicial notice of and give deference to the Asapp webpages cited in the FAC. *See Mavrix Photographs LLC v. Livejournal, Inc.*, 2013

U.S. Dist. LEXIS 197703, *9 (C.D. Cal. Aug. 2, 2013) (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (on a motion to dismiss, taking judicial notice of webpage URLs cited in a complaint)). This is merely an application of "the doctrine of incorporation by reference." *Tompkins v. 23andMe, Inc.*, 2014 U.S. Dist. LEXIS 88068, at *7–8 (N.D. Cal. June 25, 2014). "The rationale of the 'incorporation by reference' doctrine applies with equal force to Internet pages as it does to printed material." *Knievel*, 393 F.3d at 1070. Moreover, on a motion to dismiss, "[the court] need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Plaintiff is therefore simply wrong that the Court cannot determine at this juncture whether Plaintiff "mischaracterize[d]" the Asapp webpages and that the webpages actually contradict the FAC's allegations. *See Agency v. Dfo Global Performance Commerce Ltd.*, 2021 U.S. Dist. LEXIS 190357, *25 (C.D. Cal. Aug. 4, 2021) (granting motion to dismiss a false advertisement claim because "allegations regarding falsity here appear to be directly contradicted by the announcement itself," noting that the court "is not required to 'accept as true allegations contradicting documents that are referenced in the complaint.'" (quoting *Lazy Y Ranch Ltd.*, 546 F.3d at 588).

Based on judicially-noticeable contrary facts, the Court should not assume the truth of Plaintiff's allegations that Asapp independently uses its analysis of Charter's webchats to improve its AI language model for all of Asapp's clients (D.E. No. 24 at 10–11). Asapp's webpages instead outline a three-phased process that confirm Asapp is only capable of using data from Charter's webchats for Charter's specific purposes (*see* Lua-Valencia Decl., Exs. A–B), and the FAC does not offer facts that suggest this Court may determine otherwise.

**D. <u>The FAC Does Not Sufficiently Plead Scienter.</u>**

Plaintiff's opposition makes no serious effort at explaining how the FAC's allegations regarding Charter's scienter are anything more than mere conclusory

allegations. On this point Plaintiff cites *Clark v. State Farm Mut. Auto. Ins. Co.,* 231 F.R.D. 405, 406 (C.D. Cal. 2005), which is inapposite here, as that case had nothing to do with pleading standards for scienter under a state statute (let alone CIPA). *Id.* *Clark* concerned only whether a prayer for punitive damages in federal court can rely "on unsupported and conclusory averments of malice or fraudulent intent." *Id.*

Federal courts that have ruled on the adequacy of allegations of scienter for aiding-and-abetting claims under Section 631(a) routinely look to the common-law definition of aiding and abetting, which provides that a defendant may be held liable as an aider and abettor if it: (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act; or (b) gives substantial assistance to the other in accomplishing a tortious result and the defendant's own conduct, separately considered, constitutes a breach of duty to the third person. *Esparza v. UAG Escondido A1 Inc.,* 2024 U.S. Dist. LEXIS 24429, *15–16 (S.D. Cal. Feb. 12, 2024); *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1123 (S.D. Cal. 2024); *Valenzuela v. Kroger Co.,* 2024 U.S. Dist. LEXIS 56985, at *10 (C.D. Cal. Mar. 28, 2024). As explained in Charter's Opening Brief, the FAC fails to meet these pleading standards.

### E. <u>The FAC Does Not Sufficiently Plead CIPA's "In Transit" Requirement.</u>

The FAC's allegations concerning the communications' interception "in transit" are no better than allegations other courts have considered in cases that have been dismissed. On this point, Plaintiff argues that *Vizio* and *Heiting*, which the Motion cites, failed to state when the interception occurred. He notes the following three allegations in the FAC as purportedly pleading more than what was pled in *Vizio* and *Heiting*:

- chat transmissions are collected simultaneously in real time with the sending of the message (FAC at ¶ 9);
- chat transmissions are routed automatically to Asapp (FAC at ¶ 10); and

- Defendant routed chat inputs instantaneously to Asapp (FAC at ¶ 34).

These are precisely the sorts of allegations, however, that the courts determined were inadequate in *Vizio* and *Heiting* to plausibly allege interception "in transit." *See Vizio*, 238 F. Supp. 3d at 1228 ("Vizio intercepted their electronic communications '***during transmission***'" and "data collection occurs '***in real time***.'") (emphasis added); *Heiting*, 2024 U.S. Dist. LEXIS 133617, at *12 (the defendant's website "'provides a pathway for the chats to be recorded, using code ... which intercepts' customer inquiries, and 'intercepts data from chats ***in real time***, at ***the moment a chat begins***.'") (emphasis added). And Plaintiff's allegation that chats are "simultaneously" collected are no better. *See Rodriguez v. Google LLC*, 2022 U.S. Dist. LEXIS 13476, *7 (N.D. Cal. Jan. 25, 2022) (dismissing CIPA claim for inadequately pled "in transit" requirement even though "Plaintiffs have reverted to averring Google ***simultaneously*** intercepts their data in transit.") (emphasis added).

## II. <u>The FAC Should Be Dismissed Without Leave to Amend.</u>

Plaintiff's Opposition does not explain how his CIPA claim can be salvaged by further amendment. Plaintiff has not explained what expectation of privacy supports his claim, Asapp's judicially-noticeable webpages contradict his key allegations, and he cannot explain what amendments would cure pleading defects on key elements—including scienter and that interception was "in transit"—of his CIPA claim. Charter therefore respectfully requests dismissal without further leave to amend.

DATED: July 3, 2025

**THOMPSON COBURN LLP**

By: */s/ Jose L. Lua-Valencia*

**LUKAS SOSNICKI**
**JOSE L. LUA-VALENCIA**
Attorneys for Defendant CHARTER COMMUNICATIONS, INC.

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Charter Communications, Inc. certifies that this brief contains 4,200 words, which complies with Judge Staton's word limit for reply briefs.

DATED: July 3, 2025

**THOMPSON COBURN LLP**

By: */s/ Jose L. Lua-Valencia*

**LUKAS SOSNICKI**
**JOSE L. LUA-VALENCIA**
Attorneys for Defendant CHARTER COMMUNICATIONS, INC.

# PROOF OF SERVICE

**Miguel Esparza v. Charter Communications, Inc.**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 10100 Santa Monica Boulevard, Suite 500, Los Angeles, California 90067.

On July 3, 2025, I served true copies of the following document(s) described as **CHARTER COMMUNICATIONS, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** on the interested parties in this action as follows:

| | |
|---|---|
| Todd M. Friedman<br>Adrian R. Bacon<br>Matthew R. Snyder<br>Law Offices of Todd M. Friedman, P.C.<br>21031 Ventura Blvd., Suite 340<br>Woodland Hills, California 91364<br>Tel: (323) 306-4234<br>tfriedman@toddflaw.com<br>abacon@toddflaw.com<br>msnyder@toddflaw.com | Attorneys for Plaintiff<br>MIGUEL ESPARZA |

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 3, 2025, at Los Angeles, California.

*/s/ Catherine C. Mamayson*
Catherine C. Mamayson