**THOMPSON COBURN LLP**
**LUKAS SOSNICKI (SBN 295895)**
lsosnicki@thompsoncoburn.com
**JOSE L. LUA-VALENCIA (SBN 324087)**
jlua-valencia@thompsoncoburn.com
**10100 Santa Monica Boulevard, Suite 500**
**Los Angeles, California 90067**
**Tel: 310.282.2500 / Fax: 310.282.2501**

Attorneys for Defendant CHARTER
COMMUNICATIONS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MIGUEL ESPARZA,<br><br>    Plaintiff,<br><br>    v.<br><br>CHARTER COMMUNICATIONS,<br>INC, a Delaware corporation d/b/a<br>SPECTRUM.COM,<br><br>    Defendant. | Case No. 2:25-cv-02438-JLS-PVC<br><br>**CHARTER COMMUNICATIONS,<br>INC.'S NOTICE OF MOTION AND<br>MOTION TO DISMISS<br>PLAINTIFF'S SECOND AMENDED<br>COMPLAINT; MEMORANDUM<br>OF POINTS AND AUTHORITIES**<br><br>*[Filed concurrently with Proposed<br>Order]*<br><br>Hearing: October 31, 2025<br>Time: 10:30 a.m.<br>Judge: Hon. Josephine L. Staton<br>Courtroom: 8A<br><br>Complaint Filed: February 13, 2025<br><br>Notice of Removal Filed: March 19,<br>2025 |

34099294

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that on October 31, 2025, or as soon thereafter as counsel may be heard, in Courtroom 8A, 8th Floor, of the above-entitled Court, located at 350 West 1st Street, Los Angeles, California 90012, the Honorable Josephine L. Staton presiding, Defendant Charter Communications, Inc. ("Charter"), will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing the Second Amended Complaint in its entirety with prejudice and for other and further relief as the Court deems just and proper, on the ground that the Second Amended Complaint fails to state a claim upon which relief can be granted.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all pleadings and files in this matter, and any further submissions or argument of counsel that may be filed with or presented to the Court at or before the hearing on this Motion.

<u>**Statement of Rule 7-3 Compliance**</u>

This Motion is made following the conferences of counsel pursuant to Local Rule 7-3, which began on August 29, 2025. The parties thoroughly discussed the substance and a potential resolution of the filed motion by written correspondence.

DATED:  September 4, 2025          **THOMPSON COBURN LLP**


By:  _____*/s/ Jose L. Lua-Valencia*_____
**LUKAS SOSNICKI**
**JOSE L. LUA-VALENCIA**
Attorneys for Defendant CHARTER
COMMUNICATIONS, INC.

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ........................................................................................... 1

II.   THE SECOND AMENDED COMPLAINT'S ALLEGATIONS ................... 1

III.  LEGAL STANDARD ................................................................................... 3

IV.   ARGUMENT ................................................................................................ 4

    A.    The SAC Fails to State an Aiding-and-Abetting Claim Under Section 631(a). ........................................................................................ 4

        1.    Plaintiff Lacks Statutory Standing to Bring a CIPA Claim Because He Fails to Allege Any Cognizable Injury Resulting from a CIPA Violation. ................................................... 5

            a.    Statutory Standing Under CIPA Requires Both a Privacy Violation and a Resulting Cognizable Injury. ....................................................................... 5

            b.    Plaintiff Fails to Allege That He Had a Plausible Expectation of Privacy for a Viable CIPA Claim. ............. 8

            c.    Plaintiff Fails to Allege a Separate, Cognizable Injury Resulting from the Alleged CIPA Violation. ........ 10

            d.    Plaintiff Cannot Plausibly Incur a Cognizable Privacy Injury as a Privacy-Violation "Tester." .............. 12

        2.    Plaintiff Fails to Plead That Charter Aided and Abetted Asapp's Alleged Violation of the First Clause of Section 631(a) Because That Clause Does Not Apply to Internet Communications. ...................................................................... 13

        3.    Plaintiff Fails to Plead That Charter Aided and Abetted Asapp's Violation of the Second Clause of Section 631(a). ...... 14

            a.    Plaintiff Fails to Plead that Charter Knowingly or Willfully Aided and Abetted Asapp's Purported Violation of Section 631(a)'s Second Clause. ................. 18

            b.    Plaintiff Failed to Adequately Plead an "In Transit" Interception of His Webchat Communications. .............. 18

        4.    Plaintiff Fails to Plead That Charter Aided and Abetted Asapp's Alleged Violation of the Third Clause of Section 631(a) Because Plaintiff Lacks a Viable Predicate Violation of the First or Second Clause. .................................... 20

    B.    The SAC Should Be Dismissed With Prejudice. ................................ 20

V.    CONCLUSION ........................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ades v. Omni Hotels Mgmt. Corp.*,
   46 F. Supp. 3d 999 (C.D. Cal. 2014) .................................................................. 5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................... 3

*Barclift v. Keystone Credit Servs., LLC*,
   93 F.4th 136 (3d Cir. 2024) ............................................................................... 7

*Boorstein v. CBS Interactive, Inc.*,
   222 Cal. App. 4th 456 (2013) ......................................................................... 6, 7

*Boorstein v. Men's Journal, LLC*,
   2012 U.S. Dist. LEXIS 83101 (C.D. Cal. July 14, 2012) .................................... 7

*Brown v. Google LLC*,
   2021 U.S. Dist. LEXIS 244695 (N.D. Cal. Dec. 22, 2021) ................................ 12

*In re C.H.*,
   53 Cal. 4th 94 (2011) ........................................................................................ 6

*Campbell v. Facebook Inc.*,
   77 F. Supp. 3d 836 (N.D. Cal. 2014) ............................................................... 19

*Carrese v. Yes Online Inc.*,
   2016 U.S. Dist. LEXIS 187761 (C.D. Cal. Oct. 13, 2016) .................................. 8

*Carrico v. City & Cnty. of San Francisco*,
   656 F.3d 1002 (9th Cir. 2011) ......................................................................... 20

*Cook v. GameStop, Inc.*,
   2025 U.S. App. LEXIS 19955 (3d Cir. Aug. 7, 2025) .......................................... 7

*Cook v. GameStop, Inc.*,
   2025 WL 2250261 (3d Cir. Aug. 7, 2025) .......................................................... 9

*Dix v. Superior Court*,
   53 Cal. 3d 442 (1991) ........................................................................................ 6

-ii-
CHARTER'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Dumas v. Kipp*,
90 F.3d 386 (9th Cir. 1996) ...................................................................... 20

*In re Google Assistant Priv. Litig.*
457 F. Supp. 3d 797 (N.D. Cal. 2020) ...................................................... 20

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......................................... 9, 15, 16

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ..................................................... 13

*Gutierrez v. Converse Inc.*,
2025 U.S. App. LEXIS 16844 (9th Cir. July 9, 2025) ............................... 14

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368, at *7–8 (N.D. Cal. Aug. 29, 2025) ............................ 12

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ...................................................... 9

*Heiting v. Taro Pharms. United States, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ............................................... 13, 19

*Holmes v. Elephant Ins. Co.*,
2023 U.S. Dist. LEXIS 110161 (E.D. Va. June 26, 2023) ......................... 10

*Hubbard v. Google LLC*,
2024 U.S. Dist. LEXIS 117876 (N.D. Cal. July 1, 2024) ........................... 9

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) .................................................... 10

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ...................................................... 18

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) (*see* SAC at ¶ 76) ............... 14

*King v. Conde Nast Publications*,
2012 U.S. Dist. LEXIS 109120 (C.D. Cal. Aug. 3, 2012), aff'd 554
Fed. Appx. 545 (9th Cir. 2014) ................................................................... 7

*Klein v. Facebook, Inc.*,
580 F. Supp. 3d 743 (N.D. Cal. 2022) ...................................................... 12

*Licea v. Am. Eagle Outfitters, Inc.*,
   659 F. Supp. 3d 1072 (C.D. Cal. 2023) ........................................................ 13, 19

*Licea v. Cinmar*,
   659 F. Supp. 3d at 1109–10 .......................................................................... 18

*Licea v. Cinmar, LLC*,
   659 F. Supp. 3d 1096 (C.D. Cal. 2023) ....................................................... 13

*Licea v. Old Navy, LLC*,
   669 F. Supp. 3d 941 (C.D. Cal. 2023) ......................................................... 14

*Licea v. Vitacost.com*,
   683 F. Supp. 3d 1118 (S.D. Cal. 2023) ........................................................ 15

*Lieberman v. KCOP Television, Inc.*,
   110 Cal. App. 4th 156 (2003) ........................................................................ 8

*Lloyd v. Facebook, Inc.*,
   2024 U.S. App. LEXIS 16527 (9th Cir. July 8, 2024) ................................... 8

*Mastel v. Miniclip SA*,
   549 F. Supp. 3d 1129 (E.D. Cal. 2021) ......................................................... 4

*Miller v. Hearst Communications, Inc.*,
   2012 U.S. Dist. LEXIS 109121 (C.D. Cal. Aug. 3, 2012), aff'd 554
   Fed. Appx. 657 (9th Cir. 2014) .................................................................... 7

*Mintz v. Subaru of Am., Inc.*,
   716 F. App'x 618 (9th Cir. 2017) ................................................................. 3

*People v. Avery*,
   27 Cal. 4th 49 (2002) ..................................................................................... 4

*Popa v. Microsoft Corp.*,
   2025 U.S. App. LEXIS 21946 (9th Cir. Aug. 26, 2025) .............................. 7, 11

*Rodriguez v. Autotrader.Com, Inc.*,
   2025 U.S. Dist. LEXIS 47308 (C.D. Cal. March 14, 2025) .......................... 12

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) ......................................................................... 3

*Surrey v. TrueBeginnings, LLC*,
  168 Cal. App. 4th 414 (2008), overruled on other grounds by *White v. Square, Inc.*, 7 Cal. 5th 1019 (2019) ................................................... 5

*Swarts v. Home Depot, Inc.*,
  689 F. Supp. 3d 732 (N.D. Cal. 2023)........................................... 4, 13

*Tate v. VITAS Healthcare Corp.*,
  762 F. Supp. 3d 949 (E.D. Cal. 2025) ............................................... 15

*Tavernetti v. Super. Ct.*,
  22 Cal. 3d 187 (1978) ...................................................................... 4

*Thomas v. Papa Johns Int'l, Inc.*,
  2024 U.S. Dist. LEXIS 84019 (S.D. Cal. May 8, 2024) ....................... 9

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
  315 F. Supp. 3d 1147 (C.D. Cal. 2018) ............................................. 3

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ........................................................................ 7

*United States v. Forrester*,
  512 F.3d 500 (9th Cir. 2008) ........................................................... 9

*Valenzuela v. Keurig Green Mountain, Inc.*,
  674 F. Supp. 3d 751 (N.D. Cal. 2023)............................................. 19

*Valenzuela v. Nationwide*,
  686 F. Supp. 3d 969 (C.D. Cal. 2023).............................................. 19

*Wadsworth v. Kross, Lieberman & Stone, Inc.*,
  12 F.4th 665 (7th Cir. 2021) ........................................................... 10

*Warden v. Kahn*,
  99 Cal. App. 3d 805 (1979) ............................................................. 4

*Wilkinson v. Olympia Dev. of Mich. LLC*,
  2022 U.S. Dist. LEXIS 180669 (E.D. Mich. Oct. 3, 2022).................. 11

*Williams v. What If Holdings, LLC*,
  2022 U.S. Dist. LEXIS 230732 (N.D. Cal. Dec. 22, 2022) ........... 14, 16

*Yoon v. Lululemon United States*,
  549 F. Supp. 3d 1073 (C.D. Cal. 2021)........................................... 6, 9

**Statutes & Rules**

Cal. Civ. Code §§ 1798.140(ah)(1) ............................................................... 16

Cal. Pen. Code § 631(a) ............................................................... *passim*

Cal. Penal Code § 637.2 ............................................................... 5

Cal. Rules of Court, Rule 7-3 ............................................................... 2

California Consumer Privacy Act ............................................................... 9

California Invasion of Privacy Act ............................................................... *passim*

Federal Rule of Civil Procedure 12(b)(6) ............................................................... 2, 3

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Charter Communications, Inc. ("Charter") respectfully submits this Memorandum of Points and Authorities in Support of Charter's Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC").

## I.    INTRODUCTION

Plaintiff Miguel Esparza's ("Plaintiff") SAC is his third attempt to state a viable wiretapping claim against Charter under the California Invasion of Privacy Act ("CIPA").  As before, Plaintiff alleges Charter aided-and-abetted a CIPA violation by hiring a third party, Asapp, to assist Charter with communicating with its customers (or prospective customers) through Charter's chatbox on Spectrum.com.  And as before, the SAC remains deficient as a matter of law.

While Plaintiff's revisions to the SAC focus on this Court's Order dismissing the prior complaint—and specifically on whether Asapp acts as a third party or whether it *is* a party, as Charter's agent, to the communication—the SAC still fails to clear the initial hurdle of statutory standing.  The SAC also fails to distinguish Plaintiff's allegations from what this Court expressly explained would *not* be a CIPA violation:  Charter hiring, as its agent, a third party to communicate with its customers through the chatbox feature.  And, as with Plaintiff's prior two complaints, the SAC fails to sufficiently allege Charter's knowledge or intent to aid and abet Asapp's alleged CIPA violations and fails to identify any interception in transit.

As this is now Plaintiff's third attempt to plead a viable claim, and Plaintiff has now demonstrated he cannot do so, Charter respectfully requests that the Court dismiss Plaintiff's SAC without further leave to amend.

## II.    THE SECOND AMENDED COMPLAINT'S ALLEGATIONS

Charter sells phone, TV, and internet access solutions via its website, Spectrum.com.  *See* SAC at ¶ 4.  Plaintiff alleges that Charter pays a third-party vendor, Asapp, to embed its "chat technology code" into the chat feature (the "ASAPPMessaging platform") on Spectrum.com.  *Id.* at ¶¶ 9–11.  According to

Plaintiff, whenever a visitor on the site "chats" through the feature, "the chat is routed through Asapp's servers so they may simultaneously collect a transcript … along with other user data, in real time and save it for later access." *Id.* Plaintiff further alleges that webchats on Charter's Spectrum.com website are routed with the users' "Personal Identifying Information" ("PII") and "tracking identifiers." *Id.* at ¶¶ 15–17.

Notably, Plaintiff has apparently abandoned his theory that Asapp analyzes Charter's webchat data for Asapp's own purposes. Instead, in his SAC, Plaintiff apparently concedes that Asapp is collecting and analyzing Charter's webchat data *for Charter's business purposes* and that Asapp has no stated capability of or even interest in engaging with the data for its own ends. SAC at ¶ 26 ("Certainly, Asapp provides 'suggestions at every step of the conversation to resolve customer issues faster,' and *enables Defendant's* own customer service agents to handle a larger volume of work by effectively outsourcing a host of customer service tasks to Asapp and its ASAPPMessaging platform…"), ¶ 27 ("The ASAPPMessaging platform provides 'live customer conversation analysis,' and compiles substantial data on customer conversations *for Defendant*…"), ¶ 28 ("The ASAPPMessaging platform *allows Defendant* to 'increase [its] capacity without adding staff…'"), ¶ 38 ("Asapp also aggregates substantial amounts of data drawn from the chat feature *for Defendant's* review…"), ¶ 39 ("Finally, Asapp records transcripts of each chat conversation in Defendant's chat feature for future review and reading *by Defendant and/or its agents*…") (emphasis added).

Presumably in response to the Court's direction at the hearing on Charter's prior motion to dismiss, the SAC now includes numerous new allegations contending that Asapp (1) hosts the webchat feature on its own servers and (2) collects the webchat data, including transcripts, on Asapp's servers as well. *Id.* at ¶¶ 13–52.

As to the specific basis for Plaintiff's claim, the SAC alleges that on or around August 21, 2024, Plaintiff used the chat feature. Like the two complaints before it, the SAC does not identify any specific "PII" that Asapp's software collected from

Plaintiff (*id.*) nor explain in any way why that information was private. Plaintiff only claims he used Spectrum.com's webchat feature to ask about "TV options for deaf people." *Id.* at ¶ 55.

Other than alleging that Asapp intercepts webchats "in real time" and routes "every input...instantaneously" (*id.* at ¶¶ 56, 78), Plaintiff does not provide specific details about exactly when Asapp intercepts, saves, and analyzes webchat data. *Id.* at ¶¶ 13–52. On this point, Plaintiff instead includes screenshots of page-source code purportedly related to the webchat feature at issue; the code, however, does not appear to provide any information concerning the timing of the interception. *Id.* at ¶¶ 15–16.

Based on Asapp's alleged involvement in Plaintiff's webchat on Spectrum.com, Plaintiff alleges Asapp violated CIPA's Section 631(a). Adding to the allegations of his prior two complaints, Plaintiff now alleges violations of each of the first three clauses Section 631(a). Plaintiff's single cause action against Charter, however, remains a claim for aiding-and-abetting Asapp's alleged CIPA violations. SAC at ¶ 75.

## III.   **LEGAL STANDARD**

This Court should grant a Rule 12(b)(6) motion to dismiss if the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint fails to state a claim if it fails to state a cognizable legal theory or has not alleged sufficient facts to support a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). Well-pleaded factual allegations are assumed to be true, but courts need not credit conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *Mintz v. Subaru of Am., Inc.*, 716 F. App'x 618, 621 (9th Cir. 2017). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Neither are allegations that "merely tracks the language of the statutes itself, without providing facts to substantiate the claimed legal conclusions." *Ticketmaster L.L.C. v. Prestige*

1  *Ent. W., Inc.,* 315 F. Supp. 3d 1147, 1175 (C.D. Cal. 2018).

2  Furthermore, the Court must construe any ambiguity in application of CIPA in

3  favor of defendants.  *People v. Avery*, 27 Cal. 4th 49, 58 (2002) ("ambiguous penal

4  statutes are construed in favor of defendants . . . [if] two reasonable interpretations of

5  the same provision stand in relative equipoise"); *see Warden v. Kahn*, 99 Cal. App.

6  3d 805, 814, 818, n.3 (1979) (as a penal statute, ambiguity in Section 631 should be

7  interpreted narrowly).

## IV.   ARGUMENT

### A.   The SAC Fails to State an Aiding-and-Abetting Claim Under Section 631(a).

11  CIPA's Section 631(a) protects against three types of harms and against aiding

12  and abetting conduct that results in those harms.  *Tavernetti v. Super. Ct.*, 22 Cal. 3d

13  187, 191–192 (1978); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal.

14  2021).  Section 631(a) thus imposes liability under the following four clauses:

> (1) …intentionally tap[ping]…any telegraph or telephone wire, line, cable, or instrument';
>
> (2) …'willfully and without consent of all parties to the communication…read[ing], or attempt[ing] to read, or to learn the contents or meaning of any message… or communication while the same is in transit';
>
> (3) …'us[ing], or attempt[ing] to use…or to communicate in any way, any information so obtained'; and
>
> (4) …'aid[ing], agree[ing] with, employ[ing], or conspir[ing] with any person … to unlawfully do, or permit, or cause to be done any of the acts … mentioned above.'

25  *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 743 (N.D. Cal. 2023) (quoting

26  statute).

27  Plaintiff alleges Charter is liable under the fourth clause "because [Charter]

28  'aids, agrees with, employs, or conspires with'" Asapp to enable Asapp's violations

of the first three clauses.  SAC at ¶ 75.  All three of Asapp's alleged violations are based on Asapp's alleged role during webchats as "a shadowly [sic] stranger sitting in the corner of the room hired by [Charter] to secretly hold an interactive tape recorder and interact with [Charter's] customers."  *Id.* at ¶¶ 22, 57–59.

This claim cannot survive dismissal for the reasons set forth below.

### 1. Plaintiff Lacks Statutory Standing to Bring a CIPA Claim Because He Fails to Allege Any Cognizable Injury Resulting from a CIPA Violation.

Like the two complaints before it, Plaintiff's SAC cannot survive dismissal because Plaintiff failed to adequately plead any cognizable injury to support his statutory standing to bring a CIPA claim.

CIPA's plain language requires private plaintiffs to allege both: (1) a ***violation*** of CIPA, ***and*** (2) an ***injury*** resulting from the purported CIPA violation for a viable claim.  Cal. Penal Code § 637.2 ("Any person ***who has been injured*** by a violation of this chapter [*i.e.*, CIPA] may bring an action against the person who committed the violation[.]") (emphasis added).  Here, the SAC pleads no cognizable injury resulting from any alleged statutory violation.

### a. Statutory Standing Under CIPA Requires Both a Privacy Violation and a Resulting Cognizable Injury.

California's longstanding canons of statutory interpretation, along with recent Circuit-level decisions, confirm that a plaintiff alleging a CIPA claim must show an injury that is separate and distinct from the alleged CIPA violation.  By its plain terms, CIPA requires an alleged "injury" stemming from the alleged violation of the statute.  California statutory construction prerequisites for statutory standing are determined from the statutory language as well as the underlying legislative intent and the purpose of the statute.  *Surrey v. TrueBeginnings, LLC*, 168 Cal. App. 4th 414, 417–18 (2008), overruled on other grounds by *White v. Square, Inc.*, 7 Cal. 5th 1019 (2019).  "When construing    a    state    statute,    federal    courts    apply state    law of statutory

1    construction." *Ades v. Omni Hotels Mgmt. Corp.*, 46 F. Supp. 3d 999, 1005 (C.D.

2    Cal. 2014) (citing *Bass v. County of Butte*, 458 F.3d 978, 981 (9th Cir. 2006)).    The

3    Court must therefore give effect to both the word "injury" and "violation" in CIPA—

4    terms separately referenced in the same sentence.    Otherwise, the word "injury" would

5    be rendered impermissibly superfluous.    *See Dix v. Superior Court*, 53 Cal. 3d 442,

6    459 (1991) ("[A]void statutory constructions that render particular provisions

7    superfluous or unnecessary."); *In re C.H.*, 53 Cal. 4th 94, 107 (2011) ("When the

8    Legislature uses different words or phrasing in contemporaneously enacted statutory

9    provisions, a strong inference arises that a different meaning was intended.").

10        Giving effect to the word "injury" under CIPA—and with a definition that is

11    different from a mere CIPA violation—would be consistent with this Court's prior

12    interpretation of CIPA in *Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073,

13    1085 (C.D. Cal. 2021).    There, the court dismissed CIPA claims against Lululemon's

14    vendor, Quantum Metric, whose software Lululemon used to capture website visit

15    data, because the plaintiff failed to allege any injury stemming from Quantum

16    Metric's purported CIPA violation.    *Id.*    The court reasoned that "CIPA is far more

17    straightforward than the analogous language of the Wiretap Act: only a person 'who

18    has been ***injured*** by a violation of this chapter' may assert a civil claim") (quoting

19    CIPA § 637.2) (emphasis added).

20        Giving effect to CIPA's use of the word "injury" would also be consistent with

21    how courts have applied statutory-interpretation tenets to similar privacy-based

22    California statutes, holding that a plaintiff must plead ***both*** a "violation" ***and*** an

23    "injury" to allege a viable private claim.    *See, e.g., Boorstein v. CBS Interactive, Inc.*,

24    222 Cal. App. 4th 456, 460 (2013).    In *Boorstein*, the plaintiff filed an action under

25    California's shine the light law ("STL"), a statute that requires disclosures by

26    businesses sharing customer information with third parties.    *Id.*    As with CIPA, the

27    STL provides that a claimant "***injured*** by a ***violation*** of [the STL] may institute a civil

28    action to recover damages."    *Id.* at 466 (quoting STL statute) (emphasis added).    The

California Court of Appeal held that the plaintiff lacked statutory standing under the STL because he failed to allege an injury separate from the violation. *Id.  See also Boorstein v. Men's Journal, LLC*, 2012 U.S. Dist. LEXIS 83101, at \*10–13 (C.D. Cal. July 14, 2012) (same); *Miller v. Hearst Communications, Inc.*, 2012 U.S. Dist. LEXIS 109121, at \*12–13 (C.D. Cal. Aug. 3, 2012), aff'd 554 Fed. Appx. 657 (9th Cir. 2014) (same); *King v. Conde Nast Publications*, 2012 U.S. Dist. LEXIS 109120, at \*5–6 (C.D. Cal. Aug. 3, 2012), aff'd 554 Fed. Appx. 545 (9th Cir. 2014).

Furthermore, recent Circuit-level decisions have confirmed that privacy statutes cannot create a privacy injury, and therefore that pleading a bare statutory violation cannot suffice to state a claim where separate injury is required. *See Cook v. GameStop, Inc.*, 2025 U.S. App. LEXIS 19955, at \*1 (3d Cir. Aug. 7, 2025); *Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136 (3d Cir. 2024); *Popa v. Microsoft Corp.*, 2025 U.S. App. LEXIS 21946, \*16 (9th Cir. Aug. 26, 2025).  In his prior complaints and briefing in opposition to Charter's prior motions to dismiss, Plaintiff argued that CIPA codified a reasonable expectation of privacy over internet communications and, accordingly, that Plaintiff does not need to separately allege a cognizable injury stemming from an alleged CIPA violation to have standing to sue. But under *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), courts must determine whether the plaintiff also alleged that the privacy-statute violation resulted in a harm that "has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Cook*, 2025 U.S. App. LEXIS 19955, at \*7; *Barclift, LLC*, 93 F.4th at 143; *Popa*, 2025 U.S. App. LEXIS 21946, at \*12–14.  As recent Third and Ninth Circuit opinions demonstrate, a statute cannot "elevate" privacy harms that are not considered privacy harms as such in the real world. *See Cook*, 2025 U.S. App. LEXIS 19955, \*14 ("A legislature may 'elevate harms that exist in the real world' to make them legally actionable…But it 'may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is.'") (quoting *TransUnion*); *Popa*, 2025 U.S.

1   App. LEXIS 21946, at *12 (stating the same).  If the public has no expectation of

2   privacy in internet communications in the real world, no real-world injury can result

3   from only interception of internet communications.

4        As explained below, because there is no reasonable expectation of privacy over

5   internet communications, and Plaintiff has made no effort to allege a reasonable

6   expectation of privacy over the specific webchats at issue, he has not pleaded the

7   injury required to state a viable CIPA claim.

8        b.    **Plaintiff Fails to Allege That He Had a Plausible**

9             **Expectation of Privacy for a Viable CIPA Claim.**

10       Under California's statutory canons and recent Circuit-level opinions, to

11  survive Charter's 12(b)(6) motion, Plaintiff must have pleaded a CIPA violation ***as***

12  ***well as a concrete privacy injury*** resulting from harm to a protectable privacy interest.

13  *See, e.g.*, *Lieberman v. KCOP Television, Inc.,* 110 Cal. App. 4th 156, 166–68 (2003)

14  (a viable CIPA claim requires injury "caused" by the violation, and a violation only

15  occurs where the claimant has a "reasonable expectation of privacy" over the at-issue

16  information); *Carrese v. Yes Online Inc*., 2016 U.S. Dist. LEXIS 187761, at *10–11

17  (C.D. Cal. Oct. 13, 2016) (assessing statutory standing and holding that "[t]o state a

18  claim under CIPA, 'a party to the communication' must have the reasonable

19  expectation of confidentiality") (citing *Frio v. Sup. Ct.*, 203 Cal. App. 3d 1480, 1488

20  (1988)).   Here, Plaintiff has not even attempted to explain what reasonable

21  expectation of privacy Asapp violated by allegedly capturing his chat on

22  Spectrum.com.  All Plaintiff alleges on the point is the following: he visited a public

23  commercial website; shared "personal data"; and he briefly inquired over webchat

24  "about TV options for deaf people."  SAC at ¶¶ 53–54.  The SAC does not bother to

25  explain why this information is personal or private.

26       As a general matter, website visitors like Plaintiff have no reasonable,

27  overarching expectation of privacy in all their online activity.  *See, e.g.*, *Lloyd v.*

28  *Facebook, Inc.,* 2024 U.S. App. LEXIS 16527, at *5 (9th Cir. July 8, 2024) (plaintiff

"did not have a reasonable expectation of privacy" where "data policy g[ave] clear notice that third party partners may share data"); *Hubbard v. Google LLC,* 2024 U.S. Dist. LEXIS 117876, at \*22 (N.D. Cal. July 1, 2024) ("internet browsing involves the collection of users' data, including by tracking users across the internet, ***and a reasonable user should expect as much***.") (emphasis in original) (collecting cases); *Thomas v. Papa Johns Int'l, Inc.,* 2024 U.S. Dist. LEXIS 84019, at \*3–4 (S.D. Cal. May 8, 2024) ("[T]he internet is not a place where users have a reasonable expectation of privacy.") (collecting cases); *see also United States v. Forrester,* 512 F.3d 500, 509–10 (9th Cir. 2008) ("Internet users have no expectation of privacy in…the IP addresses of the websites they visit."); *Heeger v. Facebook, Inc.,* 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020) (similar); *Cook v. GameStop, Inc.*, 2025 WL 2250261, at \*5 (3d Cir. Aug. 7, 2025) ("Most of us understand that what we do on the Internet is not completely private.") (quoting *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 266 (3d Cir. 2016)).  Moreover, not all data that commercial websites may collect—even personally identifiable information—is CIPA-protected.  *See, e.g., Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (Section 631(a) does not protect "routine identifiers, ***whether automatically generated or not***.") (emphasis added); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (Section 631(a) does not apply to "record information" generated in the course of a communication, such as a customer's name, address, subscriber number, or identity.).  Indeed, the most on-point law—the California Consumer Privacy Act ("CCPA")—***presumes*** that website operators and vendors they hire may collect user information for certain purposes, including to perform analytics and support marketing.  The CCPA, which dictates the circumstances under which website operators may lawfully collect and share website visitor data, expressly states that website operators may lawfully collect and share website visitor data if the website operators provide consumers with disclosures and an opt-out right as to

certain sharing.  *See* Cal. Civ. Code. §§ 1798.120; 1798.135; 1798.99.80(c).[1]  In sum, the mere fact of visiting a website, and engaging in a webchat on the website, does not by itself implicate a privacy interest that could leave to any privacy injury.  And because Plaintiff has provided no other basis for this Court to conclude that he had a reasonable expectation of privacy over his alleged webchats, he has not identified any cognizable injury to support his CIPA claim.

### c.    <u>Plaintiff Fails to Allege a Separate, Cognizable Injury Resulting from the Alleged CIPA Violation.</u>

The SAC fails to plead statutory standing for another simple reason: Plaintiff's only alleged injuries are that he "felt upset, disturbed, and/or violated" (SAC at ¶ 63), and that he "provided valuable data to [Charter] and [has] received no money in return" (SAC at ¶ 66).  Neither the allegations of emotional harms nor the allegations of loss of "valuable data" sufficiently plead cognizable injuries.

Numerous courts have held that emotional harms of the sort plead in the SAC are not cognizable injuries for standing.  *See, e.g.*, *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1052 (N.D. Cal. 2022) (claims of stress in data breach case did not constitute an injury for standing); *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 667–69 (7th Cir. 2021) (recent decisions assessing statutory standing "makes clear, anxiety and embarrassment are not injuries in fact"); *Holmes v. Elephant Ins. Co.*,

---

[1] Recognizing that recent CIPA cases alleging wiretapping of online communications are stretching internet privacy rights to absurd results, the California Senate has made a concerted effort to bring CIPA litigation in line with the CCPA by unanimously passing Senate Bill 690 ("SB 690"), which seeks "to protect businesses from vexatious litigation" under CIPA targeting online advertising technologies already regulated by the CCPA.  *See* Analysis of SB 690, Sen. Comm. on Pub. Safety, 2025-2026 Reg. Sess. (Cal. Apr. 25, 2025).  This "represents a novel attempt to bypass the limitations of the CCPA by leveraging a law [*i.e.*, CIPA] designed for different circumstances, thus giving it a modern application in the digital age."  *Id.*  SB 690 would dispel any ambiguity that online businesses that comply with the CCPA's opt-out requirements cannot be liable under CIPA.  *Id.*

2023 U.S. Dist. LEXIS 110161, *13 (E.D. Va. June 26, 2023) ("Because the plaintiffs plead only 'bare assertion of emotional injury,' they have not pleaded an injury-in-fact."); *Wilkinson v. Olympia Dev. of Mich. LLC*, 2022 U.S. Dist. LEXIS 180669, at *7 (E.D. Mich. Oct. 3, 2022) ("[B]are allegations of 'stress, fear, anger, and frustration' do not amount to a concrete injury.").  As such, the SAC fails to establish a cognizable injury caused by the violation of his privacy interest.

Even where a plaintiff alleges offense as a result of an alleged violation of a privacy statute (what Plaintiff alleges here), courts only deem the offense a cognizable injury if the breach of information would be considered ***highly offensive*** at common law.  *See Popa v. Microsoft Corp.*, 2025 U.S. App. LEXIS 21946, *16 (9th Cir. Aug. 26, 2025) ("[Plaintiff] does not explain how the tracking of her interactions with the PSP website caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law."). In *Popa*, for example, the Ninth Circuit found no allegations of a cognizable injury emanating from alleged use of website tracking technology because the plaintiff "identifie[d] no ***embarrassing***, ***invasive***, or ***otherwise private*** information collected." *Id.* (emphasis added).  The court reasoned that "the monitoring of [the plaintiff's] interactions with PSP's website seems most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Id.*

Similarly, Plaintiff here has failed to identify any embarrassing or invasive information collected.  As in *Popa*, Asapp's alleged observation of his inquiry regarding services for the deaf is no different than someone observing a potential customer pose the same question to a customer service agent at a brick-and-mortar Spectrum store.[2]

---

[2] Charter understands the Ninth Circuit in *Popa* held that the Plaintiff lacked Article III to pursue his claims under Pennsylvania's Wiretapping and Electronic

In addition, Plaintiff's SAC now alleges economic injury based on loss of valuable data without compensation.  SAC at ¶ 66.  But the cases he cites in support for the proposition that his webchat is valuable—*Klein v. Facebook, Inc.,* 580 F. Supp. 3d 743, 803 (N.D. Cal. 2022) and *Brown v. Google LLC*, 2021 U.S. Dist. LEXIS 244695, at *52 (N.D. Cal. Dec. 22, 2021)—are both clear that a plaintiff cannot simply allege that the collected data is valuable; allegations must show why that data is valuable, including identifying the market for it.  Here, Plaintiff has failed to do so.

### d.    **Plaintiff Cannot Plausibly Incur a Cognizable Privacy Injury as a Privacy-Violation "Tester."**

The SAC also utterly fails to plausibly allege any cognizable injury resulting from harm to any reasonably expected privacy interest because, as a "tester" litigant, Plaintiff visited Spectrum.com and initiated a webchat precisely ***because*** he anticipated no privacy over such webchats.  *See Rodriguez v. Autotrader.Com, Inc.*, 2025 U.S. Dist. LEXIS 47308, *5–6 (C.D. Cal. March 14, 2025) (dismissing CIPA claim because "Plaintiff is a tester that seeks out invasions of privacy…Having expected an invasion of privacy, she cannot claim that she had a reasonable

---

Surveillance Control Act.  But it remains unclear if *Popa* is binding authority to determine whether a CIPA plaintiff has Article III standing to pursue a CIPA claim under different facts.  *See Popa*, 2025 U.S. App. LEXIS 21946, at *22–25.  The Ninth Circuit recognized that in *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2019), it had previously held that the *In re Facebook* CIPA plaintiff had Article III standing.  *Id.*  But the court ultimately declined to evaluate Article III standing under CIPA wholesale.  *See id.* (noting that the *In re Facebook* "decision[ ] still accounted for the individual circumstances giving rise to the plaintiffs' alleged injuries rather than simply greenlighting a per se rule for privacy statutes," and that *In re Facebook* "involved [a] different statute[ ] from the Pennsylvania statute…at issue in" *Popa*.); *see also Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *7–8 (N.D. Cal. Aug. 29, 2025).  Nevertheless, while Charter does not specifically argue lack of federal-court jurisdiction in this Motion, Charter recognizes, Charter recognizes this Court has discretion to remand this case *sua sponte* for lack of Article III standing.  *See Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1058 (9th Cir. 2023).

1  expectation to privacy, and therefore lacks an injury in fact sufficient to establish

2  standing.") (citing *Byars v. Sterling Jewelers, Inc.*, 2023 U.S. Dist. LEXIS 61276, at

3  *9–10 (C.D. Cal. Apr. 5, 2023) (dismissing privacy claims for lack of standing

4  because a tester plaintiff has no expectation of privacy and therefore cannot be

5  injured).  As "tester" plaintiffs have no reasonable expectation of privacy—and

6  cannot plausibly claim injury from the alleged invasion of a privacy interest they

7  never had—they lack statutory standing to bring CIPA claims.

8          **2.      Plaintiff Fails to Plead That Charter Aided and Abetted**

9                  **Asapp's Alleged Violation of the First Clause of Section 631(a)**

10                 **Because That Clause Does Not Apply to Internet**

11                 **Communications.**

12         Even if Plaintiff had sufficiently pleaded some injury to support his claim

13 (which he did not), the SAC would also fail on the elements of Plaintiff's CIPA claim.

14         Section 631(a)'s first clause prohibits "[a]ny person who by means of any

15 machine, instrument, or contrivance, or in any other manner, intentionally taps, or

16 makes any unauthorized connection … with any *telegraph* or *telephone* wire, line,

17 cable or instrument, including the wire, line, cable, or instrument of any internal

18 *telephonic communication system*."  Cal. Penal Code § 631(a) (emphasis added).

19 Accordingly, "[c]ourts have uniformly interpreted this clause as applying only to

20 communications transmitted over telephones and not those transmitted over the

21 internet." *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 743 (N.D. Cal. 2023)

22 (citing *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec.

23 22, 2022) (determining "the first clause of Section 631(a) concerns telephonic

24 wiretapping specifically and does not apply to the context of the internet"); *Greenley*

25 *v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1051 (S.D. Cal. 2023) (dismissing claim

26 under first clause based on "data collected from smartphone apps"); *see also Heiting*

27 *v. Taro Pharms. United States, Inc.*, 709 F. Supp. 3d 1007, 1014 (C.D. Cal. 2023)

28 (citing cases and finding plaintiff cannot state under § 631(a)'s first clause for alleged

interception of internet webchat communications); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1079 (C.D. Cal. 2023) ("Courts have consistently interpreted this clause as applying only to communications over telephones and not through the internet."); *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1104–05 (C.D. Cal. 2023) (finding the first clause applies only to communications over telephones and not through the internet); *Williams v. What If Holdings, LLC*,  2022 U.S. Dist. LEXIS 230732, at *6 (N.D. Cal. Dec. 22, 2022) (determining "the first clause of Section 631(a) concerns telephonic wiretapping specifically, which does not apply to the context of the internet").

In his SAC, Plaintiff misreads the Ninth Circuit's unpublished decision in *Javier v. Assurance IQ, LLC,* 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) (*see* SAC at ¶ 76) to argue that Section 631 in its entirety applies to internet.  But, as other courts have recognized, *Javier* only addressed Section 631(a)'s second clause. *Gutierrez v. Converse Inc.*, 2025 U.S. App. LEXIS 16844, at *8–9 (9th Cir. July 9, 2025) ("*Javier* is not precedential, as it is an unpublished disposition. And Javier only considered § 631(a)'s second clause, which prohibits nonconsensual reading of a communication in transit over a wire.").

### 3.  Plaintiff Fails to Plead That Charter Aided and Abetted Asapp's Violation of the Second Clause of Section 631(a).

The SAC also fails to plead that Asapp violated the second claims of section 631(a); specifically, Asapp cannot have violated the second clause of section 631(a) because it is subject to CIPA's "party exemption."

To adequately plead liability for aiding and abetting a recording in violation of Section 631(a), a "[p]laintiff must first adequately plead [the third party's] underlying violations of the statute," and to do so, "Plaintiff must provide facts suggesting that the third party recorded [the defendant's] customers' information for some use or potential future use ***beyond*** simply supplying this information back to [the defendant]."  *Licea v. Old Navy, LLC*, 669 F. Supp. 3d 941, 946–47 (C.D. Cal. 2023)

1   (emphasis added) (citing *Williams v. What If Holdings, LLC*, 2022 U.S. Dist. LEXIS

2   230732, \*10 (N.D. Cal. Dec. 22, 2022).  It is also well-settled under CIPA that a party

3   to a communication cannot be liable for eavesdropping on its own conversation; and

4   that this "party exemption" applies even when a party hires a vendor to use software

5   to transcribe and analyze webchats.  *See, e.g.*, *Licea v. Vitacost.com*, 683 F. Supp. 3d

6   1118, 1123–24 (S.D. Cal. 2023) (citing several decisions and agreeing "a website

7   owner that engages a vendor to record website-based communications for the website

8   owner's own purposes is not thereby aiding and abetting eavesdropping by a third

9   party in violation of Section 631(a)."); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823,

10  831 (N.D. Cal. 2021) ("a party to a communication can record it (and is not

11  eavesdropping when it does)").[3]

12      At the hearing on Charter's Motion to Dismiss the First Amended Complaint,

13  and in its Order granting that Motion, the Court questioned whether Asapp could be

14  considered a separate party from Charter or whether Asapp is more accurately

15  characterized as an agent of Charter—and therefore not a third party at all.  In

16  response, Plaintiff made no effort to plausibly allege in the SAC that Asapp was not

17  acting as Charter's agent—and not itself a party to the communication—in its

18  communications with customers through the webchat feature on Spectrum.com.

19  Instead, the SAC alleges the ASAPPMessaging platform is hosted on Asapp's own

20

21  [3] While Ninth Circuit authority is currently split as to certain requirements for

22  CIPA's "party exemption" to apply to third-party vendors, the split rests on a
    distinction without a difference for purposes of this case.  As explained in *Tate v.*

23  *VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 954 (E.D. Cal. 2025), the split

24  concerns whether the third-party vendor has a use or purpose of its own for the
    intercepted communications—specifically, "whether a third-party entity must

25  actually use the data it obtains for its own purposes or if it merely needs to have
    the ***capability*** to do so to act as a third party in violation of section 631(a)."

26  (emphasis in original).  Here, because the SAC does not sufficiently plead that

27  Asapp is a third party in the first place, the Court need not reach this analysis.

28

1   servers and that Charter's webchat data is routed directly to Asapp's servers for

2   storage as well.  SAC at ¶¶ 9–34.  But the SAC fails utterly to explain why the location

3   of the data is determinative or a third-party vendor would be a CIPA "eavesdropper"

4   just because it hosts the software and data at issue on its servers—especially when

5   other courts have expressly held that the location of the data is *not* relevant to the

6   analysis of whether a third party is subject to the "party exemption."  *See, e.g.*,

7   *Williams v. What If Holdings, LLC*, 2022 U.S. Dist. LEXIS 230732, at *7 (N.D. Cal.

8   Dec. 22, 2022) ("The complaint most pertinently alleges that What If deployed

9   ActiveProspect's TrustedForm recording software only on What If's websites and that

10  the recordings were stored and accessed on ActiveProspect's servers…These limited

11  allegations are not enough to show that ActiveProspect was a third-party eavesdropper

12  as contemplated by Section 631(a)."); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823,

13  832 (N.D. Cal. 2021) ("FullStory is a vendor that provides a software service that

14  captures its clients' data, hosts it on Fullstory's servers, and allows the clients to

15  analyze their data…It is not a third-party eavesdropper.").

16      Moreover, and once again, the CCPA—which is the California legal framework

17  that actually applies to collection of PII online—specifically permits website

18  operators (like Charter) to share information with vendors (like Asapp), ***who are not***

19  ***even considered "third parties" if they are contractually bound to limit the PII's***

20  ***use***.  *See* Cal. Civ. Code §§ 1798.140(ah)(1) ("'sharing' means sharing, renting,

21  releasing, disclosing, disseminating, making available, transferring, or otherwise

22  communicating orally, in writing, or by electronic or other means, a consumer's

23  personal information by the business to a ***third party*** for cross-context behavioral

24  ***advertising***") (emphasis added); 1798.140(ai)(2) ("'***Third party***' means a person who

25  is ***not*** … [a] service provider to the business") (emphasis added); 1798.140(ag)(1)

26  ("'***Service provider***' means a person that processes personal information on behalf of

27  a business and that receives from or on behalf of the business consumer's personal

28  information for a business purpose pursuant to a written contract, provided that the

1    contract prohibits the person from" sharing the information and retaining or disclosing

2    the information "for any purpose other than for the business purposes specified in the

3    contract…") (emphasis added).  In other words, if a website operator has a contractual

4    relationship with a vendor, and that vendor does not use the collected information for

5    its own purposes, it is not a "third party" for purposes of website-visitor privacy.

6         The same analysis should apply to Plaintiff's allegations of Asapp's role in

7    operating the chatbox on Spectrum.com.  To have adequately plead that Asapp is a

8    third-party "eavesdropper," the SAC must plead Asapp was a third party—and not

9    Charter's agent—in the first place.   If Plaintiff contends Asapp was acting as

10   something other than Charter's agent—by, for example, using the information for its

11   own purposes—the SAC must plead as much.  But here, the SAC pleads only that

12   Asapp's purpose of, and capabilities regarding, intercepting webchat communications

13   is **to fulfill Charter's business purposes**, not Asapp's.   *See, e.g.*, SAC at ¶ 26

14   ("Certainly, Asapp provides 'suggestions at every step of the conversation to resolve

15   customer issues faster,' and **enables Defendant's** own customer service agents to

16   handle a larger volume of work by effectively outsourcing a host of customer service

17   tasks to Asapp and its ASAPPMessaging platform…"), ¶ 27 ("The ASAPPMessaging

18   platform provides 'live customer conversation analysis,' and compiles substantial

19   data on customer conversations **for Defendant**…"), ¶ 28 ("The ASAPPMessaging

20   platform **allows Defendant** to 'increase [its] capacity without adding staff…'"), ¶ 38

21   ("Asapp also aggregates substantial amounts of data drawn from the chat feature **for**

22   **Defendant's** review…"), ¶ 39 ("Finally, Asapp records transcripts of each chat

23   conversation in Defendant's chat feature for future review and reading **by Defendant**

24   **and/or its agents**…") (emphasis added).   Accordingly, Asapp's alleged role as

25   Charter's agent that performs services for Charter falls squarely within CIPA's "party

26   exemption."

27

28

a.     **Plaintiff Fails to Plead that Charter Knowingly or Willfully Aided and Abetted Asapp's Purported Violation of Section 631(a)'s Second Clause.**

The SAC also fails to plausibly allege that Charter acted with the requisite knowledge or intent to aid and abet Asapp's purported eavesdropping violation.  The SAC contains only the following scienter allegations:

- "At all relevant times, [Charter] intentionally caused the internet communication between Plaintiff and [Charter's] Website to be intercepted during transmission and recorded." (SAC at ¶ 78); and

- "Plaintiff alleges, upon information and belief, that [Charter] knows Asapp is doing all of these things," *i.e.*, Asapp's webchat data collection and analysis for Charter's purposes. (*id.* at ¶ 52).

These threadbare allegations fail to support a plausible CIPA aiding-and-abetting claim.  Charter cannot plausibly know or intend to aid and abet a CIPA violation because Plaintiff has failed to allege that Charter knew or intended to aid and abet Asapp into actually using the webchat data (1) other than for the purposes for which it was hired; (2) for its own purposes; or (3) even with the capacity to somehow use Charter-specific webchat data for Assap's own purposes.  *See James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 954 (N.D. Cal. 2023) (dismissing aiding-and-abetting CIPA claim because "while it can reasonably be inferred that Disney knew Oracle would intercept for the benefit of Disney, it cannot reasonably be inferred that Disney knew Oracle would intercept for the benefit of a company other than Disney.").

b.     **Plaintiff Failed to Adequately Plead an "In Transit" Interception of His Webchat Communications.**

Plaintiff's aiding-and-abetting claims also fails because Plaintiff has not pleaded sufficient facts showing the communications were intercepted in transit. "The second clause of Section 631(a) requires that messages be intercepted while in transit." *Licea v. Cinmar*, 659 F. Supp. 3d at 1109–10.  Mere allegations that a

18

message was intercepted "in real time," however, are insufficient. *Id.* A plaintiff asserting a Section 631(a) claim "must provide more than conclusory allegations that messages were 'intercepted in real time.'" *Id.* Dismissal is warranted where a plaintiff fails to allege "sufficient facts as to how and when the third party receives the communications." *Id.*

Plaintiff fails to plausibly allege that his webchats were intercepted "in transit" under this standard. The SAC alleges, in conclusory fashion, that Asapp "simultaneously" collects transcripts of Charter's webchats "in real time" "instantaneously." SAC at ¶¶ 9, 50, 56, 78. These allegations are materially indistinguishable from allegations that other courts have found insufficient to plead a plausible in-transit interception under Section 631(a). *See Licea v. Cinmar*, 659 F. Supp. 3d at 1085 (finding plaintiff's general pleading regarding real time interception using chat box software insufficient to state a claim); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758–59 (N.D. Cal. 2023) (finding allegation that defendant's code allowed third party to "secretly intercept in real time, eavesdrop upon and store transcripts of" chat communications was insufficient to plead the in transit requirement); *Heiting*, 709 F. Supp. 3d at 1018–19 ("Plaintiff has alleged, in general terms, how the interception occurs: through the **code** embedded on Defendant's website. However, Plaintiff has not added any ***additional*** factual details to make clear when the interception occurred. Merely parroting the statutory requirement that it occurred in transit is insufficient.") (emphasis added).

In an apparent effort to plead that interception of Charter's webchats occurs "in transit," Plaintiff alleges that keystrokes into the webchat automatically appear on the webpage's source code as they are typed, supposedly indicating that the text is automatically routed to Asapp's servers (SAC at ¶¶ 16–17). However, nothing suggests that what appears in the code is being transmitted to any server, let alone Asapp's.

Where courts have found plausible "in transit" allegations, the claimant alleged

much greater details than the SAC provides.  *See Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) ("in transit" adequately pled where the plaintiff alleged the defendant reacted right away to the finding of the scan); *Valenzuela v. Nationwide*, 686 F. Supp. 3d 969, 978 (C.D. Cal. 2023) (finding plaintiff plausibly alleged in transit interception where she cited the vendor's statements that "[d]ata from every use event" is "***collected as it happens***.") (emphasis in original).  The FAC here contains no such allegations.

### 4. Plaintiff Fails to Plead That Charter Aided and Abetted Asapp's Alleged Violation of the Third Clause of Section 631(a) Because Plaintiff Lacks a Viable Predicate Violation of the First or Second Clause.

Finally, the SAC's claim for aiding-and-abetting a violation of Section 631(a)'s third clause also fails because it hinges entirely on whether a plaintiff has a viable claim for a violation of the first or second clauses.  *In re Google Assistant Priv. Litig.* 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) ("Plaintiffs must establish that the information at issue … was obtained through a violation of the first or second clauses.  Because Plaintiffs have not done so, they also have failed to plead a violation of the third clause of § 631(a).").  As argued *supra*, Plaintiff's SAC fails to state a claim under either the first or second clause of Section 631(a).  As a result, Plaintiff's claim for a violation under the third clause must also fail.  *See id.*

### B. The SAC Should Be Dismissed With Prejudice.

The Court should not grant Plaintiff leave to amend the SAC because amendment would be futile.  Plaintiff has now twice amended his complaint, and the SAC remains defective.  As the SAC's pleading deficiencies plainly cannot be cured, this Court should dismiss the SAC with prejudice.  *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996); *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

# V.    <u>CONCLUSION</u>

For the reasons above, Plaintiff respectfully requests this Court to grant the Motion and dismiss the SAC in its entirety and with prejudice.

DATED:  September 4, 2025          **THOMPSON COBURN LLP**


By:      */s/ Jose L. Lua-Valencia*
————————————————
**LUKAS SOSNICKI**
**JOSE L. LUA-VALENCIA**
Attorneys for Defendant CHARTER
COMMUNICATIONS, INC.


# <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant Charter Communications, Inc. certifies that this brief contains 6,810 words, which complies with the word limit of L.R. 11-6.1.

DATED:  September 4, 2025          **THOMPSON COBURN LLP**


By:      */s/ Jose L. Lua-Valencia*
————————————————
**LUKAS SOSNICKI**
**JOSE L. LUA-VALENCIA**
Attorneys for Defendant CHARTER
COMMUNICATIONS, INC.

## PROOF OF SERVICE

### Miguel Esparza v. Charter Communications, Inc.

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 10100 Santa Monica Boulevard, Suite 500, Los Angeles, California 90067.

On September 4, 2025, I served true copies of the following document(s) described as **CHARTER COMMUNICATIONS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

| | |
|---|---|
| Todd M. Friedman | Attorneys for Plaintiff |
| Adrian R. Bacon | MIGUEL ESPARZA |
| Matthew R. Snyder | |
| Law Offices of Todd M. Friedman, P.C. | |
| 21031 Ventura Blvd., Suite 340 | |
| Woodland Hills, California 91364 | |
| Tel: (323) 306-4234 | |
| tfriedman@toddflaw.com | |
| abacon@toddflaw.com | |
| msnyder@toddflaw.com | |

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 4, 2025, at Los Angeles, California.

/s/ Blanca Gutierrez
Blanca Gutierrez