Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
Matthew R. Snyder (SBN 350907)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
23586 Calabasas Rd., Suite 105
Calabasas, CA 91302
Phone: 323-306-4234
tfriedman@toddflaw.com
abacon@toddflaw.com
msnyder@toddflaw.com
*Attorneys for Plaintiff, and all others similarly situated*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MIGUEL ESPARZA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CHARTER COMMUNICATIONS, INC, a Delaware corporation d/b/a SPECTRUM.COM,<br><br>Defendant. | Case No. 2:25-cv-02438-JLS-PVC<br><br>**PLAITNIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: November 14, 2025<br>Time: 10:30 AM<br>Dept: Courtroom 8A<br>Judge: Hon. Josephine L. Staton |

# TABLE OF CONTENTS


I. Introduction.....1

II. Statement of Facts.....2

A. Defendant utilizes Asapp to power its website's chat feature.....2

B. How the ASAPPMessaging platform works.....2

C. Plaintiff's interaction with Defendant's chat feature.....4

D. Procedural History.....4

III. Legal Standard.....5

IV. Argument.....5

A. Defendant's standing arguments are still unavailing.....5

B. Defendant aided, abetted, and paid Asapp to eavesdrop on Plaintiff in violation of Penal Code § 631 and the Wiretap Act.....9

1. Asapp is a third-party eavesdropper.....9

2. Asapp intercepts chat bot communications while they are in transit because Defendant automatically routes those communications to Asapp.....13

3. Defendant aided Asapp in the above-described violations of Section 631.....14

V. Leave to amend should be freely granted.....15

VI. Conclusion.....16

## TABLE OF AUTHORITIES

**Cases**

*Ades v. Omni Hotels Mgmt. Corp.*, 46 F.Supp.3d 999 (C.D. Cal. 2014) ....................6
*Ahringer v. LoanDepot, Inc.*, 715 F.Supp.3d 1274, 1282 (C.D. Cal. 2024)...........14
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..........................................................5
*Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007)...........................................5
*Brown v. Google LLC*, 525 F.Supp.3d 1049 (N.D. Cal. 2021) ..................................9
*Byars v. Goodyear Tire and Rubber Co.*, 654 F.Supp.3d 1020 (C.D. Cal. 2023)...14
*Cal. Emp. Stabilization Comm. v. Payne* (1947) 31 Cal.2d 210 ................................8
*Calhoun v. Google LLC*, 526 F.Supp.3d 605 (N.D. Cal. 2021) ................................8
*Campbell v. Facebook Inc.*, 77 F.Supp.3d 836 (N.D. Cal. 2014)...........................14
*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020).....................................6
*Clark v. State Farm Mut. Auto. Ins. Co.*, 231 F.R.D. 405 (C.D. Cal. 2005) ...........15
*Corley v. U.S.*, 129 S.Ct. 1558 (2009) ..............................................................11
*D'Angelo v. Penny OpCo, LLC*, No. 23-cv-0981 (S.D. Cal. Oct. 24, 2023) ...........15
*Desertrain v. City of Los Angeles*, 754 F.3d 1147 (9th Cir. 2014)...........................15
*Doe v. United States*, 419 F.3d 1058 (9th Cir. 2005) ..............................................5
*Earth Island Institute v. United States Forest Service*, 87 F.4th 1054, 1071 (9th Cir. 2023)..........................................................................................................5
*Esparza v. Kohl's*, 723 F.Supp.3d 934 (S.D. Cal. 2024)........................................13
*Graham v. Noom, Inc.*, 533 F.Supp.3d 823 (N.D. Cal. 2021)................................10
*Heller v. Norcal Mut. Ins. Co.*, 8 Cal.4th 30 (1994)................................................6
*In re Facebook Privacy Litig.*, 572 Fed.App'x 494 (9th Cir. 2014)..........................6
*In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)..........................................................................................................5

*In re Path Network, Inc.*, 703 F.Supp.3d 1046 (N.D. Cal. 2023) .............................9
*In re Vizio, Inc. Consumer Priv. Litig.*, 238 F.Supp.3d 1204 (C.D. Cal. 2017) ......14
*India Price v. Carnival Corp.*, 712 F.Supp.3d 1347 (S.D. Cal. 2024) ....................14
*Javier v. Assurance IQ, LLC*, 649 F.Supp.3d 891, 898 (N.D. Cal. 2023) 10, 11, 13, 14
*Kimmel v. Goland*, 51 Cal.3d 202 (1990) ..............................................................6
*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002) ............................13
*Liberman v. KCOP Television, Inc.*, 110 Cal.App.4th 156 (2003) ...........................5
*Licea v. American Eagle Outfitters, Inc.*, No. EDDCV 22-1702, 2023 WL 2469630 (C.D. Cal. Mar. 7, 2023) ..............................................................6
*Licea v. Cinmar, LLC*, 659 F.Supp.3d 1096 (C.D. Cal. 2023) ................................8
*Makaron v. Enagic USA, Inc.*, 324 F.R.D. 228 (C.D. Cal. 2018) ............................8
*Matera v. Google, Inc.*, No. 15-cv-4062-LHK, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ..............................................................6
*Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-cv-01797, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ..............................................................8
*Osgood v. Main Streat Mktg., LLC*, No. 16-cv-2415, 2017 WL 131829 (S.D. Cal. Jan. 13, 2017) ..............................................................6
*Raffin v. Medicredit, Inc.*, No. CV 15-4912, 2016 WL 7743504 (C.D. Cal. Dec. 19, 2016) ..............................................................6
*Ribas v. Clark*, 38 Cal.3d 355 (1985) ..............................................................6, 13
*Rosenow v. Facebook, Inc.*, No. 19-cv-1297, 2025 WL 951277 (S.D. Cal. Mar. 28 2025) ..............................................................9
*Tate v. VITAS Healthcare Corp.*, 762 F.Supp.3d 949 (E.D. Cal. 2025) 10, 11, 12, 13
*Tavernetti v. Superior Ct.*, 22 Cal.3d 187 (1978) ..............................................9, 10
*Van Patten v. Vertical Fitness Grp., LLC*, 847 F3d 1037 (9th Cir. 2017) ................8
*Williams v. What If Holdings, LLC*, No. C 22-03780, 2022 WL 17869275 (N.D.

Cal. Dec. 22, 2022) .......... 10
*Yoon v. Lululemon USA, Inc.*, 549 F.Supp.3d 1073 (C.D. Cal. 2021) .......... 10, 13

**Statutes**

Cal. Civ. C. § 1798.120 .......... 7
Cal. Civ. C. § 1798.135 .......... 7
Cal. Civ. C. § 1798.175 .......... 8
Cal. Civ. C. § 1798.99.80 .......... 7
Cal. Penal C. § 631 .......... 9, 10, 13, 14
Cal. Penal C. § 631(a) .......... 9, 14
Cal. Penal C. § 637.2(c) .......... 5

**Other Authorities**

Black's Law Dictionary (12th ed. 2024), consent .......... 8

**Rules**

Fed R. Civ. P. 12(b)(6) .......... 5
Fed. R. Civ. P. 15(a) .......... 15
Fed. R. Civ. P. 8 .......... 5
Fed. R. Civ. P. 9 .......... 15

## I. Introduction

Defendant hired a third-party company, Asapp, to secretly listen in on its online chat conversations with consumers and provide suggestions for how Defendant's employees can best to respond to those consumers' chat messages. Asapp does not directly communicate with users of the online chat feature on Defendant's website. Instead, it is Defendant's employees who are communicating with the chat users while Asapp secretly listens in and makes suggestions to Defendant's employees (using artificial intelligence) on how best to respond. To be clear, there are three people connected to the chat on Defendant's website at any given time—Defendant, the customer initiating the chat, and Asapp secretly listening to but not directly participating in the conversation. Defendant does not disclose that it is allowing Asapp to lurk in the background of these chat conversations and provide its thoughts and analysis to Defendant. This is no different than a senior partner at a law firm hiding under a table and passing sticky notes to a junior associate who is taking a deposition.

The question raised by Defendant's Motion to Dismiss, then, is whether the California Invasion Of Privacy Act ("CIPA") requires Asapp to independently use the information it has surreptitiously intercepted in order to violate the second prong of Penal Code § 631. District Courts are split on this issue, but basic statutory construction counsels that the answer is clearly, no. The use of information obtained via illegal wiretapping is already outlawed by a separate provision of Penal Code § 631. Reading a usage requirement into the second prong would add words to the statute and render the third prong superfluous. There is no usage requirement. Asapp is a third-party eavesdropper. Defendant's Motion should be denied.

Defendant also moves to dismiss Plaintiff's Second Amended Complaint based upon the same misguided standing arguments that it made in its prior motion to dismiss. The Court should not be fooled—CIPA does not require any injury

beyond the invasion of privacy created by a violation of the statute itself. Plaintiff has alleged that his privacy was invaded by Defendant's conduct. That is injury enough for statutory standing. Defendant's appeal to the California Consumer Privacy Act ("CCPA") is also unavailing. The CCPA simply does not say what Defendant claims it "expressly states." Even if there were some conflict between the CCPA and CIPA, the plain language of the CCPA states that such a conflict should be resolved in favor of providing the greatest privacy protections for consumers—a fact Defendant conveniently omits. Plaintiff has standing and Defendant's Motion should be denied.

## II. Statement of Facts

### A. Defendant utilizes Asapp to power its website's chat feature.

Defendant operates the website www.spectrum.com (the "Website"). Pl.'s Sec. Am. Compl. ("SAC") at p. 1 [ECF No. 36]. Plaintiff alleges that Defendant secretly pays a third party company named Asapp to embed its chat technology code on the Website. SAC ¶ 9. More specifically, Defendant utilizes Asapp's ASAPPMessaging platform to run the chat feature embedded on the Website. *Id.* at ¶ 11. Through this chat technology, Defendant redirects the inputs made by users to its online chat system, in real time, from Defendant's own website to Asapp's chat technology platform. *Id.* at ¶¶ 9–10. While Defendant's employees are the ones actually responding to chat messages, both Asapp and Defendant maintain simultaneous access to the chats. *Id.* at ¶¶ 10, 20–21.

### B. How the ASAPPMessaging platform works.

The ASAPPMessaging platform is a customer service platform that utilizes artificial intelligence to automate several facets of a business's customer service operations. *Id.* at ¶ 13. The entire ASAPPMessaging platform is hosted on Asapp's own servers, and not on servers that are owned or operated by Defendant. *Id.* at ¶ 14. When a user begins typing a message into the chat feature on Defendant's

Website, a keylogger—software installed by Defendant on the Website—instantaneously routes each individual keystroke that a user inputs to the ASAPPMessaging platform. *Id.* at ¶¶ 16–17. Importantly, the person using the chat feature is actually speaking directly to an employee of Defendant, not to anyone at Asapp. *Id.* at ¶ 20. Instead, Asapp is silently lurking in the background, listening to the user's conversation with Defendant so that it can analyze the conversation and help Defendant's employees figure out how to best respond. *Id.* at ¶¶ 18, 20, 27, 29.

Once a user's inputs are routed to Asapp's servers, Asapp then records the inputs made by users of Defendant's chat feature and analyzes them using artificial intelligence for numerous purposes. *Id.* at ¶ 18. More specifically, while Asapp does not communicate directly with the person submitting the chat messages, it analyzes those messages so that it can provide automated suggestions for responses that Defendant's customer service agents can use to respond. *Id.* at ¶¶ 20, 27, 29, 42. Asapp also provides completions to messages that Defendant's customer services agents are manually typing themselves—Asapp literally finishes Defendant's employee's sentences. *Id.* at ¶ 30. Asapp will also provide Defendant's employees with suggested pre-programmed logic flows for the chat feature to follow, check in on stalling conversations for Defendant's employees, provide detailed summaries of the conversations that Defendant's employees have with chat users, record a transcript of the entire conversation, and summarize a customer's sentiments expressed in the chat. *Id.* at ¶¶ 32–41. All of this is based on Asapp's independent analysis of the chat messages submitted by a user.

Plaintiff alleges that Defendant knows Asapp is doing these things, because it specifically hired it to do them. *Id.* at ¶¶ 9, 11, 22, 51–52. More importantly, the only reason Asapp is able to secretly listen in on these conversations and analyze them as described above, is because Defendant embedded the chat technology into

its website and routed conversations to Asapp. *Id.* at ¶ 22. Defendant does not disclose to chat users that any of this is happening. *Id.* at ¶¶ 12, 58.

**C. Plaintiff's interaction with Defendant's chat feature.**

On or around August 21, 2024, Plaintiff utilized the chat feature on the Website. *Id.* at ¶ 54. Plaintiff asked the chat feature several questions about what TV options are available for deaf people. *Id.* Plaintiff was connected with a live agent of Defendant for this conversation. *Id.* at ¶ 55. Plaintiff alleges that Defendant routed every input he made, instantaneously, to Asapp through the keylogger as described above. *Id.* at ¶ 56. Asapp simultaneously recorded and analyzed the chat messages using its artificial intelligence model, suggested responses for Defendant's agent, summarized the conversation, and recorded and aggregated Plaintiff's personal data. *Id.* at ¶ 57. Plaintiff alleges that both Asapp and Defendant were present and connected to his chat communications with Defendant. *Id.* Plaintiff alleges that he did not know Defendant was doing this, that Defendant did not disclose to him that any of this was happening, and that upon learning that Defendant had allowed Asapp to eavesdrop on their conversation he felt upset, disturbed, and violated. *Id.* at ¶¶ 58–63.

**D. Procedural History**

Plaintiff originally filed his Complaint in this action in the Superior Court for Los Angeles County on February 13, 2025. The case was removed to this Court on March 19, 2025. [ECF No. 1]. On May 2, 2025, Plaintiff filed his First Amended Complaint ("FAC") in this action. [ECF No. 13]. Defendant filed a Motion to Dismiss the First Amended Complaint on May 30, 2025. [ECF No. 23]. That Motion was fully briefed and was heard on August 8, 2025. [ECF No. 31]. The same day, the Court granted Defendant's Motion, with leave to amend. [ECF No. 32]. Plaintiff's Second Amended Complaint was filed on August 21, 2025. [ECF

No. 36]. Defendant filed the instant Motion to Dismiss Plaintiff's Second Amended Complaint on September 4, 2025. [ECF No. 37].

## III. Legal Standard

Federal Rule of Civil Procedure 8 requires that a Plaintiff only plead facts sufficient to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007). "Rule 8's pleading standard is 'liberal.'" *Earth Island Institute v. United States Forest Service*, 87 F.4th 1054, 1071 (9th Cir. 2023). "When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences drawn from them—as true and must construe them in the light most favorable to the non-moving party." *Yoon v. Lululemon USA, Inc.*, 549 F.Supp.3d 1073, 1078 (C.D. Cal. 2021) (citing *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005)). A motion to dismiss under Rule 12(b)(6) should only be granted if the complaint does not "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## IV. Argument

### A. Defendant's standing arguments are still unavailing.

Defendant raises largely the same standing arguments here as were raised in its Motion to Dismiss the First Amended Complaint. To the extent this Motion is based on the same arguments, Plaintiff will incorporate by reference his Opposition to the Motion to Dismiss the First Amended Complaint, and for the sake of brevity will merely remind the Court of the relevant legal standards for statutory standing under CIPA.

"It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages." Cal. Penal C. § 637.2(c). "[A]n actionable violation of [CIPA] occurs the moment the surreptitious recording is made." *Lieberman v. KCOP Television, Inc.*, 110 Cal.App.4th 156, 166–67 (2003); *see also In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL

5423918, at *17 (N.D. Cal. Sept. 26, 2013) ("The California case law on CIPA cuts against Google's contention that 'injured' requires independent injury."). The California Supreme Court has repeatedly held that a violation of CIPA itself constitutes an injury sufficient to convey statutory standing. *See, e.g., Ribas v. Clark*, 38 Cal.3d 355, 365 (1985); *Heller v. Norcal Mut. Ins. Co.*, 8 Cal.4th 30, 53 (1994); *Kimmel v. Goland*, 51 Cal.3d 202, 211 (1990). Moreover, federal courts have consistently held that an invasion of privacy confers Article III standing. *See, e.g., Osgood v. Main Streat Mktg., LLC*, No. 16-cv-2415, 2017 WL 131829, at *7 (S.D. Cal. Jan. 13, 2017); *Matera v. Google, Inc.*, No. 15-cv-4062-LHK, 2016 WL 5339806, at *14 (N.D. Cal. Sept. 23, 2016); *Ades v. Omni Hotels Mgmt. Corp.*, 46 F.Supp.3d 999, 1018 (C.D. Cal. 2014); *Licea v. American Eagle Outfitters, Inc.*, No. EDDCV 22-1702, 2023 WL 2469630, at *3 (C.D. Cal. Mar. 7, 2023); *Raffin v. Medicredit, Inc.*, No. CV 15-4912, 2016 WL 7743504, at *3 (C.D. Cal. Dec. 19, 2016).

Plaintiff alleges that Defendant allowed Asapp to surreptitiously intercept his chat communications in violation of CIPA. SAC ¶¶ 34–36. Plaintiff alleges that he did not know that Defendant was doing so, and as such his privacy rights were violated. SAC ¶¶ 58–63. Though courts have consistently held that this alone is sufficient, Plaintiff also alleges that he "felt upset, disturbed, and/or violated upon learning" that his privacy had been invaded, and that he effectively lost money or property because he "provided valuable data to Defendant." SAC ¶ 66. Thus, even if the invasion of Plaintiff's privacy were insufficient to convey statutory standing, Plaintiff has alleged additional harms that also convey standing. *See In re Facebook Privacy Litig.*, 572 Fed.App'x 494, 494 (9th Cir. 2014); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1118 (9th Cir. 2020) ("CIPA section 631 [is] targeted at the substantive intrusion that occurs when private communications are intercepted by

someone who does not have the right to access them.”).

Defendant’s Motion does raise one new standing argument which is, perhaps, even more wrong than its previous arguments. Specifically, Defendant argues that “[t]he CCPA, which dictates the circumstances under which website operators may lawfully collect and share website visitor data, expressly states that website operators may lawfully collect and share website visitor data if the website operators provide consumers with disclosures and an opt-out right. . .” Def.’s Mot. to Dismiss. At 9 [ECF No. 37] (emphasis added).[1] The CCPA absolutely does not “expressly state” that website operators may lawfully collect and share visitor data if they comply with its opt out and disclosure requirements. The CCPA creates numerous rights for consumers with respect to the collection of their data on the internet. It does not create any rights for businesses with respect to their data collection practices. Defendant would seemingly have the Court believe that the CCPA authorizes the collection of personal data, under whatever circumstances, so long as the business collecting that data protects the rights of consumers outlined in the CCPA. That is not an accurate description of the CCPA, which was designed to supplement consumer privacy protections not limit them. Nowhere in the statutory provisions cited by Defendant does the CCPA grant such a license for business to collect consumer data. *See* Cal. Civ. C. § 1798.120; 1798.135; 1798.99.80.

Even if it were the case that there somehow were a conflict between the CCPA and CIPA, under the CCPA, “[w]herever possible, law relating to consumers’ personal information should be construed to harmonize with the provisions of this title, but in the event of a conflict between other laws and the

---

[1] Tellingly, Defendant follows this statement with a citation beginning with the “*see*” introductory signal, as opposed to a direct citation.

provisions of this title, the provisions of law that afford the greatest protection for the right of privacy for consumers shall control." Cal. Civ. C. § 1798.175 (emphasis added); *see also Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-cv-01797, 2024 WL 5102709, at *5 (N.D. Cal. Dec. 12, 2024) ("CCPA does not preempt CIPA . . . CCPA and CIPA are complementary.").

Defendant's citation to Senate Bill 690—legislation that has not been passed by the California Legislature—is also peculiar. California courts have consistently stated that "a subsequent expression of the Legislature as to the intent of the prior statute, although not binding on the court, may properly be used in determining the effect of a prior act." *Cal. Emp. Stabilization Comm. v. Payne* (1947) 31 Cal.2d 210, 213–214. If Defendant is correct that the purpose of Senate Bill 690 is to "dispel any ambiguity that online business that comply with the CCPA's opt-out requirements cannot be liable under CIPA," then surely the Legislature must believe that, under current law, CIPA does apply to the communications at issue here. Otherwise no amendment to CIPA would be necessary.[2]

Ultimately, Defendant still asks this Court to make an inference that Plaintiff consented to its conduct, even though that is an affirmative defense that would be Defendant's burden to prove. *Calhoun v. Google LLC*, 526 F.Supp.3d 605, 623 (N.D. Cal. 2021); *see also Licea v. Cinmar, LLC,* 659 F.Supp.3d 1096, 1106 (C.D. Cal. 2023); Black's Law Dictionary (12th ed. 2024), consent ("Consent is an affirmative defense to . . . torts such as defamation, [and] invasion of privacy."). Courts within the Ninth Circuit, however, have consistently held that a plaintiff is not required to prove a lack of consent in privacy cases. *See, e.g., Van Patten v. Vertical Fitness Grp., LLC*, 847 F3d 1037, 1044 (9th Cir. 2017); *Makaron v. Enagic*

[2] Plaintiff reiterates that Senate Bill 690 is pending legislation that has virtually no import to the analysis here. To the extent it is relevant at all, it supports Plaintiff's interpretation of the law, not Defendant's.

*USA, Inc.*, 324 F.R.D. 228, 232–33 (C.D. Cal. 2018); *Brown v. Google LLC*, 525 F.Supp.3d 1049, 1063 (N.D. Cal. 2021); *In re Path Network, Inc.*, 703 F.Supp.3d 1046, 1074 (N.D. Cal. 2023); *Rosenow v. Facebook, Inc.*, No. 19-cv-1297, 2025 WL 951277 (S.D. Cal. Mar. 28 2025). If Defendant wishes to avail itself of a consent defense it must conduct discovery and put on evidence in support of that defense, not flip its burden onto Plaintiff by couching its affirmative defense as a statutory standing argument. Defendant's Motion should be denied.

**B. Defendant aided, abetted, and paid Asapp to eavesdrop on Plaintiff in violation of Penal Code § 631 and the Wiretap Act.**

Penal Code § 631 covers "three distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal.3d 187, 192 (1978). Specifically prohibited are (1) "intentional wiretapping;" (2) "attempting to learn the contents or meaning of a communication in transit over a wire;" and (3) "attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." Cal. Penal C. § 631(a). CIPA also imposes liability on anyone who "aids, agrees with, employs, or conspires with any person or persons" in violating the three clauses above. *Id.* Asapp undoubtedly violated the second and third prongs of § 631(a).[3]

**1. Asapp is a third-party eavesdropper.**

In its Order Granting Defendant's Motion to Dismiss, the Court stated that "Plaintiff's FAC appears to allege that Asapp is a party to the conversation acting as an agent of Defendant," because the allegations of the FAC were that Asapp was actually communicating responses back to the user of the chat feature. *See* Order Granting Mot. to Dismiss at 5 [ECF No. 32] ("MTD Order").[4] As alleged in the

[3] Having considered the authority raised by Defendant in its Motion to Dismiss, Plaintiff will withdraw his claim for violations of § 631(a)'s first prong.

[4] These allegations were based on a misunderstanding of which Asapp product Defendant was using on its website. This has been corrected and clarified in the

SAC, however, this is not true. Instead, Defendant's live employees are the individuals responding in the chat feature, while Asapp listens in and provides input to Defendant's agents. SAC ¶¶ 20–21, 26–37.

The standard for determining whether someone is a third-party eavesdropper is whether they are a "tape recorder held by [the defendant], or . . . an eavesdropper standing outside the door." *Yoon v. Lululemon USA, Inc.*, 549 F.Supp.3d 1073, 1081 (C.D. Cal. 2021). District Courts have split when analyzing this question on whether the alleged "third party's intention to collect or use data," is relevant to its status as a third-party eavesdropper. *Tate v. VITAS Healthcare Corp.*, 762 F.Supp.3d 949, 955 (E.D. Cal. 2025). One line of cases holds that whether the third party uses the collected data is irrelevant to their status as a third-party eavesdropper. *See, e.g.*, *Javier v. Assurance IQ, LLC*, 649 F.Supp.3d 891, 898 (N.D. Cal. 2023); *Tate*, 762 F.Supp.3d at 955. A second line of cases holds that a software provider is not a third-party eavesdropper where there are "no facts . . . to suggest that [it] intercepted and used the data itself." *Williams v. What If Holdings, LLC*, No. C 22-03780, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022); *see also Graham v. Noom, Inc.*, 533 F.Supp.3d 823, 832–33 (N.D. Cal. 2021).

The problem with this second line of cases, which are advanced by Defendant, is that they completely excise language from the statute. Certainly, the California Supreme Court has explicitly stated that § 631 covers "three distinct and mutually independent patterns of conduct: intentional wiretapping, wilfully [sic] attempting to learn the contents or meaning of a communication in transit over a wire, <u>and</u> attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti*, 22 Cal.3d at 192 (emphasis added). The cases cited by Defendant effectively excise the third prong of § 631, by requiring

---

SAC.

that a software provider use data it intercepts in order for it to qualify as a third-party eavesdropper under the second prong of § 631. The use of intercepted data, however, is already outlawed under the third prong of § 631, and no such use requirement appears in the plain language of § 631's second prong. Reading CIPA in the manner that Defendant asks this Court to requires the Court to write words into the second prong of § 631, and effectively renders the third prong superfluous. It is well established that as a matter of basic statutory construction, "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. U.S.*, 129 S.Ct. 1558, 1566 (2009) (internal quotations omitted).

The analysis in *Tate* is instructive, and directly analogous. There, the defendant hired a software company to "help analyze" the content of its telephone communications. 762 F.Supp.3d at 952. When a person called the defendant, the software would record and create a transcript of the caller's speech. *Id.* The software would then "feed[] that transcript to an artificial intelligence (AI) program that identifies patterns and classifies the data into a searchable database," which was then sent to the defendant. *Id.* The defendant then used this information "to understand what questions and concerns its callers have, so that [it] can adjust the content it delivers to consumers . . ." *Id.* The defendant moved to dismiss, arguing that the software was not a third-party eavesdropper under CIPA.

The Eastern District of California analyzed both lines of cases discussed above, concluding that "*Javier's* reasoning [is] more persuasive." *Id.* at 955. The court opined that CIPA "outlines several ways for its restrictions to apply and does not limit its application solely to parties that directly use the data they obtain from listening in on a call. In other words, an entity can violate the statute by learning the contents of the message *or* by using information obtained from listening in on a

conversation." *Id.* (emphasis in original). Thus, the third-party software company "h[ad] already allegedly violated the caller's privacy; whether [it] actually uses the contents of the call for its own purposes is not legally relevant." *Id.* at 956.

This case is almost exactly the same as *Tate*. As in *Tate*, Plaintiff alleges that Defendant allows Asapp to listen in on and record the chat communications between consumers and Defendant's own live agents. SAC ¶¶ 20–24. Just like in *Tate*, Asapp then feeds that conversation to Asapp's AI program for analysis. *Id.* at ¶¶ 26–27, 29–32. Asapp then uses this information to suggest possible responses to the questions asked, predict and finish Defendant's agents sentences, automatically create a summary of the conversation, and automatically record the ultimate outcome of the conversation. *Id.* at ¶¶ 29–41. Thus, just as in *Tate*, Asapp is a third-party listening in on Defendant's conversations with consumers, and "has already allegedly violated [a user's] privacy, whether [it] actually uses the contents of the [conversation] for its own purposes is not legally relevant." *Tate*, 762 F.Supp.3d at 956.

At the risk of belaboring the point, Plaintiff reiterates that Asapp is not actually directly communicating with individuals who use the chat feature on Defendant's website. Instead, it is listening in and suggesting to Defendant's employees how best to respond to the questions that are being asked. SAC ¶¶ 29–37. As stated in the SAC, "[t]his is akin to a supervising partner at a law firm handling sticky notes to assist a joint associate who is taking a deposition. Both are present for the deposition, except in this case, the partner is hidden behind a curtain and is undisclosed to the deponent." *Id.* at ¶ 31. Asapp is an undisclosed eavesdropper listening in on consumer's conversations with Defendant.

Finally, Plaintiff responds to two baffling arguments raised by Defendant's Motion. The first is that the CCPA somehow mandates that Asapp is not a third party under CIPA (a wholly different statute). This argument has a plethora of issues,

not least of which is that it has already been rejected by courts considering it. *See Yoon*, 549 F.Supp.3d at 1081, n. 29 (there is "no authority to suggest that the Consumer Privacy Act rewrote CIPA in that way."). Even still, the CCPA (again) does not say what Defendant says it does—the CCPA does not "specifically permit website operators . . . to share information with vendors." Def.'s Mot. at 16. As discussed above, the CCPA creates substantive rights <u>for consumers</u>, and nothing else. And, more importantly, as discussed above the CCPA explicitly states that to the extent CIPA conflicts with the CCPA, whichever law affords consumers greater rights (which is undoubtedly CIPA, in this case) should prevail. The CCPA simply has no import to the analysis of this case whatsoever.

The second absurd argument that Defendant raises is that because an agency relationship exists between Asapp and Defendant, Asapp can never be considered a third party under CIPA. *See* Def.'s Mot. at 17. This argument is completely unsupported by any legal authority at all. Defendant does not cite one single case for this argument—because there are none that support it. In fact, courts have <u>repeatedly</u> held that a vendor hired by a defendant can be a third party for purposes of § 631. *See, e.g., Tate*, 762 F.Supp.3d at 956; *Javier*, 649 F.Supp.3d at 898–901; *Yoon*, 549 F.Supp.3d at 1081–82; *see also Ribas v. Clark*, 38 Cal.3d 355, 359–362 (1985). To suggest otherwise flies in the face of decades of precedent and is simply wrong. Defendant's Motion should be denied.

**2. Asapp intercepts chat bot communications while they are in transit because Defendant automatically routes those communications to Asapp.**

For purposes of CIPA a communication is intercepted in transit when it is "acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Courts have held that "at the motion to dismiss stage, a plaintiff is not expected to prove or even know how and when its communications were captured." *Esparza v. Kohl's*, 723

F.Supp.3d 934, 943 (S.D. Cal. 2024); *see also In re Vizio, Inc. Consumer Priv. Litig.*, 238 F.Supp.3d 1204, 1228 (C.D. Cal. 2017) ("*Vizio*").

Plaintiff has clearly alleged that Asapp intercepted his communications while they were in transit. *See* SAC ¶¶ 9, 16–18, 50, 78. Certainly, Defendant uses a keylogger to transmit each individual keystroke to Asapp, the moment a user types it into the chat feature. SAC ¶ 16–18. Thus, the moment a user types their chat to Defendant's chat bot, the message is instantaneously routed to Asapp for recording and processing. The communications are therefore intercepted while they are in transit. *Byars*, 654 F.Supp.3d 1020, 1027 (C.D. Cal. 2023) (allegations that interception of communications happened "in real time" were sufficient to satisfy the "in transit" requirement); *Campbell v. Facebook Inc.*, 77 F.Supp.3d 836, 848 (N.D. Cal. 2014) ("the [SAC's] allegation that a user's messages were intercepted in transit is to be taken as true" at the motion to dismiss stage); *see also India Price v. Carnival Corp.*, 712 F.Supp.3d 1347, 1359–60 (S.D. Cal. 2024); *Ahringer v. LoanDepot, Inc.*, 715 F.Supp.3d 1274, 1282 (C.D. Cal. 2024).

**3. Defendant aided Asapp in the above-described violations of Section 631.**

Section 631 imposes liability on anyone who aids another in violating its three primary clauses. Cal. Penal C. § 631(a). "[I]f a third party listens in on a conversation between the participants (even if one participant consents to the presence of that third party), then the third party is liable under the second prong (<u>and the participant is often liable under the fourth prong</u>)." *Javier v. Assurance IQ, LLC*, 649 F.Supp.3d 891, 897–98 (N.D. Cal. 2023) (emphasis added).

In *D'Angelo*, the Plaintiff brought a putative CIPA class action against JC Penny under a nearly identical theory as here. *D'Angelo v. Penny OpCo, LLC*, No. 23-cv-0981, 2023 WL 7006793, at *7–9 (S.D. Cal. Oct. 24, 2023). There, the plaintiff alleged that "[t]he chat function is run through [the third party's] servers . . . In other words, [the third party] runs the chat service from its own servers, but

consumers interact with the chat service on Defendant's Website, so it appears they are *only* communicating with a company representative of Defendant." *Id.* at *8. The Court held that these allegations were sufficient to plausibly allege that JC Penny had aided and abetted the third party. *Id.* at *9.

Here, as in *D'Angelo*, Plaintiff alleges that Asapp runs Defendant's chat bot from its servers. *See* SAC ¶¶ 9–12, 14–15. Just as in *D'Angelo*, Plaintiff only interacted with the chat bot on Defendant's website, such that it appeared she was only communicating with Defendant. *See id.* at ¶¶ 53–57. Moreover, Plaintiff here has alleged that "[t]he only reason Asapp is able to do any of this is because Defendant embedded the chat technology into its own website, and caused communications made to that chat bot to be routed to Asapp's chat technology platform" *Id.* ¶ 22. Thus, just as in *D'Angelo*, Plaintiff has plausibly alleged that Defendant aided Asapp in the illegal tapping and use of her communications. *D'Angelo*, 2023 WL 7006793, at *9.

Defendant's argument that Plaintiff has not adequately plead that it aided and abetted Asapp is based entirely on the basis that he has not adequately plead Defendant's knowledge of Asapp's conduct. This argument is foreclosed by the Rules of Civil Procedure: "[m]alice, intent, <u>knowledge, and other conditions of a person's mind</u> may be alleged generally." Fed. R. Civ. P. 9(b) (emphasis added). Thus, the "ninth Circuit has interpreted these rules to mean that conclusory pleading is sufficient," for mental states and knowledge. *Clark v. State Farm Mut. Auto. Ins. Co.*, 231 F.R.D. 405, 406 (C.D. Cal. 2005) (collecting cases). Plaintiff has adequately alleged that Defendant knew what Asapp was doing. *See* SAC ¶¶ 9–10, 22–24, 51–52. As was the case in *D'Angelo*, Plaintiff's allegations are sufficient at this stage and Defendant's Motion should be denied. 2023 WL 7006793, at *9.

**V. Leave to amend should be freely granted.**

When a party requests to amend a pleading, the court must freely give leave when justice so requires. Fed. R. Civ. P. 15(a); *Desertrain v. City of Los Angeles*,

754 F.3d 1147, 1154 (9th Cir. 2014). Here, leave to amend will not cause undue delay or prejudice as this case is in its infancy, and there is no in bad faith. If the Court grants any part of Defendant's motion, Plaintiff requests the Court grant leave to amend.

## VI. Conclusion

For these reasons, Plaintiff respectfully requests that this Court deny Defendant's motion.

Dated: October 24, 2025 **LAW OFFICES OF TODD M. FRIEDMAN, P.C.**

BY: s/Todd M. Friedman

TODD M. FRIEDMAN, ESQ.

ATTORNEYS FOR PLAINTIFFS

Filed electronically on this 24th Day of October, 2025, with:
United States District Court CM/ECF system.
Notification sent electronically on this 24th Day of October, 2025, to:

United States District Court
Central District of California
Hon. Josephine L. Staton
And All Counsel of Record as Recorded On The Electronic Service List

/s/ Todd M. Friedman
TODD M. FRIEDMAN