**THOMPSON COBURN LLP**
**LUKAS SOSNICKI (SBN 295895)**
**lsosnicki@thompsoncoburn.com**
**JOSE L. LUA-VALENCIA (SBN 324087)**
**jlua-valencia@thompsoncoburn.com**
**10100 Santa Monica Boulevard, Suite 500**
**Los Angeles, California 90067**
**Tel: 310.282.2500 / Fax: 310.282.2501**

Attorneys for Defendant CHARTER COMMUNICATIONS, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

MIGUEL ESPARZA,

Plaintiff,

v.

CHARTER COMMUNICATIONS, INC, a Delaware corporation d/b/a SPECTRUM.COM,

Defendant.

Case No. 2:25-cv-02438-JLS-PVC

**CHARTER COMMUNICATIONS, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Hearing: November 14, 2025
Time: 10:30 a.m.
Judge: Hon. Josephine L. Staton
Courtroom: 8A

Complaint Filed: February 13, 2025

Notice of Removal Filed: March 19, 2025

# TABLE OF CONTENTS


Page

I. ARGUMENT .......... 2

A. Plaintiff Lacks Statutory Standing to Bring His CIPA Claim. .......... 2

B. Plaintiff's Alleged Emotional Harms Fail to Establish Statutory Standing .......... 9

C. CIPA's "Party Exemption" Applies to Asapp. .......... 11

D. The SAC Does Not Sufficiently Plead Scienter. .......... 12

E. The FAC Does Not Sufficiently Plead CIPA's "In Transit" Requirement. .......... 13

II. The SAC Should Be Dismissed Without Leave to Amend. .......... 14

## TABLE OF AUTHORITIES


**Cases** **Page(s)**

*Ades v. Omni Hotels Mgmt. Corp.*,
46 F. Supp. 3d 999 (C.D. Cal. 2014) ..... 3, 5

*Barclift v. Keystone Credit Servs., LLC*,
93 F.4th 136 (3d Cir. 2024) ..... 5

*Boorstein v. CBS Interactive*,
222 Cal. App. 4th 456 (2013) ..... 3

*Boorstein v. Men's Journal*,
2012 U.S. Dist. LEXIS 83101 (C.D. Cal. July 14, 2012) ..... 3

*Brown v. Google LLC*,
2021 U.S. Dist. LEXIS 244695 (N.D. Cal. Dec. 22, 2021) ..... 10

*In re C.H.*,
53 Cal. 4th 94 (2011) ..... 3

*Carrico v. City & Cnty. of San Francisco*,
656 F.3d 1002 (9th Cir. 2011) ..... 14

*Cook v. GameStop, Inc.*,
2025 U.S. App. LEXIS 19955 (3d Cir. Aug. 7, 2025) ..... 4, 5

*Dix v. Superior Court*,
53 Cal. 3d 442 (1991) ..... 3

*Doe v. Eating Recovery Ctr. LLC*,
2025 U.S. Dist. LEXIS 207952, *17-19 (N.D. Cal. Oct. 17, 2025) ..... 8, 9

*Dumas v. Kipp*,
90 F.3d 386 (9th Cir. 1996) ..... 14

*Esparza v. UAG Escondido A1 Inc.*,
2024 U.S. Dist. LEXIS 24429 (S.D. Cal. Feb. 12, 2024) ..... 12

*In re Facebook Privacy Litig.*,
572 Fed. App'x 494 (9th Cir. 2014) ..... 10, 11

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ..... 11

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020)....................................................................4

*Heiting v. v. Athenahealth, Inc.*,
2024 U.S. Dist. LEXIS 133617 (C.D. Cal. July 29, 2024) .................................13

*Heller v. Norcal Mut. Ins. Co.*,
8 Cal. 4th 30 (1994)..................................................................................................5

*Holmes v. Elephant Ins. Co.*,
2023 U.S. Dist. LEXIS 110161 (E.D. Va. June 26, 2023)..................................10

*Hubbard v. Google LLC*,
2024 U.S. Dist. LEXIS 117876 (N.D. Cal. July 1, 2024) .....................................4

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022)....................................................................9

*Kimmel v. Goland*,
51 Cal. 3d 202 (1990) ...............................................................................................5

*King v. Conde Nast Publications*,
2012 U.S. Dist. LEXIS 109120 (C.D. Cal. Aug. 3, 2012), aff'd 554 Fed. Appx. 545 (9th Cir. 2014) ...........................................................................3

*Klein v. Facebook, Inc.*,
580 F. Supp. 3d 743 (N.D. Cal. 2022).....................................................................10

*Licea v. American Eagle Outfitters, Inc.*,
2023 WL 2469630 (C.D. Cal. Mar. 7, 2023) ..........................................................5

*Licea v. Cinmar*,
659 F. Supp. 3d at 1085.........................................................................................13

*Licea v. Vitacost.com*,
683 F. Supp. 3d 1118 (S.D. Cal. 2023) ..................................................................11

*Lieberman v. KCOP Television, Inc.*,
110 Cal. App. 4th 156 (2003)..................................................................................4

*Matera v. Google, Inc.*,
2016 WL 5339806, at *14 (N.D. Cal. Sept. 23, 2016)...........................................5

*Miller v. Hearst Communications*,
2012 U.S. Dist. LEXIS 109121 (C.D. Cal. Aug. 3, 2012), aff'd 554 Fed. Appx. 657 (9th Cir. 2014) .......... 3

*Osgood v. Main Streat Mktg., LLC*,
2017 WL 131829 (S.D. Cal. Jan. 13, 2017) .......... 5

*Popa v. Microsoft Corp.*,
2025 U.S. App. LEXIS 21946 (9th Cir. Aug. 26, 2025) .......... 5, 10

*Raffin v. Medicredit, Inc.*,
2016 WL 7743504 (C.D. Cal. Dec. 19, 2016) .......... 5

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .......... 5

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) .......... 13

*Rodriguez v. Google LLC*,
2022 U.S. Dist. LEXIS 13476 (N.D. Cal. Jan. 25, 2022) .......... 13

*Surrey v. TrueBeginnings*,
168 Cal. App. 4th 414 (2008), overruled on other grounds by *White v. Square*, 7 Cal. 5th 1019 (2019) .......... 3

*Thomas v. Papa Johns Int'l, Inc.*,
2024 U.S. Dist. LEXIS 84019 (S.D. Cal. May 8, 2024) .......... 4

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 4

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) .......... 13

*Valenzuela v. Kroger Co.*,
2024 U.S. Dist. LEXIS 56985 (C.D. Cal. Mar. 28, 2024) .......... 13

*In re Vizio, Inc.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......... 13

*Wadsworth v. Kross, Lieberman & Stone, Inc.*,
12 F.4th 665 (7th Cir. 2021) .......... 5, 9

*Wilkinson v. Olympia Dev. of Mich. LLC*,
2022 U.S. Dist. LEXIS 180669 (E.D. Mich. Oct. 3, 2022) .... 10

*Wooten v. Biolife Plasma Servs.*,
2025 WL 2979619 (E.D. Cal. Oct. 22, 2025) .... 3

*Yoon v. Lululemon*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .... 3

**Statutes**

Cal. Civ. Code § 1798.140 .... 6

**Other Authorities**

California Consumer Privacy Act .... 1

# MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff's Second Amended Complaint ("SAC") does not cure key pleading deficiencies relating to Plaintiff's statutory standing, Charter's scienter, or CIPA's requirement that the alleged interception occur "in transit." And under either line of Ninth Circuit holdings regarding CIPA's "party exemption," Asapp is not an eavesdropper under the pleaded facts.

Plaintiff's Opposition to Charter's Motion does not explain how Plaintiff's claims can survive dismissal. Instead, the Opposition only confirms the error of (at least) two key premises in Plaintiff's CIPA claim.

***First***, Plaintiff doubles-down on his argument that CIPA—a 1960s-era criminal statute that penalizes telephone wiretapping—itself creates a protectable privacy interest in all online communications. It does not. Not all online communications are private (or CIPA-protected), and not all website data-collection is actionable as an invasion of privacy. Yet Plaintiff refuses to explain what private information he contends Charter shared with Asapp or why he believes asking about TV service on a public commercial website is private. His refusal only highlights why it makes little sense to rely on a decades-old law passed to prohibit telephone wiretapping for a claim of privacy-right injury in website submissions. And it makes especially little sense where more recent law—the California Consumer Privacy Act ("CCPA")—specifically regulates online-data collection.

***Second***, Plaintiff continues to advocate penalizing commercial website operators (under a criminal statute, no less) for simply using outside vendors to more-efficiently bring consumers the information and products they want. As Charter explained in its Opening Brief, the CCPA—enacted in 2018 (and, unlike CIPA, a legislative product of the digital age)—specifically addresses use of service providers and when and how commercial website operators may share the personal information they collect with such vendors to perform certain tasks (presumably because vendors can do these tasks better than the website operators could). Plaintiff does not allege

(nor can he) that Charter somehow violates the CCPA. And Plaintiff's argument that CIPA should be applied here because it offers more privacy protection than the CCPA, only begs the same question: what is the privacy right at issue? Again, on the SAC's pleaded facts, none.

As Charter noted in prior briefing, Charter understands certain information submitted online may be private or sensitive (*e.g.*, health or financial information) and, as other courts have found, certain sharing may give rise to privacy claims. But applying CIPA to prohibit (and thereby criminalize) website operators from helping consumers by sharing the type of non-private information at issue in the SAC with vendors contracted in a manner that defines and limits the information's use is a bridge too far. Plaintiff cannot create privacy rights out of whole cloth, and the notion that *any* sharing of consumer information is a privacy violation, as Plaintiff appears to contend, directly conflicts with the CCPA's online privacy regime.[1]

In sum, Plaintiff's SAC applies the wrong law to non-actionable facts. And even then, the SAC does not plead facts necessary for a CIPA claim. The SAC should be dismissed without further leave to amend.

## I. <u>ARGUMENT</u>

### A. <u>Plaintiff Lacks Statutory Standing to Bring His CIPA Claim.</u>

As explained in Charter's Opening Brief, the Court should dismiss the SAC because Plaintiff fails to plausibly allege any cognizable injury to Plaintiff's protectable privacy interests resulting from a CIPA violation. As such, Plaintiff failed to sufficiently plead statutory standing under CIPA.

To be actionable, CIPA's plain language requires the alleged CIPA "violation"

---

[1] *See Doe v. Eating Recovery Ctr. LLC*, 2025 U.S. Dist. LEXIS 207952, *17–19 (N.D. Cal. Oct. 17, 2025) ("Recall that CIPA was enacted in 1967. Its language…is ill-suited for application to internet communications…California has since adopted other statutes that more clearly speak to the practice of data sharing. *See* Cal. Civil Code § 1798.100 *et seq.* (California Consumer Privacy Act).").

resulted in an "injury" to the claimant's privacy interest, *i.e.*, an "injury" separate from a statutory "violation." This requirement is exemplified in CIPA cases and supported by longstanding statutory-interpretation and decisions interpreting similarly-worded statutes.[2]

In his Opposition, Plaintiff outright ignores these authorities and once again asks this Court to rely on inapposite California Supreme Court authority and other cases involving privacy interests that are much different than whatever privacy right Plaintiff contends is at issue here. These efforts are unavailing for several reasons.

As an initial matter, Plaintiff relies on circular reasoning when he argues an "invasion of privacy" confers statutory standing. The relevant question is what that "invasion of privacy" may be. Plaintiff responds by citing CIPA cases challenging wiretapping of telephone lines. But these cases have no bearing on what privacy interest may be implicated by Plaintiff's visit to a public commercial website to use

---

[2] *Yoon v. Lululemon*, 549 F. Supp. 3d 1073, 1085 (C.D. Cal. 2021) (dismissing CIPA claims for failure to allege injury from CIPA violation because only a person 'who has been ***injured*** by a violation of this chapter' may assert a civil claim") (quoting CIPA) (emphasis added); *Wooten v. Biolife Plasma Servs.*, 2025 WL 2979619, at *4 (E.D. Cal. Oct. 22, 2025) (similar); *Ades v. Omni Hotels Mgmt.*, 46 F. Supp. 3d 999, 1005 (C.D. Cal. 2014) (Federal courts apply state statutory-construction law.) (citing *Bass v. County of Butte*, 458 F.3d 978, 981 (9th Cir. 2006)); *Surrey v. TrueBeginnings*, 168 Cal. App. 4th 414, 417–18 (2008), overruled on other grounds by *White v. Square*, 7 Cal. 5th 1019 (2019) (Statutory-standing requirements are determined from statutory language, legislative intent, and statutory purpose ); *Dix v. Superior Court*, 53 Cal. 3d 442, 459 (1991) (Courts "avoid statutory constructions that render particular provisions superfluous or unnecessary."); *In re C.H.*, 53 Cal. 4th 94, 107 (2011) (Different words in contemporaneously-enacted statutory provisions strongly infer a different meaning.); *Boorstein v. CBS Interactive*, 222 Cal. App. 4th 456, 460 (2013) (applying California's statutory-interpretation tenets to privacy statute like CIPA, and requiring allegations of ***both*** "violation" ***and*** "injury" for a claim); *Boorstein v. Men's Journal*, 2012 U.S. Dist. LEXIS 83101, at *10–13 (C.D. Cal. July 14, 2012) (same); *Miller v. Hearst Communications*, 2012 U.S. Dist. LEXIS 109121, at *12–13 (C.D. Cal. Aug. 3, 2012), aff'd 554 Fed. Appx. 657 (9th Cir. 2014) (same); *King v. Conde Nast Publications*, 2012 U.S. Dist. LEXIS 109120, at *5–6 (C.D. Cal. Aug. 3, 2012), aff'd 554 Fed. Appx. 545 (9th Cir. 2014).

its chat feature to inquire "about what TV options are available for deaf people." SAC at ¶¶ 54–55. Website visitors like Plaintiff have no reasonable, overarching expectation of privacy in online activity. *See, e.g.*, *Hubbard v. Google LLC,* 2024 U.S. Dist. LEXIS 117876, at *22 (N.D. Cal. July 1, 2024) ("internet browsing involves the collection of users' data, including by tracking users across the internet, ***and a reasonable user should expect as much***.") (emphasis in original) (collecting cases); *Thomas v. Papa Johns Int'l, Inc.,* 2024 U.S. Dist. LEXIS 84019, at *3–4 (S.D. Cal. May 8, 2024) ("[T]he internet is not a place where users have a reasonable expectation of privacy.") (collecting cases); *United States v. Forrester,* 512 F.3d 500, 509–10 (9th Cir. 2008) (similar); *Heeger v. Facebook, Inc.,* 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020) (similar); *Cook v. GameStop, Inc.*, 2025 WL 2250261, at *5 (3d Cir. Aug. 7, 2025) ("Most of us understand that what we do on the Internet is not completely private.") (quoting *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 266 (3d Cir. 2016)). Intercepting certain types of data therefore creates no privacy injury. Repeating there was an "invasion of privacy" based on alleged online-data collection or sharing—without describing the privacy interest at issue—therefore cannot be enough.

No case Plaintiff cites to argue the contrary is even remotely on point. *Lieberman v. KCOP Television, Inc.* had nothing to do with statutory standing; it addressed whether CIPA claimants need to prove damages. *See* 110 Cal. App. 4th 156, 166 (2003). *In re Google* and *In re Yahoo* are over a decade old—California privacy law has significantly developed since then—and involved no legitimate question regarding alleged breach of privacy because the defendant allegedly intercepted private e-mails. *See* 2013 U.S. Dist. LEXIS 172784, at *65–66 (N.D. Cal. Sept. 26, 2013); 7 F. Supp. 3d 1016, 1040 (N.D. Cal. 2014) ("[T]his Court concludes, as others have, that there can be a legally protected privacy interest or reasonable expectation of privacy in any confidential and sensitive content within emails.").

The Article III cases that Plaintiff cites are likewise of no consequence for

Charter. *Osgood*, *Ades*, and *Raffin* all involved obvious privacy injury because they alleged intercepted telephone calls. *Osgood v. Main Streat Mktg., LLC,* 2017 WL 131829, at *7 (S.D. Cal. Jan. 13, 2017); *Ades v. Omni Hotels Mgmt. Corp.,* 46 F.Supp.3d 999, 1018 (C.D. Cal. 2014); *Raffin v. Medicredit, Inc.,* 2016 WL 7743504, at *3 (C.D. Cal. Dec. 19, 2016). Likewise, the alleged privacy injury in *Matera v. Google, Inc.* was obvious because it involved interception of private e-mail. 2016 WL 5339806, at *14 (N.D. Cal. Sept. 23, 2016). As for *Licea v. American Eagle Outfitters, Inc.,* 2023 WL 2469630, at *3 (C.D. Cal. Mar. 7, 2023), recent Third and Ninth Circuit opinions dictate that a statute like CIPA cannot "elevate" interception of internet communications into privacy harms if such interferences are not real-world privacy harms. *See Cook v. GameStop, Inc.*, 2025 U.S. App. LEXIS 19955, *14 (3d Cir. Aug. 7, 2025) ("A legislature may 'elevate harms that exist in the real world' to make them legally actionable…But it 'may not simply enact an injury into existence...'") (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)); *Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136 (3d Cir. 2024) (same); *Popa v. Microsoft Corp.*, 2025 U.S. App. LEXIS 21946, at *12 (9th Cir. Aug. 26, 2025) (same). Sharing non-private information with a contracted vendor is not real-world harm.

Similarly, Plaintiff's reliance on California Supreme Court cases does not show he has a protectable privacy interest at issue. *Ribas* and *Kimmel* implicated a plausible expectation of privacy because they alleged eavesdropping one-on-one telephone communications. *See Ribas v. Clark,* 38 Cal. 3d 355, 365 (1985); *Kimmel v. Goland,* 51 Cal. 3d 202, 211 (1990). *Heller* did not involve a CIPA or other wiretapping claim, and in any event, it involved obvious expectation of privacy because it alleged violation of physician-patient privilege. *Heller v. Norcal Mut. Ins. Co.,* 8 Cal. 4th 30, 53 (1994). Likewise, *Lieberman* involved audio and video recording of a doctor's private patient consultations. 110 Cal. App. 4th at 161–62.

Plaintiff also misconstrues Charter's argument regarding the scope and role of the CCPA. As Charter explained in its brief, the CCPA permits website operators

(like Charter) to share information with vendors (like Asapp), ***who are not even considered "third parties" if contractually bound to limit PII use***. *See* Cal. Civ. Code §§ 1798.140(ah)(1) ("'sharing' means sharing…a consumer's personal information…to a ***third party*** for cross-context behavioral ***advertising***") (emphasis added); 1798.140(ai)(2) ("'***Third party***' means a person who is ***not*** … [a] service provider") (emphasis added); 1798.140(ag)(1) ("'***Service provider***' means a person that processes personal information on behalf of a business and that receives from or on behalf of the business consumer's personal information for a business purpose pursuant to a written contract, provided that the contract prohibits the person from" sharing…and retaining or disclosing the information "for any purpose other than for the business purposes specified in the contract…") (emphasis added). Applied here, if Charter has a contract with Asapp (it does), and Asapp is contractually bound to not use collected information for its own purposes (it is), Asapp is not a "third party" for purposes of website-visitor privacy—including for Plaintiff's alleged website privacy in his CIPA-eavesdropping claim.

In his Opposition, Plaintiff side-steps this point by arguing the CCPA confers consumer rights but "does not create any rights ***for businesses*** with respect to their data collection practices." Opp. at 7: 10–13 (emphasis in original). He also argues that SB 690 only confirms the Legislature's acknowledgment that, under California's current privacy regime, which includes the CCPA, CIPA broadly applies to online communications. And Plaintiff contends that if CIPA and the CCPA conflict, CIPA ought to control because it provides "the greatest protection for the right of privacy for consumers shall control." For at least four reasons, Plaintiff is wrong.

***First***, Plaintiff misunderstands Charter's point: the CCPA recognizes the ***presumptive*** right of website operators like Charter to hire vendors like Asapp to collect user information for certain purposes, including for analytics. When the Legislature first introduced the CCPA as AB 375, it acknowledged this presumptive right's broad scope:

> Many businesses collect personal information from California consumers. They may know where a consumer lives and how many children a consumer has, how fast a consumer drives, a consumer's personality, sleep habits, biometric and health information, financial information, precise geolocation information, and social networks, to name a few categories.

2018 Cal. Legis. Serv. Ch. 55, § 2(e) (A.B. 375). When it later amended the CCPA, the Legislature again recognized the this presumptive right's legitimacy. *See* California Bill Analysis, S.B. 1121 Sen., 8/6/2018 ("[T]he authors of AB 375 sought to strike an appropriate balance between a variety of competing interests between consumer and privacy groups on one side and the business, telecommunications, and technology industry on the other...The industry raised a number of concerns related to the initiative, including issues with workability, ***legitimate business practices***, and liability exposure. The concessions made by both sides are reflected in the new law…") (emphasis added).

***Second***, Plaintiff is outright wrong when he argues that "[n]owhere in the statutory provisions cited by Defendant does the CCPA grant such a license for business to collect consumer data." *See* Opp. at 7:17–20. The CCPA and its legislative history *do* expressly reference authorization to collect data online. *See, e.g.*, 2018 Cal. Legis. Serv. Ch. 55 (A.B. 375) ("The bill would authorize businesses to offer financial incentives for collection of personal information."); California Bill Analysis, A.B. 375 Sen., 6/25/2018 ("Further authorizes a business to offer a different price, rate, level, or quality of goods or services to the consumer if that price or difference is directly related to the value provided to the consumer by the consumer's data.").

***Third***, to the extent that the CCPA and CIPA conflict and ambiguity arises about what statute applies, it would violate of the rule of lenity for the Court to resolve the conflict by applying CIPA on the basis that it is more protective. Under the rule of lenity, the CCPA ought to control. As Judge Chhabria recently held:

> ***There is an even more important reason to avoid reading the second clause of Section 631(a)—and, for that matter, any portion of CIPA—too broadly: it is a criminal statute.*** Even though most CIPA cases are private civil actions, the interpretations courts adopt while adjudicating those actions could affect the extent to which people or companies are subject to criminal liability…*see also Bittner v. United States,* 598 U.S. 85, 103 (2023) (Gorsuch J., joined by Jackson, J.) (***In the context of a statute that imposes both criminal and civil penalties based on the same statutory term, "the rule of lenity, not to mention a dose of common sense, favors a strict construction.***")….
>
> ….The Legislature has never, in over four decades, amended Section 631 to adapt its language to the digital age. ***And California has since adopted other statutes that more clearly speak to the practice of data sharing. See Cal. Civil Code § 1798.100 et seq. (California Consumer Privacy Act)***.

*Eating Recovery Ctr.*, 2025 U.S. Dist. LEXIS 207952, at *17–19 (emphasis added).

***And fourth***, applying CIPA (over the CCPA) to criminalize certain online data collection and sharing would have absurd practical effects. For one, potential CIPA liability would pointlessly discourage website operators from hiring vendors to do what vendors are much better-equipped to do. Such an absurd result would presumably require clear language of legislative intent. But as Judge Chhabria noted on this point:

> Recall that CIPA was enacted in 1967. ***Its language—with words like "read" and "intercept" and "in transit"—is ill-suited for application to internet communications…***
>
> ****
>
> [U]sing a third-party company to perform data analytics for web traffic is worlds different from wiretapping and eavesdropping. ***Did the Legislature really intend to subject companies like ERC to criminal liability for using third-party software to track website activity? Did it really mean to criminalize the use of web traffic data? Given the statute's ambiguity and its imposition of criminal liability, perhaps courts should not be so quick to assume that the answer is yes…***
>
> ****
>
> As difficult as it is to apply CIPA to the physical world, it's virtually

impossible to apply it to the online world.

*Eating Recovery Ctr.*, 2025 U.S. Dist. LEXIS 207952, at *18–19 (emphasis added).

Applying CIPA here would also have absurd impacts by criminalizing conduct based solely on *when* information is shared. Once again, Judge Chhabria's ruling is instructive. On the "in transit" requirement, Judge Chhabria ultimately determined that Meta did not intercept website data "in transit" because "data is transmitted to Meta about 0.2 seconds after the visitor's action is transmitted to the website." *Id.* at *13–14. Judge Chhabria "acknowledge[d] how strange this outcome is" because "[r]egardless of whether it is receiving the communication a second before or after it reaches the website, Meta is effectively engaging in the same conduct." *Id.* Applying CIPA to penalize use of vendor technology, when it would otherwise be authorized under the CCPA, may come down to a difference of 0.2 seconds. This is absolutely nonsensical. But "that's the problem with cases involving the tracking of online activity—the statutory language [of CIPA] was drafted with very different technology in mind, and it does not map properly onto the internet." *Id.* at *14–15.

For all these reasons, Plaintiff has failed to explain what privacy interest is at issue, what injury he suffered, or even why it makes sense to apply CIPA to his alleged facts. Because Plaintiff cannot claim any privacy injury, Plaintiff's SAC should be dismissed with prejudice for that reason alone.

### B. <u>Plaintiff's Alleged Emotional Harms Fail to Establish Statutory Standing.</u>

As Charter also explained in its Opening Brief, the Court should dismiss the SAC because—aside from the fact that Plaintiff is a "tester" litigant—numerous courts reiterate that emotional reactions like Plaintiff's are not cognizable injuries. *See I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1052 (N.D. Cal. 2022) (claims of stress in data breach did not constitute injury for standing); *Wadsworth v. Kross, Lieberman*

*& Stone, Inc.*, 12 F.4th 665, 667–69 (7th Cir. 2021) (recent statutory-standing decisions "makes clear, anxiety and embarrassment are not injuries in fact"); *Holmes v. Elephant Ins. Co.*, 2023 U.S. Dist. LEXIS 110161, *13 (E.D. Va. June 26, 2023) ("Because the plaintiffs plead only 'bare assertion of emotional injury,' they have not pleaded an injury-in-fact."); *Wilkinson v. Olympia Dev. of Mich. LLC*, 2022 U.S. Dist. LEXIS 180669, at *7 (E.D. Mich. Oct. 3, 2022) ("[B]are allegations of 'stress, fear, anger, and frustration' do not amount to a concrete injury.").

Plaintiff's allegations that he was offended as a result of a CIPA violation may establish a cognizable injury only if he alleges how the breach would be ***highly offensive*** at common law. *See Popa*, 2025 U.S. App. LEXIS 21946, at *16. Monitoring the plaintiff's web-interactions in *Popa* was not highly offensive because it was "most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Id.* Likewise, Asapp's alleged observation of Plaintiff's inquiry is no different than observing him pose the same question at a brick-and-mortar Spectrum store.

Plaintiff fares no better chance of establishing a cognizable injury by alleging economic injury based on loss of valuable data. Opp. at 6:18–21 (citing SAC at ¶ 66). *Klein v. Facebook, Inc.,* 580 F. Supp. 3d 743, 803 (N.D. Cal. 2022) and *Brown v. Google LLC*, 2021 U.S. Dist. LEXIS 244695, at *52 (N.D. Cal. Dec. 22, 2021)—two cases Plaintiff cites in the SAC—are both clear that Plaintiff cannot establish a cognizable privacy injury by alleging that collected data is valuable. Allegations must show *why* that data is valuable, including identifying of a market for it. Plaintiff failed to do that here.

In his Opposition, Plaintiff does not address *Klein* and *Brown*, although Charter cited them in its Opening Brief. Instead, Plaintiff cites case law that cuts against his argument. Specifically, he cites *In re Facebook Privacy Litig.,* 572 Fed. App'x 494, 496 (9th Cir. 2014), where the plaintiffs alleged Facebook disseminated their personal information. Unlike any allegations here, they further alleged this resulted in ***loss of***

***the sales value*** of that information, which the court determined was a "harm." *See id.*; SAC at ¶¶ 64–66 (failing to sufficiently allege loss of economic value in intercepted data). Here, again, Plaintiff has not even pleaded (despite three opportunities to do so) what the collected data may have been, let alone any "sales value."

### C. CIPA's "Party Exemption" Applies to Asapp.

Plaintiff's CIPA claim also fails because Asapp, as Charter's agent, is either not a third party to begin with or at a minimum is entitled to CIPA's "party exemption." Under that "party exemption," a party to a communication (like Charter) cannot be liable for eavesdropping on its own conversations, and the "party exemption" extends to third-party vendors (like Asapp) with whom the "content" of conversations is shared.[3]

As Plaintiff notes, a Ninth Circuit split concerns the "party exemption." In Plaintiff's incomplete description: (1) one line of cases holds that a software vendor is not a third-party eavesdropper and is subject to CIPA's "party exemption" where no alleged facts suggest the vendor intercepts and ***actually uses*** the data for its own purposes, other than the website operator's; and (2) in contrast, the *Tate* and *Javier* line of cases hold that whether the vendor actually uses the data is irrelevant to determine whether the "party exemption" applies. Opp. at 10:4–17 (citing *Tate v. VITAS Healthcare Corp.,* 762 F.Supp.3d 949, 955 (E.D. Cal. 2025); *Javier v. Assurance IQ, LLC,* 649 F. Supp. 3d 891, 898 (N.D. Cal. 2023)). Plaintiff advocates for application of the *Tate* / *Javier* line of cases. *Id.* at 11:11–20.

This is a distinction without a difference here because Plaintiff neglects to mention that, even under the Tate / Javier line of cases, the "party exemption" applies to a vendor unless Plaintiff alleges the vendor has "capability" to use the data for its

---

[3] *See, e.g.*, *Licea v. Vitacost.com*, 683 F. Supp. 3d 1118, 1123–24 (S.D. Cal. 2023); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021).

own purposes. The SAC does not plead *either* that Asapp actually uses or has the capability to use the information for its own purposes. Every allegation on this point instead concedes that Asapp analyses webchats *for Charter's use*. *See, e.g.*, SAC at ¶¶ 26 ("Certainly, Asapp provides 'suggestions at every step of the conversation to resolve customer issues faster,' and ***enables Defendant's*** own customer service agents to handle a larger volume of work by effectively outsourcing a host of customer service tasks to Asapp and its ASAPPMessaging platform…"), 27 ("The ASAPPMessaging platform provides 'live customer conversation analysis,' and compiles substantial data on customer conversations ***for Defendant***…"), 28 ("The ASAPPMessaging platform ***allows Defendant*** to 'increase [its] capacity without adding staff…'"), 38 ("Asapp also aggregates substantial amounts of data drawn from the chat feature ***for Defendant's*** review…"), 39 ("Finally, Asapp records transcripts of each chat conversation in Defendant's chat feature for future review and reading ***by Defendant and/or its agents***…") (emphasis added). Accordingly, regardless of whether this Court applies the "actual use" or "capability to use" standard to determine whether the "party exemption" applies to Asapp, Asapp cannot be considered an eavesdropper where the SAC is entirely devoid of any allegations that Asapp actually uses Charter's webchat data for its own purposes ***or*** that Asapp has any capability to do so. *See generally* SAC.

**D. <u>The SAC Does Not Sufficiently Plead Scienter.</u>**

Plaintiff's Opposition next (and again) fails to persuasively explain how the SAC's allegations of Charter's scienter are more than conclusory. Plaintiff only briefly touches on this by citing *Clark v. State Farm Mut. Auto. Ins. Co.,* 231 F.R.D. 405, 406 (C.D. Cal. 2005), which is inapposite. *Clark* did not address pleading standards for scienter under a state statute at all (let alone CIPA). *Id.* *Clark* only addressed whether prayer for punitive damages in federal court can rely "on unsupported and conclusory averments of malice or fraudulent intent." *Id.*

To rule on the adequacy of scienter allegations in CIPA aiding-and-abetting

claims, federal courts look to the common-law definition of aiding-and-abetting. *Esparza v. UAG Escondido A1 Inc.,* 2024 U.S. Dist. LEXIS 24429, *15–16 (S.D. Cal. Feb. 12, 2024); *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1123 (S.D. Cal. 2024); *Valenzuela v. Kroger Co.,* 2024 U.S. Dist. LEXIS 56985, at *10 (C.D. Cal. Mar. 28, 2024). Those cases hold that a CIPA defendant may be liable as aider-and-abettor if it: (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to so act; or (b) gives substantial assistance to the other to accomplish a tort and the defendant's own conduct, separately considered, breaches a duty to the third person. As explained in Charter's Opening Brief, the SAC fails to plead these elements.

### E. The FAC Does Not Sufficiently Plead CIPA's "In Transit" Requirement.

The SAC's allegations that Asapp "simultaneously" collects transcripts of Charter's webchats "in real time" "instantaneously" are no better than deficient conclusory "in transit" allegations in other CIPA cases. *See* SAC at ¶¶ 9, 50, 56, 78; *Licea v. Cinmar*, 659 F. Supp. 3d at 1085 (pleading "real time" interception in chatbox was insufficient); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758–59 (N.D. Cal. 2023) (alleged code allowed third party to "intercept [webchats] in real time"); *In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (interception "'***during transmission***'" and "data collection…'***in real time***'") (emphasis added); *Heiting v. v. Athenahealth, Inc.*, 2024 U.S. Dist. LEXIS 133617, *12 (C.D. Cal. July 29, 2024) ("intercepts data from chats ***in real time***, at ***the moment a chat begins***'") (emphasis added); *Rodriguez v. Google LLC*, 2022 U.S. Dist. LEXIS 13476, *7 (N.D. Cal. Jan. 25, 2022) ("Google ***simultaneously*** intercepts their data in transit.") (emphasis added). As there, Plaintiff fails to plausibly allege in-transit interception.

In his Opposition, Plaintiff contends he adequately alleged in-transit interception because he alleged webchat keystrokes automatically appear on the

webpage's source code when typed (SAC at ¶¶ 16–17). However, just because text appears in code as it is typed, that does not mean it is automatically transmitted to servers, let alone Asapp's.

## II. The SAC Should Be Dismissed Without Leave to Amend.

Plaintiff's Opposition does not explain how he intends to further amend his CIPA claim to render it viable, likely for good reason: Plaintiff has twice amended his complaint, and the SAC remains defective. As the SAC's deficiencies cannot be cured, this Court should dismiss it with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996); *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

DATED: October 31, 2025 **THOMPSON COBURN LLP**

By: */s/ Jose L. Lua-Valencia*
**LUKAS SOSNICKI**
**JOSE L. LUA-VALENCIA**
Attorneys for Defendant CHARTER COMMUNICATIONS, INC.

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Charter Communications, Inc. certifies that this brief contains 4,200 words, which complies with Judge Staton's word limit for reply briefs.

DATED: October 31, 2025

**THOMPSON COBURN LLP**

By: */s/ Jose L. Lua-Valencia*

**LUKAS SOSNICKI**
**JOSE L. LUA-VALENCIA**
Attorneys for Defendant CHARTER COMMUNICATIONS, INC.

# PROOF OF SERVICE

**Miguel Esparza v. Charter Communications, Inc.**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 10100 Santa Monica Boulevard, Suite 500, Los Angeles, California 90067.

On October 31, 2025, I served true copies of the following document(s) described as **CHARTER COMMUNICATIONS, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** on the interested parties in this action as follows:

| | |
|---|---|
| Todd M. Friedman<br>Adrian R. Bacon<br>Matthew R. Snyder<br>Law Offices of Todd M. Friedman, P.C.<br>21031 Ventura Blvd., Suite 340<br>Woodland Hills, California 91364<br>Tel: (323) 306-4234<br>tfriedman@toddflaw.com<br>abacon@toddflaw.com<br>msnyder@toddflaw.com | Attorneys for Plaintiff<br>MIGUEL ESPARZA |

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 31, 2025, at Los Angeles, California.

*/s/ Blanca Gutierrez*
Blanca Gutierrez